**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CUYAHOGA METROPOLITAN HOUSING AUTHORITY,** | ) | **CONSOLIDATED CASE NOS. 01-46C, 01-251C AND 01-416C** |
| **Plaintiff,** | ) | **JUDGE ALLEGRA** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **PLAINTIFF'S MOTION** **FOR SUMMARY JUDGMENT** |
| **Defendant.** | ) | |

Pursuant to Rule 56(c) of the Rules of the Unites States Court of Federal Claims (RCFC), Plaintiff, Cuyahoga Metropolitan Housing Authority ("CMHA"), respectfully moves this Court for an order granting summary judgment on the issue of the damages owed by the Government for its breach of the Housing Assistance Payment Contracts at issue as found by this Court in its Opinion filed September 22, 2003 ("Opinion"). In support of its motion, CMHA submits herewith a memorandum of authority, and a proposed order.

Respectfully submitted,

/s/ Fred J. Livingstone

Fred J. Livingstone (0009528)
flivingstone@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

Attorney for Plaintiff

Of Counsel:

Mark J. Valponi (0009527)
Heather L. Tonsing (0069606)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

LaVerne Nichols Boyd (0009279)
CUYAHOGA METROPOLITAN HOUSING AUTHORITY
1441 West 25th Street
Cleveland, Ohio 44113-3101
(216) 348-5000
(216) 348-4925 (facsimile)

Dated: December 11, 2003

# TABLE OF CONTENTS

**Page**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index to Appendix of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Memorandum in Support . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Introduction and Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Automatic Annual Adjustment Provisions of the HAP Contract . . . . 4

B. Overall Limitation on Automatic Annual Adjustments . . . . . . . . . . . . . 6

III. Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. CMHA is Entitled to Expectancy Damages Because HUD Did Not Adjust the Contract Rents Pursuant to the Contract Terms. . . . . . . . 7

1. The Remedies For HUD's Breaches of the HAP Contracts Are Not Complicated and Lead, For the Most Part, to Expectancy Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2. CMHA Is Entitled To Adjustment of Rent By Application of The AAAF Subject to the Overall Limitation . . . . . . . . . . . . . 11

3. CMHA Is Entitled To Adjustment of Rent By Application of the AAAF Without Deduction of 1% for Non-Turnover Tenants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4. CMHA is Entitled to Have the Overall Limitation Calculated with a Material Difference Factor of 20%. . . . . . . . . . . . 12

B. CMHA Is Entitled to Restitution of the Amount Expended for Comparability Studies Which Were the Obligation of HUD to Provide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appendices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

Acacia Villa v. United States, 36 Fed. Cl. 277 (1996). . . . . . . . . . . . . . . . . . . . . . . . 6, 12

California Federal Bank, FSB v. United States, 245 F.3d 1342 (2001) . . . . . . . . . . . . 10

Coast Federal Bank, FSB v. United States, 48 Fed. Cl. 402 (2000) . . . . . . . . . . . . 10, 11

General Dynamics v. United States, 47 Fed. Cl. 514 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Glendale Federal Bank, FSB v. United States, 239 F.3d 1374 (2001) . . . . . . . 8, 10, 14

National Leased Housing Assn. v. United States, 32 Fed. Cl. 454, 466 (1994) . . . . . . 6, 12

Park Village Apts. v. United States, 32 Fed. Cl. 441 (1994) . . . . . . . . . . . . . . . . . . . 6, 12, 13

Park Village Apts. v. United States, 25 Cl. Ct. 729 (1992) . . . . . . . . . . . . . . . . . . . . . . . 6, 12

United States v. Winstar Corp., 518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 11

## FEDERAL STATUTES

42 U.S.C. § 1437f ("Amendments") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 8, 11, 12

## HUD DIRECTIVES

HUD Notice 95-12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 7, 8, 12, 14

HUD Memorandum of January 14, 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12

