IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY,<br>1441 West 25th Street<br>Cleveland, Ohio 44113<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | 01-46 C<br><br>COURT OF FEDERAL CLAIMS NO. ________<br><br>COMPLAINT<br><br>FILED JAN 23 2001 |

## Preliminary Statement

1. Plaintiff Cuyahoga Metropolitan Housing Authority ("CMHA") brings this action for damages resulting from the failure of the United States of America, acting through the Department of Housing and Urban Development ("HUD"), to provide for automatic annual rent increases in 1995, 1996, 1997, 1998, 1999, and 2000 for the Quarrytown Tower Apartments. Pursuant to the Housing Assistance Payment Contract ("HAP Contract") entered into between CMHA and HUD, CMHA is entitled to annual rent increases for the subject properties more fully described herein. HUD and its agents have breached the HAP Contract by their failure and subsequent refusal to grant the rent increases, mandated by the HAP Contract, resulting in damages to CMHA in the amount of at least $400,000.00. In addition to the monetary damages to which CMHA is entitled, CMHA seeks ancillary

injunctive relief requiring that HUD adjust the current Contract Rents to reflect the adjustments that HUD has failed and subsequently refused to make and to use the adjusted Contract Rents as the basis for further annual adjustments as required by the HAP Contract.

## Jurisdiction

2. This Court has subject matter jurisdiction pursuant to the provisions of the Tucker Act, 28 U.S.C. § 1491, as this claim is founded upon breaches of an express contract entered into between CMHA and HUD.

## Parties

3. Pursuant to the provisions of Ohio Revised Code §§ 3735.27 through 3735.50, CMHA constitutes a "body corporate and politic," with the power and authority to provide "safe and sanitary housing accommodations to families of low income" within Cuyahoga County, Ohio. Pursuant to Ohio Revised Code § 3735.31, CMHA has the power to accept financial assistance from the federal government and can also sue or be sued.

4. HUD is an agency of the United States of America and at all times relevant to the allegations in this Complaint was acting as an agent of the United States of America. The actions of HUD are therefore imputed to the United States of America.

## Statement of the Facts

5. CMHA is the owner of a certain property known as the Quarrytown Towers Apartments ("Quarrytown") which is located at 55 West Bagley Road, Berea, Cuyahoga County, Ohio and consists of 180 one-bedroom units.

6. On January 31, 1979, pursuant to the United States Housing Act of 1937, 42 U.S.C. 1437, *et seq.*, specifically 42 U.S.C. 1437f ("Section 8"), and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, *et seq.*, CMHA entered into a HAP Contract with HUD for Quarrytown ("Quarrytown HAP Contract"), which was designated Quarrytown Towers Project, HUD project number OH 16-0013-012. (See Quarrytown HAP Contract attached as Exhibit A.)

7. Pursuant to the terms of the Quarrytown HAP Contract, HUD is to provide housing assistance payments to CMHA for units in the Quarrytown Towers Project under lease by lower-income families.

8. The Quarrytown HAP Contract set forth the initial contract rent for each unit at $310 per unit per month ("Initial Contract Rent").

9. Pursuant to Section 1.6(f)(1) of the Quarrytown HAP Contract, CMHA is required to submit monthly requests to HUD for housing assistance payments.

10. Under the provisions of 42 U.S.C. § 1437f(c)(1), the housing assistance payments provided by HUD are designed to reimburse CMHA the difference between the rent called for under the Quarrytown HAP Contract for each unit ("Contract Rent") and the amount paid by each leasing family.

11. Section 1.8(b) of the Quarrytown HAP Contract, entitled Automatic Annual Adjustments, contains a mechanism whereby the Contract Rent due CMHA is to be increased on an annual basis and provides in full as follows:

> (1) *Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will*

*be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.*

(2) *On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.*

12. Section 1.8(d) of the Quarrytown HAP Contract further provides:

(d) *<u>Overall Limitation</u>. Not withstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.*

13. Between January 1980 and January 1994, the Contract Rent for Quarrytown was increased pursuant to the provisions of Section 1.8(b) of the Quarrytown HAP Contract from $310 to $572 per unit per month.

