CMHA

Cuyahoga Metropolitan Housing Authority

2711 Church Street • Cleveland, Ohio 44113
Phone: 216/348-5100 • Fax: 216/348-4998

DEPT. OF HOUSING & URBAN DEV.
RECEIVED
APR 18 2001
M.F. LOAN MANAGEMENT

April 16, 2001

U.S. Department of Housing and Urban Development
Cleveland Area Office
The Renaissance on Playhouse Square
1350 Euclid Avenue, Suite 500
Cleveland, Ohio 44115-1815
Attention: Mr. Dennis G. Morton

Subject: Severance Towers Rent Increase Request – 1995 through present
Section 8 #OH12-8023-002

Dear Mr. Morton:

Enclosed are three completed copies of HUD form 92458 Rent Schedule Low Rent Housing for Severance Towers. These documents are being submitted in response to your letter dated March 27, 2001.

If my understanding is correct, upon approval of these documents I can then submit additional information to support back billing of $10 per occupied unit for eight months in 1996 and for the years 1997 through present.

Please advise me if there is any further information you need in order to expedite these documents. I can be reached at (216) 348-8293 ext. 3164.

Best Regards,

Lou Anne Chung

Lou Anne Chung
Chief Financial Officer

c. S. Williams
L. Nichols Boyd
T. Hamilton Brown

Board of Commissioners

Bracy Lewis, C • er, Vice-Chairman
Louise Harris • bert C. Townsend II
Te ector

# Rent Schedule
# Low Rent Housing

U.S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

See back of page for instructions, Public Burden Statement and Privacy Act requirements.

OMB Approval No. 2502-0012 (Exp. 07/31/...

| Project Name | FHA Project Number | Date Rents Will Be Effective (Month Yea...) |
|---|---|---|
| Severance Towers | OH12-8023-002 | 05/01/96 |

## Part A – Apartment Rents

Show the actual rents you intend to charge, even if the total of these rents is less than the Maximum Allowable Monthly Rent Potential.

| Col. 1 Unit Type (Include Non-revenue Producing Units) | Col. 2 Number of Units | Contract Rents: Col. 3 Rent Per Unit | Contract Rents: Col. 4 Monthly Contract Rent Potential (Col. 2 x Col. 3) | Col. 5 Utility Allowances (Effective Date: ___/___/___) | Col. 6 Gross Rent (Col. 3 + Col. 5) | Market Rents (Sec. 236 Projects Only): Col. 7 Rent Per Unit | Market Rents (Sec. 236 Projects Only): Col. 8 Monthly Market Rent Potential (Col. 2 x Col. 7) |
|---|---|---|---|---|---|---|---|
| 1 BDM, 1B, K, LR | 189 | $582 | $109,998 | | $582 | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total Units | | Monthly Contract Rent Potential (Add Col. 4)* $109,998 | | | | Monthly Market Rent Potential (Add Col. 8)* | |
| | | Yearly Contract Rent Potential (Col. 4 Sum x 12)* $1,319,976 | | | | Yearly Market Rent Potential (Col. 8 Sum x 12)* | |

* These amounts may not exceed the Maximum Allowable Monthly Rent Potential approved on the last Rent Computation Worksheet or requested on the Workshee... you are now submitting. Market Rent Potential applies only o Section 236 Projects.

## Part B – Items Included in Rent

**Equipment/Furnishings in Unit: (Check those included in rent.)**

- [X] Range
- [X] Refrigerator
- [X] Air Conditioner
- [ ] Disposal
- [ ] Dishwasher
- [X] Carpet
- [ ] Drapes
- [ ] ______
- [ ] ______
- [ ] ______
- [ ] ______
- [ ] ______

**Utilities: (Check those included in rent. For each item, (even those not included in rent), enter E, F, or G on line beside that item): E=electric; G=gas; F=fuel oil or coal.**

- [X] Heating G
- [X] Cooling E
- [X] Hot Water G
- [X] Cooking G
- [X] Lights, etc E
- [ ] ______

**Services/Facilities (check those included in rent)**

- [X] Parking
- [ ] Laundry
- [ ] Swimming Pool
- [ ] Tennis Courts
- [ ] ______
- [ ] ______
- [ ] ______
- [ ] ______
- [ ] Nursing Care
- [ ] Linen/Maid Service
- [ ] ______
- [ ] ______