## HUD HANDBOOK

HUD Handbook 7420.1 CHI Ch. 9 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## SECONDARY SOURCES

Restatement (Second) of Contracts § 344(c) (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Contracts § 344, Comment (a) (1981) . . . . . . . . . . . . . . . . . . . . . 9

Restatement (Second) of Contracts § 346, Comment (a) (1981) . . . . . . . . . . . . . . . . . . . . . 8

## INDEX TO PLAINTIFF'S SUMMARY JUDGMENT EXHIBITS


| Appendix | Description | Page |
| --- | --- | --- |
| 1 | HUD Memorandum of January 14, 1986 | 17 |
| 2 | Defendant's 11/20/2003 Response to Plaintiff's Request for Admissions | 31 |
| 3 | Proposed order | 32 |

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CUYAHOGA METROPOLITAN HOUSING AUTHORITY,** | ) | **CONSOLIDATED CASE NOS. 01-46C, 01-251C AND 01-416C** |
| **Plaintiff,** | ) | **JUDGE ALLEGRA** |
| **v.** | ) | **PLAINTIFF'S MEMORANDUM OF AUTHORITY FOR MOTION FOR SUMMARY JUDGMENT** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

## I. INTRODUCTION AND STATEMENT OF THE CASE

In its Opinion, this Court found that:

1. The 1994 Amendments ("Amendments") and HUD Directive 95-12 ("Directive") effectuated a breach of CMHA's housing assistance payments contracts ("HAP Contracts") for the Severance, Ambleside and Quarrytown Projects.[1/] (Op.40).[2/]

2. CMHA is entitled to whatever damages are appropriate on account of that breach. (Op.40).

3. Damages will hinge on the extent of the breach and would likely fall within the traditional categories of expectancy, reliance or restitution damages. (Op.40).

---

1/ Plaintiff will continue to use and give the same meaning to the terms the Court used in its Opinion for the 1994 Amendments to 42 USC §1437f, HUD's Directive 95-12 and the three projects whose HAP Contracts are at issue in this matter.

2/ "Op." refers to the Opinion and "40" refers to the page on which the cited matter is found.

Per the Court's instructions, the parties submitted a Joint Statement recommending that, as an initial step, CMHA file a motion for summary judgment ("Motion") requesting the Court to rule on the applicable measure(s) of damages: i.e., expectancy, reliance and/or restitution. In connection with its request for expectancy damages, CMHA is to include in its Motion a request that the Court determine the calculation formula for the application of automatic annual adjustment factors ("AAAF") and the calculation formula for the limitation provision in Section 1.8(d) ("Overall Limitation"). Further, CMHA is to request the Court to direct how comparable unassisted unit rentals ("Comparable Rent"), the "Initial Difference"[3/] and "Material Difference"[4/] factors are to be utilized to calculate the Overall Limitation. In the case of Material Difference, the Court will be requested to determine whether 20%, or some other benchmark, is the appropriate measure of Material Difference.

In its October 21, 2003, Order, the Court ordered CMHA to file this Motion pursuant to the Joint Statement.

In order to appropriately analyze the question of damages, it is necessary to define the breaches of contract which occurred. This Memorandum in support of the Motion will demonstrate that HUD committed four breaches of the HAP Contracts, namely,

---

3/ Section 1.8(d) of the HAP Contracts provide that the Overall Limitations shall not be construed to prohibit differences between assisted and comparable unassisted units to the extent that same existed with respect to the Initial Contract Rent. Such "Initial Difference" is the dollar amount by which the Initial Contract Rent exceeded the comparable unassisted rent.