14. Since the 1994 Contract Rent adjustment which established the Contract Rent at $572.00 per unit per month, the Government has published Automatic Annual Adjustment Factors each year.

15. Based upon the provisions of the Quarrytown HAP Contract cited above, CMHA was entitled to receive automatic Contract Rent adjustments for the years 1995, 1996, 1997, 1998, 1999, and 2000, which HUD has repeatedly failed to provide.

16. The failure by HUD to adjust the Contract Rents on the Quarrytown HAP Contract's anniversary dates has resulted in substantially lower housing assistance payments being made by HUD to CMHA for the Quarrytown Towers Project since HUD's first failure to adjust the Contract Rent on January 31, 1995.

17. Despite CMHA's compliance with the express provisions of the Quarrytown HAP Contract, HUD continues to refuse to make retroactive rent adjustments for the years 1995, 1996, 1997, 1998, 1999, and 2000.

18. By its actions, HUD has breached the express terms of the Quarrytown HAP Contract in failing to grant automatic annual adjustments in the Contract Rent for the years 1995, 1996, 1997, 1998, 1999, and 2000.

19. As a result of HUD's breach of the HAP Contract between CMHA and HUD, CMHA has been damaged in an approximate amount of $400,000.00. CMHA is therefore entitled to the monetary and ancillary injunctive relief described hereinafter.

WHEREFORE, CMHA prays that this Court award it money damages in the amount of at least $400,000.00, all additional money damages suffered by CMHA from the filing of the within Complaint until entry of judgment, or such additional other amounts that are proved at trial, together with pre- and post-judgment interest, attorney fees and any such other relief that the Court deems proper.

In addition, CMHA prays that this Court remand this matter to HUD and order that HUD adjust the Quarrytown Towers Project's current Contract Rents to reflect those adjustments which HUD was required but failed to make, and order that the adjusted

Contract Rents serve as the basis for all future Contract Rent adjustments which are required to be made by HUD pursuant to the terms of the Quarrytown HAP Contract.

Respectfully submitted,

Dated: January 18, 2001

Fred J. Livingstone

TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-3141

Attorney for Plaintiff

Of counsel:

Lessie Milton Jones
Mark J. Valponi
Carl A.S. Coan, III

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

CLEVELAND AREA OFFICE
THE RENAISSANCE ON PLAYHOUSE SQUARE
1350 EUCLID AVENUE, SUITE 500
CLEVELAND, OHIO 44115-1815

26 JAN 2001

TERRI HAMILTON BROWN, EXECUTIVE DIRECTOR
CUYAHOGA METROPOLITAN HOUSING AUTHORITY
1441 WEST 25TH STREET
CLEVELAND, OHIO 44113-3101

Dear Ms. Brown:

SUBJECT: Request for Rent Increase Processing
Project No. Non-Insured; HAP Contract No. OH16-0013-012
Quarrytown
Berea, Ohio

Receipt of your letter of November 17, 2000 is hereby acknowledged. As you may recall, in your November 17th letter you asked that rent increase processing be completed, with rent increases subsequently approved for the subject project, going back to 1995.

In a previous reply to your November 17th letter, we advised that the responsibility for rent increase processing for Quarrytown had been assigned to a Contract Administrator (CA). Accordingly, we told you that your request would be forwarded to the CA for consideration. For several reasons, we have now elected to do the processing of your rent increase request here in this Office rather than have the CA do the work. Please accept our apologies for any confusion or delay which this change may have caused.

In asking for rent increase processing for Quarrytown, we believe you have raised four separate issues for consideration. Each of the four will be addressed individually herein.