## Part C – Charges in Addition to Rent (e.g., parking, cable TV, meals)

| Purpose | Monthly Charge |
|---|---|
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |

## Part D – Non-Revenue Producing Space

| Col. 1 Use | Col. 2 Unit Type | Col. 3 Contract Rent |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| Total Rent Loss Due to Non-Revenue Units | | $ 0.00 |

## Part E – Commercial Space (retail, offices, garages, etc.)

| Col. 1 Use | Col. 2 Monthly Rent Potential | Col. 3 Square Footage | Col. 4 Rental Rate Per Sq. Ft. (Col. 2 divided by Col. 3) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | $ 0.00 | Total Commercial Rent Potential | |

## Part F – Maximum Allowable Rent Potential

Enter Maximum Allowable Monthly Rent Potential From Rent Computation Worksheet (to be completed by HUD or lender) $1,319,976

Previous editions are obsolete



form HUD-92458 (3/94)
ref Handbook 4350

U. S. Department c ousing and Urban Development

Cleveland Area Office
Fifth Floor
Renaissance Building
1350 Euclid Avenue
Cleveland, OH 44115-1815

April 19, 2001

Lou Anne Chung
Chief Financial Officer
Cuyahoga Metropolitan Housing Authority
2711 Church Street
Cleveland, Ohio 44113

Dear Ms. Chung,

Subject: Retroactive Rent Increase
Section 8 #OH12-8023-002
Severance Towers
Cleveland Heights, Ohio

This letter will acknowledge receipt and approval of the Rent Schedules Low Income Housing (HUD-92458) which were received with your letter dated April 16, 2001.

These Rent Schedules were submitted in compliance with the conditions set forth in our letter of March 27, 2001 which allowed retroactive implementation to May 1, 1996 of a $10/month increase from unit rents of $572/mo. to $582/mo. for the subsidized units at Severance Towers. These are the rents that are now approved for Severance Towers, and documented by the executed copy of the Rent Schedule being returned to you with this letter.

Our March 27, 2001 letter also authorized an increase from the above rent level of $582/mo. to $584/mo. which was to be effective May 1, 2001 upon receipt of executed Rent Schedules for that change. No Rent Schedules to document that approval were submitted with your letter of April 16, 2001, and thus the rents remain at $582/mo. until the Rent Schedules for that increase are submitted and approved by HUD.

Should you have any questions, please contact me at (216) 522-4058 Ext. 7168.

Sincerely,

John J. McNeela

Enclosure

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY, 1441 West 25th Street Cleveland, Ohio 44113 | ) | 01-251 C |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | COURT OF FEDERAL CLAIMS NO. ______ |
| Defendant. | ) | COMPLAINT |

FILED APR 26 2001

Preliminary Statement

1. Plaintiff Cuyahoga Metropolitan Housing Authority ("CMHA") brings this action for damages resulting from the failure of the United States of America, acting through the Department of Housing and Urban Development ("HUD"), to provide for automatic annual rent increases in 1995, 1996, 1997, 1998, 1999 and 2000 for the Severance Tower Apartments. Pursuant to the Housing Assistance Payment Contract ("HAP Contract") entered into between CMHA and HUD, CMHA is entitled to annual rent increases for the subject properties more fully described herein. HUD and its agents have breached the HAP Contract by their failure and subsequent refusal to grant the rent increases, mandated by the HAP Contract, resulting in damages to CMHA in the amount of at least $492,000.00. In addition to the monetary damages to which CMHA is entitled,

CMHA seeks ancillary injunctive relief requiring that HUD adjust the current Contract Rents to reflect the adjustments that HUD has failed and subsequently refused to make and to use the adjusted Contract Rents as the basis for further annual adjustments as required by the HAP Contract.

**Jurisdiction**

2. This Court has subject matter jurisdiction pursuant to the provisions of the Tucker Act, 28 U.S.C. § 1491, as this claim is founded upon breaches of an express contract entered into between CMHA and HUD.

**Parties**

3. Pursuant to the provisions of Ohio Revised Code §§ 3735.27 through 3735.50, CMHA constitutes a "body corporate and politic," with the power and authority to provide "safe and sanitary housing accommodations to families of low income" within Cuyahoga County, Ohio. Pursuant to Ohio Revised Code § 3735.31, CMHA has the power to accept financial assistance from the federal government and can also sue or be sued.