4/ Section 1.8(d) provides that the adjustment of Contract Rent by the AAAF shall not result in a material difference between rents for assisted and comparable unassisted units.

a. In the first step of the annual contract rent adjustment process, HUD wrongfully failed to apply the AAAF to CMHA's Contract Rents and made no adjustment at all. ("AAAF Application Breach").

b. Where it did make an adjustment,[5/] HUD wrongfully applied a 1% deduction for suites which were occupied by the same tenant during the year. ("1% Deduction Breach").

c. HUD wrongfully failed to multiply the sum of rent for unassisted units ("Comparable Rent") and the Initial Difference by 120% or any other percentage in excess of 100% to arrive at the Overall Limitation in the adjustment of Contract Rent. ("Material Difference Breach").

d. HUD wrongfully required CMHA to expend funds to furnish Comparable Rent studies which were HUD's burden to furnish. ("Comparable Rent Studies Breach").

Due to the breaches outlined above, both expectancy and restitution damages are appropriate. As a result of the AAAF Application Breach, CMHA has been damaged, on a per suite basis[6/], by the difference between the properly adjusted Contract Rent after application of the AAAF subject to the properly calculated Overall Limitation and the Contract Rent which was actually paid. As a result of the 1% Deduction Breach, CMHA has been damaged by the difference between the properly adjusted Contract Rent without the 1%

---

5/ HUD has applied the AAAF for anniversary years 1995 and 2001 to Quarrytown and for anniversary years 1996 and 2000 to Severance and Ambleside. All references to contract years herein shall be to anniversary years.

6/ For ease of explanation, all damages will be explained on a per suite basis. After such determination is made for each project involved , the per suite damage will have to be multiplied by the number of suites in each project and the totals added to arrive at CMHA's total damages for the breach(es).

Deduction and the adjusted Contract Rent with the 1% Deduction. As a result of the Material Difference Breach, CMHA has been damaged by the difference between the adjusted Contract Rent using an appropriate Material Difference factor for determining the Overall Limitation (120% or some other appropriate factor multiplied by the sum of the Comparable Rent and the Initial Difference) and the adjusted Contract Rent without use of an appropriate Material Difference factor. All of the damages described above are expectancy type damages.

As a result of the Comparable Rent Studies Breach, CMHA was obligated to incur expense in obtaining Comparable Rent studies. This Court has already found that it was HUD's responsibility to obtain such studies. (Op.14). Accordingly, CMHA is entitled to restitution damages for such expenditures.

## II. STATEMENT OF FACTS

A. Automatic Annual Adjustment Provisions of the HAP Contract

Section 1.8(b) of the HAP Contracts provides:

A. Automatic Annual Adjustments

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of this Contract.

Except for the adjustments made for Quarrytown for 1995[7/] and Severance and Ambleside for 1996, and for some interim adjustments made by HUD for the years 2000 and thereafter[8/], HUD has refused to implement the AAAF for the years in question. HUD bases its refusal on the requirements of its Directive.[9/] This Court has held in the Opinion that the HAP Contracts expressly require HUD to provide CMHA with automatic annual adjustments barring the agency's invocation of the Overall Limitation. (Op.15). Accordingly, failing to apply the AAAF to the existing Contract Rent as an initial step in adjusting Contract Rent before applying the Overall Limitation is, *prima facie*, a breach of the HAP Contracts.

The Amendments and the Directive also require that a deduction of 1% be made in the AAAF for units occupied by the same tenant during the year. The Court in its Opinion quoted

---

7/ This adjustment has been agreed to by HUD but has not yet been paid.

8/ By agreement of counsel reached during litigation, CMHA, has applied for and received adjustments to which it would be entitled pursuant to Directive 95-12, reserving the right to further adjustments to which it might be entitled pursuant to the HAP Contracts.

9/ Directive 95-12 provides that if the existing Contract Rent exceeds HUD's published fair market rents for the unit type, the owner is subject to Comparability. Comparability requires the owner to submit a comparability study. Once a comparable rent is established by the study, the Initial Difference is added to the comparable rent. This determines the maximum permissible rent level allowed for each unit, otherwise known as the "adjusted comparable rent." If the adjusted comparable rent is less than the Contract Rent as adjusted by applying the AAAF in the manner described in the next paragraph, the adjusted comparable rent will be the new Contract Rent. If the adjusted comparable rent is greater than the Contract Rent as adjusted by applying the AAAF, then the Contract Rent as adjusted by the AAAF becomes the new effective Contract Rent. However, in the event that the adjusted comparable rent is lower than the current Contract Rent without adjustment, the current rent remains the Contract Rent for that year.