First is the question of the 1995 rent increase. Because the effective date of the 1995 rent increase would be February 1st, there would be no comparability requirement. Comparability did not become an issue until March of 1995 with the publication of the Notice H95-12. Therefore, the rent processing for 1995 would be a simple application of the appropriate Annual Adjustment Factor (AAF) to the current (1994) rents. The appropriate AAF is 1.029, as found in the April 26, 1994 Federal Register, and the 1994 rents were $560. The calculation would then be as follows:

| (a) Unit Type | (b) Current Section 8 Contract Rents | (c) AAFs From Register Dated 4-26-94 | (d) New Section 8 Contract Rents (b) x (c) |
|---|---|---|---|
| 1BR (180) | $560 | 1.029 | $576 |



MAR.-20'01 (MON) 10:37 HUD CLEVELAND TEL:312 886 4944

Please understand that CMHA's calculation for 1995 is flawed insofar as the wrong AAFs (seemingly 1.018 & 1.028) were used, and the turnover/non-turnover requirements of the Notice H95-12 were erroneously applied to the 1995 rent increase calculations.

And, please recall that the 1995 rent increase approval had been withheld as an "Administrative Sanction" arising from CMHA's failure to come into TRACS compliance. While CMHA is still not in full TRACS compliance, I understand that some data has been entered and progress is being made, I am therefore prepared to lift the Sanction and authorize the 1995 AAF rent increase, as outlined in the previous paragraphs.

This letter does not, however, constitute approval for collecting increased rents. In order that your request for the 1995 rent increase may be approved, please prepare, and submit to this Office, three copies of the form HUD-92458, "Rent Schedule". Blank copies of the form are enclosed for your use.

In preparing the forms HUD-92458, please consider that the new maximum annual gross rental potential from dwelling units shall be $1,244,160, and please show February 1, 1995 as the effective date.

At $16.00 per unit per month, the following dollar amounts (assuming 100% occupancy) could be billed to the contract by the project, <u>following</u> approval of the Rent Schedule.

For 1995; $16 x 180 x 11 = $31,680
For 1996; $16 x 180 x 12 = $34,560
For 1997; $16 x 180 x 12 = $34,560
For 1998; $16 x 180 x 12 = $34,560
For 1999; $16 x 180 x 12 = $34,560
For 2000; $16 x 180 x 12 = $34,560
For 2001; $16 X 180 X 2 = $ 5,760; a total of $210,240

The second issue to be considered is the matter of the "initial difference". You have cited an initial difference of $120 based upon a letter of addendum to a 1997 rent survey (a survey which was not provided to us for review). By regulation however, the initial difference was limited to 10% or 20% of the original comparables. To have an initial difference of $120, the original (1977) comparables would have to have been somewhere between $600 and $1,200, an unlikely and certainly unproven scenario. In cases such as this, where the owner cites an initial difference, but has not, or cannot, provide evidence of the actual initial difference, we can allow 10% of the initial rents as an initial difference. With initial rents of $310, the highest possible initial difference (without some evidence to the contrary) would then be $31 ($310 x .10). Please see the Notice H95-12 and the Notice H97-14 for details.

In searching our files however, we found a copy of our own letter, dated April 20, 1984 which tells CMHA that the initial difference was in fact $62. In fairness, while you may not be able to produce evidence of the initial difference, I believe we should share this information. A copy of the April 20, 1984 letter is enclosed as reference.

Reducing your initial difference figure of $120 to $62 would alter all of your rent calculations. The altered rent calculations would generate amounts well over the comparables, even with the $62 initial difference added to the comparables, and, in keeping with the series of Notices beginning with H95-12 (H95-12, H95-92, H96-33, H96-89, H97-03, H97-14, H98-03, H99-17, and H00-14), we could therefore not approve the increases.

The third issue to be considered is the "Material Factor Component" being claimed. First, please realize that the change in the Initial Difference discussed in the prior paragraphs makes the "Material Factor Component" irrelevant for the years 1996, 1997 and 1998. Only if we were to accept your claim of an entitlement to a 20% "Material Factor Component", could increases for February 1, 1999 and forward be a consideration. But, regardless of the particulars of the referenced "Park Village" case, I believe we have no authority to grant the asked for 20% "Material Factor Component". We are limited in our processing by the instructions given to us in the series of Notices mentioned previously (H95-12, H95-92, H96-33, H96-89, H97-03, H97-14, H98-03, H99-17, and H00-14). There is no provision in any of these Notices which would allow us to grant the asked for 20% boost.