4. HUD is an agency of the United States of America and at all times relevant to the allegations in this Complaint was acting as an agent of the United States of America. The actions of HUD are therefore imputed to the United States of America.

**Statement of the Facts**

5. CMHA is the owner of a certain 188 one-bedroom rental property known as the Severance Towers Apartments ("Severance") which is located at 25 Severance Circle, Cleveland Heights, Cuyahoga County, Ohio.

6. On May 1, 1979, pursuant to the United States Housing Act of 1937, 42 U.S.C. 1437, *et seq.*, specifically 42 U.S.C. 1437f ("Section 8"), and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, *et seq.*, CMHA entered into a HAP Contract with HUD for Severance ("Severance HAP Contract"), which was designated Severance Towers Project, HUD project number OH 12-8023-002. (See Severance HAP Contract attached as Exhibit A.)

7. Pursuant to the terms of the Severance HAP Contract, HUD is to provide housing assistance payments to CMHA for units in the Severance Towers Project under lease by lower-income families.

8. The Severance HAP Contract set forth the initial contract rent for each unit at $306 per unit per month ("Initial Contract Rent").

9. Pursuant to Section 1.6(f)(1) of the Severance HAP Contract, CMHA is required to submit monthly requests to HUD for housing assistance payments.

10. Under the provisions of 42 U.S.C. § 1437f(c)(1), the housing assistance payments provided by HUD are designed to reimburse CMHA the difference between the rent called for under the Severance HAP Contract for each unit ("Contract Rent") and the amount paid by each leasing family.

11. Section 1.8(b) of the Severance HAP Contract, entitled Automatic Annual Adjustments, contains a mechanism whereby the Contract Rent due CMHA is to be increased on an annual basis and provides in full as follows:

> (1) *Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions*

*warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.*

(2) *On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.*

12. Section 1.8(d) of the Severance HAP Contract further provides:

(d) *Overall Limitation. Not withstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.*

13. Between May 1980 and May 1994, the Contract Rent for Severance was increased pursuant to the provisions of Section 1.8(b) of the Severance HAP Contract from $306 to $572 per unit per month.

14. Since the 1994 Contract Rent adjustment which established the Contract Rent at $572.00 per unit per month, the Government has published Automatic Annual Adjustment Factors each year.

15. Based upon the provisions of the Severance HAP Contract cited above, CMHA was entitled to receive automatic Contract Rent adjustments for the years 1995, 1996, 1997, 1998, 1999 and 2000, which HUD has repeatedly failed to provide.

16. The failure by HUD to adjust the Contract Rents on the Severance HAP Contract's anniversary dates has resulted in substantially lower housing assistance payments being made by HUD to CMHA for the Severance Towers Project since HUD's first failure to adjust the Contract Rent on May 1, 1995.

17. Despite CMHA's compliance with the express provisions of the Severance HAP Contract, HUD continues to refuse to make rent adjustments for the years 1995, 1996, 1997, 1998, 1999, and 2000.

18. By its actions, HUD has breached the express terms of the Severance HAP Contract in failing to grant automatic annual adjustments in the Contract Rent for the years 1995, 1996, 1997, 1998, 1999, and 2000.

19. As a result of HUD's breach of the HAP Contract between CMHA and HUD, CMHA has been damaged to the extent of at least $492,000.00. CMHA is therefore entitled to the monetary and ancillary injunctive relief described hereinafter.

WHEREFORE, CMHA prays that this Court award it money damages in the amount of at least $492,000.00, all additional money damages suffered by CMHA from the filing of the within Complaint until entry of judgment, or such additional other amounts that are proved at trial, together with pre- and post-judgment interest, attorney fees and any such other relief that the Court deems proper.

In addition, CMHA prays that this Court remand this matter to HUD and order that HUD adjust the Severance Towers Project's current Contract Rents to reflect those adjustments which HUD was required but failed to make, and order that the adjusted Contract Rents serve as the basis for all future Contract Rent adjustments which are required to be made by HUD pursuant to the terms of the Severance HAP Contract.