For contracts where the current Contract Rents do not exceed current published fair market rents, HUD applies the AAAF for each unit where turnover has occurred. For units in which no turnover has occurred, 1% is deducted from the factor. The rents for turnover and non-turnover units as adjusted are then averaged, resulting in the new Contract Rent.

Congressional reports listing the 1% Deduction as one of the cost savings proposed by HUD. (Op. 35-36). The Amendments and the Directive also wrongfully shifted the burden of demonstrating Comparable Rent from HUD to CMHA. (Op. 37). Accordingly, not only did HUD fail to apply the published AAAF to CMHA's Contract Rents, but HUD reduced the AAAF by 1% for units occupied by the same tenant during the year and required CMHA to demonstrate comparable rent with a study.

B. Overall Limitation on Automatic Annual Adjustments

42 U.S.C. §1437f (c)(2)(C) has always provided (both before and after the Amendments) that adjustments in Contract Rent shall not result in ***material differences*** between rents for assisted and unassisted comparable units. Section 1.8 (d) of the HAP Contracts provides:

> Overall Limitation. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government: provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

In a 1986 memorandum which has been cited in several cases[10/], HUD maintained that "... a material difference exists whenever the adjusted Section 8 rent would exceed 120 percent times the sum of the comparable rent and the initial difference. ("1986 Memorandum")

---

10/ Park Village Apts. v. United States, 25 Cl. Ct. 729, 732 (1992); Park Village Apts. v. United States, 32 Fed. Cl. 441, 448 (1994); National Leased Housing Assn. v. United States, 32 Fed. Cl. 454, 466 (1994); Acacia Villa v. United States, 36 Fed. Cl. 277, 279 (1996).

(App 1).[11/] HUD knows of no directive issued to its field offices or other personnel responsible for adjusting Contract Rent under HAP Contracts which varies the 1986 Memorandum's determination as to what constitutes a Material Difference. The Government admits both those facts. (App. 2)

However, Directive 95-12 varies the procedure outlined in the 1986 Memorandum for determining the Overall Limitation. Instead of multiplying the sum of the Comparable Rent and the Initial Difference by 120 percent, the Directive makes no mention of Material Difference and merely adds Comparable Rent and Initial Difference to determine the "adjusted comparable rent" which, in effect, becomes the Overall Limitation in the Government's view.

## III. LAW AND ARGUMENT

### A. CMHA is Entitled to Expectancy Damages Because HUD Did Not Adjust the Contract Rents Pursuant to the Terms of the HAP Contracts.

#### 1. The Remedies for HUD's Breaches of the HAP Contracts Are Not Complicated and Lead, For the Most Part, to Expectancy Damages.

The essence of the HAP Contract from CMHA's standpoint is the payment of housing assistance payments from which, not surprisingly, the contracts take their commonly used name of "HAP Contracts". Section 1.6a(1) of the HAP Contract provides in part:

> Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the contract.

Section 1.6f (in pertinent parts) sets forth the procedure to obtain monthly payments:

---

[11/] App. 2 refers to the Appendix filed with this Motion and the Tab number contained therein.

> The Owner shall submit monthly requests to the Government for housing assistance payments. Each such request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; ...(iii) the Contract Rent as set forth in Exhibit A for each unit for which the Owner is claiming payment; (iv) the amount of rent payable by the Family leasing the unit...; and (v) the total amount of housing assistance payments requested by the Owner.