The fourth issue to be considered is the matter of retroactivity. Even if you were correct in your calculations (which we do not believe to be the case), the fact remains that the required comparability study was not provided in a timely manner. With the comparability study finally received in this Office on November 21, 2000, the absolute earliest date we could approve a rent increase would be January 20, 2001 (November 21, 2000 plus 60 days). With rents for Quarrytown about to be set at $576, and with comparables at only $470, plus an initial difference of $62, we could not, at this time, legally approve any further rent increase, ($576 > $470 + $62).

Should there be any questions in this matter, please contact Mr. Ralph Jurkoshek at (216) 522-4058, extension 7174.

Sincerely,
Dennis G. Morton
Director,
Cleveland Multifamily Program Center

Enclosures:

| Correspondence Code | Originator 5DHMA | Concurrence 5DHMP | Concurrence 5DHMA | Concur | Concur |
|---|---|---|---|---|---|
| Name | Jurkoshek | Schwegler | | | |
| Date | RJ 1-26-01 | | | | |


MAR.-20.'01 (MON) 10:57 HUD CLEVELAND

**CMHA**

Cuyahoga Metropolitan Housing Authority

1441 West 25th Street • Cleveland, Ohio 44113
Phone: 216/348-5000 • Fax: 216/348-4925

Dennis

DEPT. OF HOUSING & URBAN DEV.
RECEIVED
? 2? 2001
M. F. LOAN MANAGEMENT

February 15 2001

Mr. Dennis G. Morton
Director, Cleveland Multifamily Program Center
Cleveland Area Office of HUD
Renaissance Building – Suite 500
1350 Euclid Avenue
Cleveland, Ohio 44115-1815

OH16-0013-012

Re: <u>Request for Rent Increases Applicable to Project No. OH16-0013-912 Quarrytown Towers; Berea, OH. – Years 1995 through the Present</u>

Dear Director Morton:

This is a response to the issues raised in your letter of January 26, 2001 regarding the above matter in the order set forth in that letter.

The Authority is in agreement with your calculation of the 1995 year's increases based on multiplying the $560 adjusted rent for 1994 by the factor of 1.029 to result in a 1995 anniversary rent adjustment to $576, or a $16 per month per unit increase. HUD form 92458 will be submitted for that year as requested.

However, we do not agree with the application of the same $16 per month increase for each of the subsequent years because those years were not adjusted by the annual adjustment factors. We have revised the spreadsheets to reflect those increases and same are enclosed.

Additionally, our position pertaining to the "Initial Difference", "Material Factor", and "Retroactivity" are outlined in a legal opinion with accompanying exhibits that was drafted by our Outside Counsel, Taft, Stettinius & Hollister LLP (formally Kelly, McCann & Livingstone), pursuant to my request. A copy is included for your review.

Board of Commissioners
Bracy Lewis, Ch… , Vice-Chairman
Louise Harris C. Townsend II

The lawsuit mentioned during our January 25th meeting at the Authority has been filed in the United States Court of Claims mainly to preserve the statute of limitations. As we are now communicating substantively on the issues, it is hoped that we will be able to resolve the matters outlined before any additional litigation preparation or court appearance is necessary.

It is requested that a review of our legal position be addressed as soon as practical, so that we will not incur unnecessary legal expenses.