Respectfully submitted,

Dated: April 25, 2001

Fred J. Livingstone

TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-3141

Attorney for Plaintiff

Of counsel:

Lessie Milton Jones
Mark J. Valponi
Carl A.S. Coan, III

CMHA

Cuyahoga Metropolitan Housing Authority

1441 West 25th Street • Cleveland, Ohio 44113
Phone: 216/348-5000 • Fax: 216/348-4925

May ~~4~~ 15th, 2001

Mr. Dennis G. Morton, Director
Cleveland Multifamily Program Center
Cleveland Area Office of HUD
Renaissance Building – STE. 500
1350 Euclid Avenue
Cleveland, OH 44115-1815

**RE: Request for Rent Increase Applicable to Project No. OH 16-0013-013 Ambleside Tower Apartments – Years 1995 through the Present**

Dear Mr. Morton:

This is to supplement our letters of January 11, 1999, February 9, 1999, and April 27, 2000, and to respond to your letters of February 17, 1999 and May 5, 2000, with regard to the Ambleside Tower Apartments, Project No. OH 16-0013-013. Previously, CMHA provided this supplemental information with regard to the Quarrytown Towers, Project No. OH16-0013-012, and with regard to the Severance Towers, Project No. OH 12-8023-002.

In CMHA's earlier letters, the appropriate automatic adjustment contract rent increases for the Ambleside Tower Project for the years 1995 through 2000 were requested. This submission extends the request for the above referenced rent increases to the present time. As stated previously, it is requested that the past due increases in contract rents be paid to CMHA in a lump sum together with interest.

Per your letter of May 5, 2000, CMHA is documenting its current request with the following enclosed material:

1. HUD Rent Survey prepared by Richard G. Racek, MAI, and Richard G. Racek Jr., containing HUD Forms 92-273 for the Project for each year from 1995 through the Present.

2. Letter of Addendum from Richard G. Racek concluding that the adjusted rental rate for one bedroom units in Ambleside Tower as of March 4, 1977 was $250.00 per month, thereby reflecting a Forty-Eight Dollar (**$48.00**) initial difference between that and the Two Hundred Ninety-Eight Dollar (**$298.00**) initial contract rent in the HAP Contract.

Board of Commissioners
Bracy Lewis, Ch ... 'ice-Chairman
Louise Harris ... Townsend II
Terri H ... ctor

Dennis G. Morton
May 4, 2001



3. Owner's Certification.

4. Report of Unit Turnover.

5. Certification of CMHA as to the validity of the information submitted,

Also enclosed is a summation of the past due rent increases of the Project calculated at the rates prescribed by the regulations. Please note that the enclosed summation for increases includes calculations of the comparability limitation, and includes a twenty percent (**20%**) materiality component. **See Park Village Apts. vs. United States**, 25 CL. Ct. 729, 1992 U.S. Cl. Ct. LEXIS 145 and subsequent 1994 and 1998 cases.

Your letter of May 5, 2000 made reference to language in HUD Notice 97-14 which purports to restrict the ability of HAP Contract Owners to receive "Automatic annual Adjustments." As set forth in CMHA's letter, dated April 27th, 2000, there is no provision in the HAP Contract, which would permit HUD to impose such conditions on the application of the annual adjustment. Further, nothing permits HUD to establish a new statute of limitations overriding the six (6) year statute enacted by Congress.

In deference to your request that CMHA come into compliance with HUD's Automation Rule, CMHA has made several transmissions pertaining to the Ambleside Tower Project in order to achieve such compliance. Such efforts have been made despite the fact that the claim being presented is based on the Ambleside HAP Contract, of which the Automation Rule is not a part. Since the six (6) year statute of limitations is approaching for CMHA's 1995 claims with regard to the Ambleside Tower Project, with a Contract date of August 15, CMHA requests that HUD immediately process and either approve, or reject its claims. If rejected, CMHA will have no other option than to litigate the matter in the United States Court of Federal Claims.

Very truly yours,

Terri Hamilton Brown
Executive Director

THB:mwg
Enclosure(s)

F:DATA:LEGAL:ADMIN:NICHOLS:Dennis Morton Ltr Re Ambleside Rent Increase 1995 to Present 050491nwg

# HUD RENT SURVEY
OF

Ambleside Tower Apartments
2190 Ambleside Drive
Cleveland, Cuyahoga County, Ohio

Presented in a Summary Report

FOR: Cuyahoga Metropolitan Housing Authority
c/o Taft, Stettinius & Hollister, LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Attention: Fred J. Livingstone, Esq.