Finally, Section 1.8 deals with rent adjustments. Subsection 1.8a provides:

> Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this section, up to the maximum amount authorized under Section 1.5a of this Contract.

Subsection 1.8b provides for the automatic annual adjustments as set forth on page 4 above and subject to the Overall Limitation as set forth on page 6 above.

It is clear from the foregoing language that the payment of Contract Rent, particularly the automatic annual adjustment to account for inflation, shifted the risk of inflation to HUD. Because the HAP Contracts have 40 year terms, it would have been a disaster for the building owner to enter into such contracts without inflation protection. The shifting of that risk to HUD constituted an essential part of the consideration bargained for by CMHA. The altering of those contract terms by the Amendments and the Directive constituted serious breaches of the HAP Contracts entitling CMHA to damages. "Every breach of contract gives an injured party a right to damages against the party in breach" unless "the parties...by agreement vary the rules." Restatement (Second) of Contracts, §346, Comment a (1981). See also, United States v. Winstar Corp., 518 U.S. 839, 886, fn30 (1996). "The consequences the law imposes are for the purpose of making the non-breaching party whole." Glendale Federal Bank, FSB v. United States, 239 F.3d 1374, 1380 (2001). "Ordinarily, when a court

concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract." Restatement (Second) of Contracts, §344, Comment a (1981).

Here, CMHA had the expectation that Contract Rent under its HAP Contracts would be annually adjusted by the AAAF subject only to the Overall Limitation. To preserve those expectations bargained for in the HAP Contracts, Contract Rent should be calculated without the AAAF Application Breach, the 1% Deduction Breach, and the Material Difference Breach.

The case of General Dynamics v. United States, 47 Fed.Cl. 514 (2000), is instructive on the question of damages. In that case, General Dynamics entered into a contract with the United States which provided for reimbursement of certain overhead costs pursuant to regulations then in effect. Subsequently, Congress established a cap on executive compensation as an overhead cost, substantially reducing what General Dynamics could claim as executive compensation cost under its contract. In its opinion granting summary judgment in favor of General Dynamics, this Court held that the Congressional action constituted a breach of contract and that "There are no disputed issues of material fact with respect to [the terms]...dealing with allowable executive compensation costs..." Ibid, at 546. This Court thereby implied that the measure of damages would be the difference between what would have been the allowable cost for executive compensation under the former regulation less what was allowed after passage of the act. Ibid, at 546.

The factual situation in this case and in General Dynamics differ substantially from the factual situations in Winstar and the other Financial Institutions Reform, Recovery and

Enforcement Act ("FIRREA") cases.[12/] In Winstar, the plaintiffs, Winstar and Glendale, were two savings and loans institutions which had been contractually guaranteed special accounting treatment, including the right to include supervisory good will and other financial items in calculating reserve capital requirements. These guaranteed treatments were the prime motivations for the savings and loans to enter into transactions to take over other failed savings and loans. These guaranteed financial items were subsequently outlawed by FIRREA. As a consequence, Winstar was seized and liquidated, and Glendale was required to reduce its size substantially and cease most high credit lending. A majority of Justices of the Supreme Court held that the passage of FIRREA breached the contracts mentioned above.

Subsequent cases have held the damages to make the affected institutions whole were in the nature of expectancy, reliance and restitution damages and depended on a variety of circumstances and proof. The circumstances faced by the courts in the post-Winstar cases included whether the institution was forced out of business (Winstar); whether the institution was forced to reduce its size and cease high credit-risk lending (Glendale Federal Bank, FSB v. United States, 239 F.3d 1374 (2001)); whether additional capital was infused to keep the institution afloat (California Federal Bank, FSB v. United States, 245 F.3d 1342 (2001)); whether income earning assets had to be sold and thereby anticipated profits lost (Ibid); whether specific investment opportunities were thwarted (Coast Federal Bank, FSB v. United States, 48 Fed. Cl. 402 (2000); whether damages were proximate or collateral, (Ibid) or other circumstances unique to their situations and proof produced.