Very truly yours,

George Phillips
Deputy Executive Director
Housing Operations & Development

Enclosure (1)

cc: LaVerne N. Boyd, Esq.
Fred J. Livingstone, Esq.
Lessie M. Jones, Esq.
File

F:\DATA\legal\III\LEGAL-ADM\NICHOLS\Morton.Dennis-ProposedLtrtoHUDRe-RequestRentIncreases021501.doc

CMHA

Cuyahoga Metropolitan Housing Authority

1441 West 25th Street • Cleveland, Ohio 44113
Phone: 216/348-5000 • Fax: 216/348-4925

March 2, 2001

DEPT. OF HOUSING & URBAN DEV.
RECEIVED
MAR 09 2001
M. F. LOAN MANAGEMENT

Mr. Dennis G. Morton
Director, Cleveland Multifamily Program Center
Cleveland Area Office of HUD
Renaissance Building- Suite 500
1350 Euclid Avenue
Cleveland, Ohio 44115-1815

RE: **Request for Rent Increase Applicable to Project No. OH 12-8023-002 Severance Tower Apartments-Years 1995 through the Present**

Dear Mr. Morton:

This is to supplement our letters of January 11, 1999, February 9, 1999, and April 27, 2000, and to respond to your letters of February 17, 1999 and May 5, 2000, with regard to the Severance Tower Apartments, Project No. 12-8023-002. Previously, on November 17, 2000 and November 30, 2000, CMHA provided supplemental information with regard to the Quarrytown Towers, Project No. OH16-0013-012.

In CMHA's earlier letters, the appropriate automatic adjustment contract rent increases for the Severance Tower Project for the years 1995 through 2000 were requested. This submission extends the request for the above referenced rent increases to the present time. As stated previously, it is requested that the past due increases in contract rents be paid to CMHA in a lump sum together with interest.

Per your letter of May 5, 2000, CMHA is documenting it's current request with the following enclosed materials:

1. HUD Rent Survey prepared by Richard G. Racek, MAI and Richard G. Racek, Jr. containing HUD forms 92-273 for the Project for each year from 1995 through the present.

2. Letter of Addendum from Richard G. Racek concluding that the adjusted rental rate for one bedroom units in Severance Tower as of November 10, 1977 was $210 per month thereby reflecting a $96 initial difference between that and the $306 initial contract rent in the HAP Contract.

Board of Commissioners
Bracy Lewis, Ch
Louise Harris
Terri I
Vice-Chairman
C. Townsend II
rector

Mr. Dennis G. Morton
March 2, 2001
Page 2.

3. Owner's Certification.

4. Report of Unit Turnover.

5. Certification of CMHA as to the validity of the information submitted.

Also enclosed is a summation of the past due increases for the Project calculated at the rates prescribed by the regulations. Please note that the enclosed summation for increases include calculations of the comparability limitation and include a 20% materiality component. See Park Village Apts. V. United States, 25 Cl. Ct. 729, 1992 U.S. Cl. Ct. LEXIS 145 and subsequent 1994 and 1998 cases.

Your letter of May 5, 200 made reference to language in HUD Notice 97-14 which purports to restrict the ability of HAP Contract Owners to receive "Automatic Annual Adjustments." As set forth in CMHA's letter dated April 27, 2000, there is no provision in the HAP Contract which would permit HUD to impose such conditions on the application of the annual adjustment. Further, nothing permits HUD to establish a new statute of limitations overriding the six (6) year statute enacted by Congress.

In deference to your request that CMHA come into Compliance with HUD's Automation Rule, CMHA has made several transmissions pertaining to the Severance Tower Project in order to achieve such compliance. Such efforts have been made despite the fact that the claim being presented is based on the Severance Tower HAP Contract, of which the Automation Rule is not a part. Since the six (6) year statute of limitations is approaching for CMHA's 1995 claims with regard to the Severance Tower Project, with a Contract date of May 1, CMHA requests that HUD immediately process and either approve or reject its claims. If rejected, CMHA will have no other option than to also litigate this matter in the United States Court of Federal Claims.