BY: Richard G. Racek, MAI
Richard G. Racek, Jr.

AS OF: May 1, 1995
May 1, 1996
May 1, 1997
May 1, 1998
May 1, 1999
May 1, 2000
April 24, 2001

CALABRESE, RACEK AND MARKOS, INC.
REAL ESTATE SERVICES
1110 EUCLID AVENUE, SUITE 300
CLEVELAND, OHIO 44115-1603

216/696-5442
FAX 216/696-5499
www.crmonline.com

OFFICERS

ANTHONY J. CALABRESE, MAI (1934-1989)
RICHARD G. RACEK, MAI
STEVEN A. CALABRESE, MAI
CLIFFORD D. FEIERABEND, MAI
DAVID S. CALABRESE

ASSOCIATES

ERIC M. CALABRESE
DWIGHT A. KUMLER, MAI
DOUGLAS C. LEOHR
MARK E. PAUL, SRA, MAI
RICHARD G. RACEK, JR
DANIEL L. SMITH
DOUGLAS P. SLOAN, MAI
BRIAN J. TOBEY

April 25, 2001

Cuyahoga Metropolitan Housing Authority
c/o Taft, Stettinius & Hollister, LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Attention: Fred J. Livingstone, Esq.

RE: HUD Rent Survey of -
Ambleside Tower Apartments
2190 Ambleside Drive
Cleveland, Cuyahoga County, Ohio

Dear Mr. Livingstone:

As requested, the appraisers have made a personal inspection, study, and analysis of the above captioned property and the area in which it is located. The results of this HUD Rent Survey are delineated in the accompanying summary report. The subject property is a 201 unit, apartment building that was constructed in 1978. Due to an average maintenance program the overall property is in generally average to fair condition. The improvements include one, 14 story, masonry, elevator apartment building with various site improvements.

The purpose of this HUD Rent Survey is to estimate the market rent for the subject's one bedroom units in their relative condition as of the effective dates of evaluation. The intended use of this summary report is to assist the Cuyahoga Metropolitan Housing Authority in analyzing the rent schedule of the above captioned property for external reporting purposes. Market rent is defined on page 7 of this report.

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1995, is:

**$500 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1996, is:

**$515per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1997, is:

**$530 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1998, is:

**$570 per month**

CALABRESE, RACEK AND MARKOS, INC.

Cuyahoga Metropolitan Housing Authority
c/o Taft, Stettinius & Hollister, LLP
Cleveland, Ohio 44114-2302 -2- April 25, 2001

Attention: Fred J. Livingstone, Esq.

RE: HUD Rent Survey of -
Ambleside Tower Apartments
2190 Ambleside Drive
Cleveland, Cuyahoga County, Ohio

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 1999, is:

**$590 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of May 1, 2000, is:

**$610 per month**

Our opinion of the market rent for the one bedroom units within the subject property, **in their "as is" condition**, as of April 24, 2001, is:

**$620 per month**

At the time of the inspection (April 24, 2001) only ten units were vacant. A representative sampling of the units and all of the common areas were inspected. The units inspected were generally in average to fair overall condition. Additionally, the exterior of the property has been adequately maintained and hence it is also in average to fair condition.

It is assumed by the appraisers that the subject property is free and clear of all materials or conditions that are considered hazardous by the Environmental Protection Agency. Should any materials or conditions of this nature be found, the estimated market rent will then be subject to review.

The appraisers state that there is no present or contemplated future interest in the real estate that is the subject of this report. Furthermore, it is stated that no other party has influenced the appraisers' final rent conclusions. This rent survey report has been made in conformity with and is subject to the requirements of the Code of Professional Ethics and the Standards of Professional Conduct of the Appraisal Institute, and was completed in accordance with Uniform Standards of Professional Appraisal Practices.

In conclusion, the subject property is considered to have desirable apartment units within its market, which should continue to be viable income producing units into the foreseeable future.

Respectfully submitted,

CALABRESE, RACEK & MARKOS, INC.

Richard G. Racek, MAI
President

Richard G. Racek, Jr.
Appraiser

:lc
5625
4797