---

[12/] As of 2001, over 120 Winstar type cases were pending. Calif. Fed. Bank, at 1344.

Winstar-type damages range all over the lot from expectancy to reliance to restitution and happily present a thicket in which the parties here do not have to entangle themselves. In the instant case, the damages are straightforward. Most of CMHA's damages arise because the housing assistance payments were wrongfully calculated as a result of the breaches of contract by HUD. Those types of breaches give rise to expectancy damages. They are not speculative or complicated and can be remedied by paying what additional Contract Rent should have been paid had the breaches not occurred.

**2. CMHA Is Entitled To Adjustment of Rent by Application of the AAAF subject to the Overall Limitation.**

As shown above, HUD has breached the HAP Contracts by failing to apply the AAAFs. CMHA is entitled to expectancy damages which are calculated by application of the AAAFs subject to the Overall Limitation discussed below.

**3. CMHA Is Entitled To Adjustment of Rent By Application of the AAAF Without Deduction of 1% for Non-Turnover Tenants.**

The Opinion recognized that the Amendments were proposed to Congress by HUD and adopted by Congress as a way to save money on its HAP Contracts. The 1% Deduction was part of that money-saving package. There was no demonstration that it had any other purpose. Accordingly, its application to the HAP Contracts is a breach of those contracts entitling CMHA to be reimbursed for the amount of the 1% deduction.

**4. CMHA is Entitled to Have the Overall Limitation Calculated with a Material Difference Factor of 20% .**

In the Directive, HUD totally ignores the contract provision that the Overall Limitation be applied only when there is a **Material Difference** between rents charged for assisted units and comparable unassisted rents. Section 1.8(d) provides that the limitation shall not be construed to prohibit such differences to the extent such differences may have existed with respect to the initial Contract Rent. ("Initial Difference"). Accordingly, the Contracts require that three factors be considered in applying the Overall Limitation: 1) Comparable Rent, 2) Initial Difference and 3) whether there was a Material Difference between Contract Rent as adjusted by the AAAF and the sum of comparable rent and Initial Difference.

In the early years of the HAP Contracts, HUD considered those three factors. In 1986, HUD instructed its offices that "a material difference exists whenever the adjusted Section 8 rents would exceed 120 percent times the sum of the comparable rent and the initial difference." See Apps. 1 and 2. In decisions commencing in 1992, this Court has acknowledged the 1986 Memorandum, approved it as reasonable, and utilized 120 percent times the sum of the comparable rent and the initial difference to determine the Overall Limitation. Park Village Apts. v. United States, 25 Cl. Ct. 729, 732 (1992); Park Village Apts. v. United States, 32 Fed. Cl. 441, 448 (1994); National Leased Housing Assn. v. United States, 32 Fed. Cl. 454, 466 (1994); Acacia Villa v. United States 36 Fed. Cl. 277, 279 (1996). To date, HUD knows of no other instruction or policy specifically defining Material Difference to the contrary. (App. 2).

A 20% Material Difference factor is not without a Section 8 frame of reference. 42 USC §1437f(c)(1) authorizes HUD to set initial contract rents 10% above fair market rentals and, in some circumstances, 20%. This could be construed as a Congressional expression of what a Material Difference is. Additionally, HUD Handbook 7420.1 CHI, ch. 9, at 9-13 to 9-14 (May, 1978), provided for up to 20% increases in the initial Contract Rent to which CMHA would have been entitled. See, Park Village Apts. v. United States, 32 Fed. Cl. 441, 451 (1994).

At page 28 of its Cross Motion and Response to CMHA's first Motion for Summary Judgment ("Gov. CMR"), HUD has argued that the Directive makes provision for Material Difference by recognizing the Initial Difference as the Material Difference. HUD claims that the sum of the first two factors, namely, comparable unassisted rent and Initial Difference results in the third factor, namely, Material Difference. This contention ignores the independence of the third factor and renders the two words "material" and "difference" meaningless.[13/] As a result, under HUD's theory, there is not only **no Material Difference**, but **no difference at all** in the Directive's attempt to redefine the statutory and contract term Material Difference.