Very truly yours,

Terri Hamilton Brown
Executive Director

THB\alw

Enclosures

F:\DATA\legalfil\LEGALADM\NICHOLS\Dennis Morton Ltr Re Rent Increase Project OH12-8023-002.doc

# HUD RENT SURVEY
OF

Severance Towers Apartments
25 Severance Circle
Cleveland Heights, Cuyahoga County, Ohio

Presented in a Summary Report

FOR: Cuyahoga Metropolitan Housing Authority
c/o Taft, Stettinius & Hollister, LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Attention: Fred J. Livingstone, Esq.

BY: Richard G. Racek, MAI
Richard G. Racek, Jr.

AS OF: May 1, 1995
May 1, 1996
May 1, 1997
May 1, 1998
May 1, 1999
May 1, 2000
February 22, 2001

CALABRESE, RACEK AND MARKOS, INC.
REAL ESTATE SERVICES
1110 EUCLID AVENUE, SUITE 300
CLEVELAND, OHIO 44115-1603

216/696-5442
FAX 216/696-5499
www.crnonline.com

OFFICERS

ANTHONY J. CALABRESE, MAI (1934-1989)
RICHARD G. RACEK, MAI
STEVEN A. CALABRESE, MAI
CLIFFORD D. FEIERABEND, MAI
DAVID S. CALABRESE

ASSOCIATES

ERIC M. CALABRESE
DWIGHT A. KUMLER, MAI
DOUGLAS C. LEOHR
MARK E. PAUL, SRA, MAI
RICHARD G. RACEK, JR
DANIEL L. SMITH
DOUGLAS P. SLOAN, MAI
BRIAN J. TOBEY

February 26, 2001

Cuyahoga Metropolitan Housing Authority
c/o Taft, Stettinius & Hollister, LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Attention: Fred J. Livingstone, Esq.

RE: HUD Rent Survey of -
Severance Towers Apartments
25 Severance Circle
Cleveland Heights, Cuyahoga County, Ohio

Dear Mr. Livingstone:

As requested, the appraisers have made a personal inspection, study, and analysis of the above captioned property and the area in which it is located. The results of this HUD Rent Survey are delineated in the accompanying summary report. The subject property is a189 unit, apartment building that was constructed in 1979. Due to an average maintenance program the overall property is in generally average to fair condition. The improvements include one, 8 story, masonry, elevator apartment building with various site improvements.

The purpose of this HUD Rent Survey is to estimate the market rent for the subject's one bedroom units in their relative condition as of the effective dates of evaluation. The intended use of this summary report is to assist the Cuyahoga Metropolitan Housing Authority in analyzing the rent schedule of the above captioned property for external reporting purposes. Market rent is defined on page 7 of this report.

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1995, is:

**$460 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1996, is:

**$470per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1997, is:

**$490 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1998, is:

**$525 per month**

CALABRESE, RACEK AND MARKOS, INC.

Cuyahoga Metropolitan Housing Authority
c/o Taft, Stettinius & Hollister, LLP
Cleveland, Ohio 44114-2302



February 26, 2001

Attention: Fred J. Livingstone, Esq.

RE: HUD Rent Survey of -
Severance Towers Apartments
25 Severance Circle
Cleveland Heights, Cuyahoga County, Ohio

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1999, is:

**$550 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 2000, is:

**$570 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of February 22, 2001, is:

**$580 per month**

At the time of the inspection (February 22, 2001) only four units were vacant. A representative sampling of the units and all of the common areas were inspected. The units inspected were generally in average to fair overall condition. Additionally, the exterior of the property has been adequately maintained and hence it is also in average to fair condition.

It is assumed by the appraisers that the subject property is free and clear of all materials or conditions that are considered hazardous by the Environmental Protection Agency. Should any materials or conditions of this nature be found, the estimated market rent will then be subject to review.

The appraisers state that there is no present or contemplated future interest in the real estate that is the subject of this report. Furthermore, it is stated that no other party has influenced the appraisers' final rent conclusions. This rent survey report has been made in conformity with and is subject to the requirements of the Code of Professional Ethics and the Standards of Professional Conduct of the Appraisal Institute, and was completed in accordance with Uniform Standards of Professional Appraisal Practices.