HUD has conceded at page 27 of Gov. CMR, that it was given the discretion to make the determination as to what is a Material Difference. HUD further admits that such a determination must be reasonable, not arbitrary. Clearly, HUD's claim that the Directive's determination that **no** difference is a Material Difference is unreasonable, arbitrary and

---

13/ CMHA's Reply to Government's Cross Motion and Response at pp.3-4.

contrary to law. Because no other non-arbitrary determination of Material Difference has been made by HUD, its long standing determination of 20% as being the limit of Material Difference must be applied in this situation.

### B. CMHA Is Entitled to Restitution of the Amount Expended for Comparability Studies Which Were the Obligation of HUD to Provide.

This Court has found that HUD breached the HAP Contract by requiring CMHA to furnish comparability studies in connection with a requested Contract Rent adjustment when it was HUD's obligation to furnish same. This type of breach gives rise to restitution damages. "The idea behind restitution is to restore - that is, to restore the non-breaching party to the position he would have been in had there never been a contract to breach. Glendale Federal Bank, FSB v. United States, supra at 1380. Another way of expressing it, is to have "restored to him (i.e, the non-breaching party) any benefit that he has conferred on the other party." Restatement (Second) of Contracts, §344 (c). HUD needs to reimburse CMHA for its expenditures in obtaining such studies because CMHA conferred a benefit on HUD by incurring the expenses which were HUD's obligation.

## IV. CONCLUSION

This Court has found that HUD has committed multiple breaches of the HAP Contracts. This Memorandum has identified four separate breaches: first, HUD's Directive which does not apply the AAAF as the initial step in annually adjusting the Contract Rent; second, HUD's adjusting such rent with the 1% Deduction; third, HUD's determining the Overall Limitation

without multiplying the sum of the comparable rent and the Initial Difference by 120 percent; and fourth, forcing CMHA to bear the expense of obtaining comparability studies in connection with its request for Contract Rent adjustment. In order to make CMHA whole, the following principles must be followed:

1. For each year, initially adjust the Contract Rent by the AAAF factor published for units with turnover.

2. Thereafter, calculate the Overall Limitation by multiplying the sum of Comparable Rent and the Initial Difference by 120 percent.

3. Thereafter, set the amount calculated in item 1 as the Contract Rent unless it exceeds the amount calculated in item 2 in which event the latter amount shall be the Contract Rent.

4. Thereafter, the amounts paid by HUD for all years in question for the three projects shall be subtracted from the totals derived by application of the above principles to arrive at the expectancy damage amount. To the extent that the agreed but unpaid sum for the 1995 Contract Rent adjustment for Quarrytown is not covered by the above, it shall be taken into account.

5. CMHA's costs in obtaining Comparable Rent Studies shall constitute its restitution damages.

Respectfully submitted,

Dated: December 11, 2003

/s/ *Fred J. Livingstone*

Fred J. Livingstone (0009528)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square

Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

Attorney for Plaintiff

Of counsel:
Mark J. Valponi (0009527)
Heather L. Tonsing (0069606)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

LaVerne Nichols Boyd (0009279)
CUYAHOGA METROPOLITAN HOUSING AUTHORITY
1441 West 25th Street
Cleveland, Ohio 44113-3101
(216) 348-5000
(216) 348-4925 (facsimile)

## CERTIFICATE OF SERVICE

The foregoing Plaintiff's Motion for Summary Judgment and Memorandum of Authority for Motion for Summary Judgment was filed electronically with the Court on December 11, 2003, with notice of this filing being sent to all parties by operation of the Court's electronic filing system.

/s/ *Fred J. Livingstone*
Fred J. Livingstone