In conclusion, the subject property is considered to have desirable apartment units within its market, which should continue to be viable income producing units into the foreseeable future.

Respectfully submitted,

CALABRESE, RACEK & MARKOS, INC.

Richard G. Racek, MAI
President

Richard G. Racek, Jr.
Appraiser

:lc
5584
4756

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

CLEVELAND AREA OFFICE
THE RENAISSANCE ON PLAYHOUSE SQUARE
1350 EUCLID AVENUE, SUITE 500
CLEVELAND, OHIO 44115-1815

March 27, 2001

Terri Hamilton Brown
Executive Director
Cuyahoga Metropolitan Housing Authority
1441 West 25th Street
Cleveland, Ohio 44113-3101

Dear Ms. Brown,

Subject: Rent Increase Request - 1995 Through Present
Section 8 #OH12-8023-002
Severance Towers
Cleveland Heights, Ohio

A review has been completed of your submission of March 2, 2001 (received March 9, 2001). The submission was a Rent Comparability Study (RCS) in response to previous letters from HUD dated February 17, 1999 and May 5, 2000 regarding past rent increase requests relevant to this property. Due to certain circumstances concerning the history of rent levels at this property, this Office decided to review the submission rather than refer it to the Contract Administrator that it has been assigned to under a HUD contractual arrangement.

Your request sought approval for increases in the rent levels from 1995 forward through the application of published Automatic Adjustment Factors to the rent level at that time, and in subsequent years. We have advised previously that certain Housing Notices issued by HUD (which have been provided to your organization) provided guidance on the actions to be taken by owners/management agents before HUD would process rent increase requests. When such procedures were followed satisfactorily, HUD would process and, if approvable, grant rent increases with an effective date commencing sixty (60) days following receipt of a proper request. Your acceptable request was received March 9, 2001, making the earliest date of implementation May 7, 2001.

One exception exists to the above sixty (60) day rule which could pertain to Severance Towers, and that is if its' Fiscal Year 1996 HAP contract anniversary date fell between April 26, 1996 and September 30, 1996 (Severance Towers' date was May 1, 1996). As such, comparability and turnover procedures stated in Notice H95-12 would not be applicable for this one-time exception for the year 1996.

In addition to the above requirement that an acceptable rent increase request be received, administrative sanctions were imposed due to the failure of CMHA to comply with the Department's Automation Rule. It is noted that while CMHA is still not in full TRACS compliance, some data is now in the system and progress is being made. Thus the sanction for the processing of the 1996 rent increase is now waived, and the processing would entail the application of the appropriate Annual Adjustment Factor (AAF) to the 1995 rents. That AAF is 1.018 for units with turnover as published in the Federal Register dated November 3, 1995 (the no turnover AAF was not applicable during the 1996 window of comparability waiver, and thus the higher AAF is used for all units), and the 1995 rents were $572. The calculation is as follows:

| (a) Unit Type | (b) Current Sect. 8 Contract Rents | (c) AAF From Fed. Register Dated 11/3/95 | (d) New Sect. 8 Contract Rents (b) x (c) |
|---|---|---|---|
| 1-BR (190) | $572 | 1.018 | $582 |

This letter does not constitute approval for collecting increased rents. In order for the 1996 rent increase to be approved, please prepare and submit to this Office, three (3) copies of the form HUD-92458 "Rent Schedule". Blank copies of these forms are included for your use. In preparing the Rent Schedules, the new maximum annual gross rental potential from the dwelling units shall be $1,326,960, and the effective date is to be shown as May 1, 1996.

Thus an increase of $10 per unit per month under the following schedule can be billed to the contract by the project, after HUD approval of the Rent Schedules. This is to be a separate submission of Rent Schedules from the approval of rents for May 7, 2001 which will be addressed further on in this communication. Back billing can be taken against the contract based on the above calculation in the following amount (assuming 100% occupancy):

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| For 1996: | $10 | x | 190 units | x | 8 months | = | $15,200 |
| For 1997: | $10 | x | 190 units | x | 12 months | = | $22,800 |
| For 1998: | $10 | x | 190 units | x | 12 months | = | $22,800 |
| For 1999: | $10 | x | 190 units | x | 12 months | = | $22,800 |
| For 2000: | $10 | x | 190 units | x | 12 months | = | $22,800 |
| For 2001: | $10 | x | 190 units | x | 4 months | = | $ 7,600 |

TOTAL BACKBILLING APPROVABLE = $114,000

Regarding your submission for an increase in rents effective May 1, 2001, you submitted an estimate for the "initial difference" (ID) of $96 based on an estimated survey. As an initial difference was limited to 10% or 20% of the original comparables, by regulation, to have an initial difference of $96 would imply that the rents for the original comparables would have been between $480 and $960 per month which has not been supported by any submission of actual initial difference. In such case, an allowance of 10% of the initial rents ($306 x .10) can be allowed ($31), or a maximum of 20% of the initial rents ($306 x .20) or $62. Even though it could be argued that the $31 figure is a proper usage, the $62 amount will be used as the initial difference in addressing your rent increase request that is to be effective May 7, 2001.

Reducing your initial difference figure from $96 to $62 will alter your rent calculations for rents to be implemented May 7, 2001. In addition, the appropriate AAFs to be utilized for projects with an anniversary date subsequent to October 1, 2000 were published in the Federal Register dated November 7, 2000 - for turnover units the AAF is 1.013; for non-turnover the AAF is 1.003. These have been applied to the current rent level given the Rent Computation Study and turnover information provided in your submission. Under processing instructions issued by HUD, both past and present, no provision has been allowed for consideration of your request for a 20% Material Factor to be added to the Comparable Rent plus the initial difference, and thus this Factor is not included in deriving the Comparability Limit.

The results of the processing of your March 9, 2001 request are as follows:

Turnover units (14)

| | | | | |
|---|---|---|---|---|
| $ 582* | X | 1.013 | = | $590 |
| Current Rent/mo. | | Table 1 Factor | | New Rent Level |

Units with No Turnover (176)

| | | | | |
|---|---|---|---|---|
| $582* | X | 1.003 | = | $584 |
| Current Rent/mo. | | Table 2 Factor | | New Rent Level |

*As calculated previously by application of 11/3/95 AAF to 1995 rents

Gross Rent Potential Calculation

| | | |
|---|---|---|
| $590 X 14 turnover units | = | $ 8,260 |
| 584 X 176 non-turnover units | = | $ 102,784 |
| Total GRP | | $ 111,044 |

$111,044 (total GRP) divided by 190 units = $584/mo.

The new rent level for all 1BR units (190) is approvable at $584/mo. This letter does not constitute approval for collecting increased rents. In order for the 2001 rent increase to be approved, please prepare and submit to this Office, three (3) copies of the form HUD-92458 "Rent Schedule". Blank copies of these forms are included for your use. In preparing the Rent Schedules, the new maximum annual gross rental potential from the dwelling units shall be $1,331,520, and the effective date is to be shown as May 1, 2001.

Since the required comparability study was not provided in a timely manner, and in accordance with requirements as provided to you in previous correspondence from this Office, no retroactivity will be considered.

Please forward the executed, completed sets (2) of the Rent Schedules, as requested, for the two (2) rent changes approvable by this letter immediately in order to implement the rents at the earliest possible time.

Should you have any questions, please contact John McNeela at (216) 522-4058 Ext. 7168.

Sincerely,

Dennis G. Morton
Director
Cleveland Multifamily Program
Center

Enclosures

| | ORIGINATOR | CONCURRENCE | CONCURRENCE | CONCURRENCE | CONCURRENCE |
|---|---|---|---|---|---|
| OFC. CODE | | | | | |
| NAME | McNeela | Schwegler | Morton | | |
| DATE | 3/27/01 | 3.28.01 | | | |