IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY,<br>1441 West 25th Street<br>Cleveland, Ohio 44113<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 01-416 C<br><br>COURT OF FEDERAL CLAIMS NO. ______________<br><br>COMPLAINT<br><br>FILED JUL 17 2001 |

## Preliminary Statement

1. Plaintiff Cuyahoga Metropolitan Housing Authority ("CMHA") brings this action for damages resulting from the failure of the United States of America, acting through the Department of Housing and Urban Development ("HUD"), to provide for automatic annual rent increases in 1995, 1996, 1997, 1998, 1999, 2000 and 2001 for the Ambleside Tower Apartments. Pursuant to the Housing Assistance Payment Contract ("HAP Contract") entered into between CMHA and HUD, CMHA is entitled to annual rent increases for the subject properties more fully described herein. HUD and its agents have breached the HAP Contract by their failure and subsequent refusal to grant the rent increases, mandated by the HAP Contract, resulting in damages to CMHA in the amount of at least $580,000.00. In addition to the monetary damages to which CMHA is entitled,

CMHA seeks ancillary injunctive relief requiring that HUD adjust the current Contract Rents to reflect the adjustments that HUD has failed and subsequently refused to make and to use the adjusted Contract Rents as the basis for further annual adjustments as required by the HAP Contract.

## Jurisdiction

2. This Court has subject matter jurisdiction pursuant to the provisions of the Tucker Act, 28 U.S.C. § 1491, as this claim is founded upon breaches of an express contract entered into between CMHA and HUD.

## Parties

3. Pursuant to the provisions of Ohio Revised Code §§ 3735.27 through 3735.50, CMHA constitutes a "body corporate and politic," with the power and authority to provide "safe and sanitary housing accommodations to families of low income" within Cuyahoga County, Ohio. Pursuant to Ohio Revised Code § 3735.31, CMHA has the power to accept financial assistance from the federal government and can also sue or be sued.

4. HUD is an agency of the United States of America and at all times relevant to the allegations in this Complaint was acting as an agent of the United States of America. The actions of HUD are therefore imputed to the United States of America.

## Statement of the Facts

5. CMHA is the owner of a certain 201 one-bedroom rental property known as the Ambleside Tower Apartments ("Ambleside") which is located at 2190 Ambleside Drive, Cleveland, Cuyahoga County, Ohio.

6. On August 15, 1978, pursuant to the United States Housing Act of 1937, 42 U.S.C. 1437, *et seq.*, specifically 42 U.S.C. 1437f ("Section 8"), and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, *et seq.*, CMHA entered into a HAP Contract with HUD for Ambleside ("Ambleside HAP Contract"), which was designated Ambleside Tower Project, HUD project number OH 16-0013-013. (See Ambleside HAP Contract attached as Exhibit A.)

7. Pursuant to the terms of the Ambleside HAP Contract, HUD is to provide housing assistance payments to CMHA for units in the Ambleside Tower Project under lease by lower-income families.

8. The Ambleside HAP Contract set forth the initial contract rent for each unit at $298 per unit per month ("Initial Contract Rent").

9. Pursuant to Section 1.6(f)(1) of the Ambleside HAP Contract, CMHA is required to submit monthly requests to HUD for housing assistance payments.

10. Under the provisions of 42 U.S.C. § 1437f(c)(1), the housing assistance payments provided by HUD are designed to reimburse CMHA the difference between the rent called for under the Ambleside HAP Contract for each unit ("Contract Rent") and the amount paid by each leasing family.

11. Section 1.8(b) of the Ambleside HAP Contract, entitled Automatic Annual Adjustments, contains a mechanism whereby the Contract Rent due CMHA is to be increased on an annual basis and provides in full as follows:

> (1) *Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions*

*warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.*

(2) *On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.*

12. Section 1.8(d) of the Ambleside HAP Contract further provides:

(d) *Overall Limitation. Not withstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.*

13. Between August 1979 and August 1994, the Contract Rent for Ambleside was increased pursuant to the provisions of Section 1.8(b) of the Ambleside HAP Contract from $298 to $575 per unit per month.

14. Since the 1994 Contract Rent adjustment which established the Contract Rent at $575.00 per unit per month, the Government has published Automatic Annual Adjustment Factors each year.

15. Based upon the provisions of the Ambleside HAP Contract cited above, CMHA was entitled to receive automatic Contract Rent adjustments for the years 1995, 1996, 1997, 1998, 1999, 2000 and 2001, which HUD has repeatedly failed to provide.

16. The failure by HUD to adjust the Contract Rents on the Ambleside HAP Contract's anniversary dates has resulted in substantially lower housing assistance payments being made by HUD to CMHA for the Ambleside Towers Project since HUD's first failure to adjust the Contract Rent on August 15, 1995.

17. Despite CMHA's compliance with the express provisions of the Ambleside HAP Contract, HUD continues to refuse to make rent adjustments for the years 1995, 1996, 1997, 1998, 1999, 2000 and 2001.

18. By its actions, HUD has breached the express terms of the Ambleside HAP Contract in failing to grant automatic annual adjustments in the Contract Rent for the years 1995, 1996, 1997, 1998, 1999, and 2000.

19. As a result of HUD's breach of the HAP Contract between CMHA and HUD, CMHA has been damaged to the extent of at least $580,000.00. CMHA is therefore entitled to the monetary and ancillary injunctive relief described hereinafter.

WHEREFORE, CMHA prays that this Court award it money damages in the amount of at least $580,000.00, all additional money damages suffered by CMHA from the filing of the within Complaint until entry of judgment, or such additional other amounts that are proved at trial, together with pre- and post-judgment interest, attorney fees and any such other relief that the Court deems proper.

In addition, CMHA prays that this Court remand this matter to HUD and order that HUD adjust the Ambleside Tower Project's current Contract Rents to reflect those adjustments which HUD was required but failed to make, and order that the adjusted Contract Rents serve as the basis for all future Contract Rent adjustments which are required to be made by HUD pursuant to the terms of the Ambleside HAP Contract.

Respectfully submitted,

Dated: July 16, 2001

Fred J. Livingstone
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-3141

Attorney for Plaintiff

Of counsel:

Lessie Milton Jones
Mark J. Valponi
Carl A.S. Coan, III

U.S. Department of Housing and Urban Development

Cleveland Area Office, Midwest Region
The Renaissance on Playhouse Square
1350 Euclid Avenue, Suite 500
Cleveland, Ohio 44115-1815

MAR 19 2002

Ms. Terri Hamilton Brown
Executive Director
Cuyahoga Metropolitan Housing Authority
1441 West 25th Street
Cleveland, Ohio 44113

Dear Ms. Brown:

SUBJECT: Rental Increase Request
Section 8 No.: OH16-0013-013 (Non-Insured)
Ambleside Tower Apartments
Cleveland, Ohio

This letter is being written as a result of the agreement between counsel for our agency and counsel for CMHA regarding the rental increase requested for Ambleside Tower Apartments. As you are aware, litigation regarding the HAP contract rent for Ambleside is still pending. However, the counsel for both parties have agreed to processing and implementing the rental increase HUD is authorized to approve in accordance with the housing notices previously provided to you, particularly H95-12 and H96-33.

As you may recall, you requested rental increases for years 1995 through 2001. This letter provides the result of our processing so that you may have the rental increases approved for implementation.

Notice H95-12 allows us to approve a rental increase sixty (60) days following receipt of an acceptable Rent Comparability Study (RCS). We did not receive the RCS for Ambleside until May of 2001. Since the required RCS was not provided in a timely manner, we are not authorized to approve retroactive rent increases for the years of 1995 or 1997 through 2000.

However, under the provisions of notice H96-33, properties with a HAP contract anniversary date between April 26, 1996 and September 30, 1996, were provided a one-time exception from the comparability and turnover procedures required in notice H95-12. Ambleside has a HAP contract anniversary date of August 15th. Based upon our review and in accordance with H96-33, in 1996 Ambleside would have been entitled to application of the appropriate Annual Adjustment Factor (AAF) to the current (1995) rents as follows:

| (a) Unit Type | (b) Current (1995) Section 8 Contract Rents | (c) AAF From Register Dated 11/3/95 | (d) New Section 8 Contract Rents (b) x (c) |
|---|---|---|---|
| 1BR (201) | $575 | 1.018 | $585 |

At a difference of $10 per unit per month [column (d) – (b)], the following amounts (assuming 100% occupancy) could be billed to the contract following our approval of a completed Rent Schedule:

Ambleside Retroactive Billing for 1996 AAF Rent Increase

| Year | Difference | | # of Units | | # of Months | | Total |
|---|---|---|---|---|---|---|---|
| 1996 | $10 | x | 201 | x | 5 | = | $10,050 |
| 1997 | $10 | x | 201 | x | 12 | = | 24,120 |
| 1998 | $10 | x | 201 | x | 12 | = | 24,120 |
| 1999 | $10 | x | 201 | x | 12 | = | 24,120 |
| 2000 | $10 | x | 201 | x | 12 | = | 24,120 |
| 2001 | $10 | x | 201 | x | 7 | = | 14,070 |
| | | | | | | | **$120,600** |

In addition, to determine eligibility for retroactive AAF rent increases from 1995 through 2000, you requested that an initial difference of $48 be applied to the comparable market rents, as well as a materiality component of 20%.

With regard to the initial difference, we did not receive proper documentation to support the $48 requested. As such, we are prepared to allow an initial difference of $30. This amount was derived by applying 10%, as indicated in notices H95-12 and H-97-14, to the initial HUD approved HAP contract rent of $298 for Ambleside.

As for the Materiality Component, since we are constrained by regulations and have not found any provision which allows for application of a materiality component factor, we do not concur with usage of this factor in determining eligibility for any AAF rent increase for Ambleside. As such, it was not considered in processing the rent increases.

Regarding the rent increase for 2001, we are prepared to approve a HAP contract rent of $588 per unit per month for Ambleside. This calculation is the result of applying the 2001 AAF from the federal register dated November 7, 2000, considering both turnover and non-turnover procedures, as follows:

Turnover Units (22)

| Current Rent | Factor – Table 1 | New Rent |
|---|---|---|
| $585* | 1.013 | $593 |

Non-Turnover Units (179)

| Current Rent | Factor – Table 2 | New Rent |
|---|---|---|
| $585* | 1.003 | $587 |

* From 1996 retroactive rental increase

| New Rent | | Turnover Procedure | | Monthly Rent |
|---|---|---|---|---|
| $593 | x | 22 turnover units | = | $13,046 |
| $587 | x | 179 non-turnover units | = | 105,073 |
| | | | | $118,119 |

$118,119 ÷ 201 units = $588 per m

This letter does not constitute approval for collecting increased rents. In order to implement the increases in the HAP contract rent, please provide our Office with three (3) completed copies of form HUD 92458, Rent Schedule for both the 1996 and 2001 rental increases. Six (6) copies of the form have been enclosed for your convenience.

To assist you with completion of the Rent Schedules, for the 1996 retroactive rent increase, the maximum annual gross rental potential from dwelling units shall be $1,411,020. The effective date should be shown as August 15, 1996. For the year 2001 rental increase, the maximum annual gross rental potential from dwelling units shall be $1,418,256, and the effective date of the rental increase should be shown as August 15, 2001.

Should you have any questions or require additional information, please call Jacqueline Darden, Project Manager, at (216) 522-4058 Ext. 7249.

Sincerely,

Dennis G. Morton
Director
Cleveland Multifamily Program Center

Enclosures

**U.S. Department of Housing and Urban Development**

*Cleveland Area Office, Midwest Region*
*The Renaissance on Playhouse Square*
*1350 Euclid Avenue, Suite 500*
*Cleveland, Ohio 44115-1815*

MAY 16 2002

Ms. Lou Anne Chung
Chief Financial Officer
Cuyahoga Metropolitan Housing Authority
2711 Church Street
Cleveland, Ohio 44113

Dear Ms. Chung:

SUBJECT: Recalculation of Rent Increase
Section 8 No.: OH16-0013-013 (Non-Insured)
Ambleside Tower Apartments
Cleveland, Ohio

In a further review and interpretation of the language contained in Part 1 of HUD Notice H 95-12, as well as your request for retroactive rent increases at Ambleside, it has come to our attention that we have the authority to approve a rental increase for the year 2000. This increase will be in addition to the rent increases already approved for Ambleside for 1996 and 2001 by our letter dated March 19, 2002.

Notice H 95-12 allows for a rent increase to be effective 60 days following our receipt of the information required by the Notice, provided the request is received prior to the HAP contract anniversary date of the following year. This applies to those rent increase requests that were not acceptably submitted at least 60 days prior to the HAP contract anniversary date of the year requested. Since we received your rent increase request May 16, 2001, and your request included the year 2000; Ambleside could get an increase in rents effective on July 15, 2001 (60 days after our receipt of the required information) for the year 2000 rents.

More specifically, in your request dated May 15, 2001, you sought approval of rent increases for Ambleside from 1995 to the present time (2001). Even though your request was not received at least 60 days before the HAP contract anniversary date for the year 2000 (August 15, 2000), we have authority to approve a rent increase for 2000 since your request was received prior to the next year's HAP contract anniversary date (August 15, 2001). In light of this information, we calculated a rent increase for the year 2000 for Ambleside, using the AAFs published in the Federal Register on October 1, 1999, as follows:

Turnover Units (12)

| Current Rent | Factor – Table 1 | New Rent |
|---|---|---|
| $585 (1) | 1.043 | $610 |

Non-Turnover Units (189)

| Current Rent | Factor – Table 2 | New Rent |
|---|---|---|
| $585 (1) | 1.033 | $604 |

(1) From 1996 retroactive rental increase

| New Rent | | Turnover Procedure | | Monthly Rent |
|---|---|---|---|---|
| $610 | x | 12 turnover units | = | $7,320 |
| $604 | x | 189 non-turnover units | = | 114,156 |
| | | | | 121,476 |

$121,476 ÷ 201 units = $604 per month average unit rent

While the rental increase of $604 for 2000 would only cover one month (July 15, 2001 through August 14, 2001), it is that rent level which we must use as the basis for determining the rent increase for 2001. As a result, we have recalculated the rent increase for 2001, using the increased rent level for 2000 as the basis. The following information supersedes that provided in our letter of March 19, 2002, regarding the 2001 rent increase:

Turnover Units (22)

| Current Rent | Factor – Table 1 | New Rent |
|---|---|---|
| $604 (2) | 1.013 | $612 |

Non-Turnover Units (179)

| Current Rent | Factor – Table 2 | New Rent |
|---|---|---|
| $604 (2) | 1.003 | $606 |

(2) From the year 2000 retroactive rental increase

| New Rent | | Turnover Procedure | | Monthly Rent |
|---|---|---|---|---|
| $612 | x | 22 turnover units | = | $13,464 |
| $606 | x | 179 non-turnover units | = | 108,474 |
| | | | | $121,938 |

$121,938 ÷ 201 units = $606 per month average unit rent

This letter does not constitute approval for collecting the increased rents. In order to implement the rental increases for 2000 and 2001, please submit to our office three (3) completed Rent Schedules for both the 2000 and 2001 rent increases. Six (6) copies of form HUD-92458, Rent Schedules, have been enclosed.

To assist you with completion of the Rent Schedules, the effective date of the year 2000 increase should be shown as July 15, 2001. The HAP contract rent will be $604 per unit per month (PUPM), which results in a maximum annual gross rental potential of $1,456,848. For the 2001 rental increase, the effective date is August 15, 2001. The HAP contract rent amount will be $606 PUPM, and the maximum annual gross rental potential will be $1,461,672.

You also submitted a letter to our Office dated April 10, 2002. With this letter, you provided occupancy data for approval of the lump sum payment amount of $139,587, resulting from implementing the retroactive rent increases for 1996 and 2001. As you may recall, those rent increases were approved in our letter of March 19, 2002. Based upon the information you submitted, we recalculated the lump sum amount which includes the rent increases for 1996 and 2000, as well as the recalculated rent increase for 2001. The amount of retroactive billing we have determined is $174,642. This amount covers the retroactive increases from the effective date of each increase through April 2002.

This letter is not an approval for you to voucher for the lump sum amount. Should you submit the Rent Schedules to implement the 2000 and 2001 rent increases, please inform us if you agree with the retroactive lump sum amount, or indicate any adjustment you are requesting.

Lastly, based upon your April 10, 2002 letter, we would like to clarify the information provided in our letter of March 19, 2002, regarding the initial difference. As you may be aware, we processed the rent increases for Ambleside in accordance with Part 1 of HUD Notice H 95-12 and the subsequent AAF notices (95-92, 96-33, 96-89, 97-03, 97-14, 98-03, 99-17, 00-14), as applicable. In processing those increases, the initial difference was not relevant to the rent level we were authorized to approve as explained below.

For the 2000 and 2001 rent increases, since the contract rents ($585 for 2000 and $604 for 2001) adjusted by the appropriate AAFs did not exceed the comparable market rents you submitted, it was not necessary for us to use the initial difference to determine the maximum permissible rent level we have authority to approve. Additionally, the 1996 rent increase for Ambleside was processed in accordance with Notice H 96-33, wherein the comparability provisions of H 95-12 were inapplicable. Therefore, with regard to the initial difference for your retroactive rent increase request submitted in May of 2001, no further action is required. You may reference the AAF notices for additional information regarding this matter.

While the initial difference was not used to determine the rent increases for 1996, 2000 or 2001, we would like to correct the amount of initial difference indicated in our letter of March 19, 2002. Since we are permitted to allow a maximum initial difference equal to 20% of the initial contract rent, we are changing the amount of $30 to $60. This is 20% of the initial contract rent of $298. We believe this will provide fair and consistent processing of future rental adjustments, in which the initial difference must be applied to determine the maximum rent level. Please note, however, that this information is based upon the processing requirements contained in Notice H 95-12 and the subsequent AAF notices indicated above, and is subject to change in accordance with the requirements contained in any AAF notice or other guiding regulations implemented after the date of this letter.

We apologize for any inconvenience or misunderstanding the contents of this letter may have created. Should you have any questions regarding this matter, please call Ms. Jacqueline Darden, Project Manager, at (216) 522-4058 Extension 7249.

Sincerely,

Dennis G. Morton
Director,
Cleveland Multifamily Program Center

Enclosures

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

CLEVELAND AREA OFFICE
THE RENAISSANCE ON PLAYHOUSE SQUARE
1350 EUCLID AVENUE, SUITE 500
CLEVELAND, OHIO 44115-1815

May 16, 2002

Lou Anne Chung
Chief Financial Officer
Cuyahoga Metropolitan Housing Authority
2711 Church Street
Cleveland, Ohio 44113

Dear Ms. Chung,

Subject: Revision of Rent Calculations
Section 8 No. OH12-8023-002
Severance Towers
Cleveland Heights, Ohio

A re-visiting of the language contained in Part 1 of HUD Notice H95-12 dated March 7, 1995 allows for an interpretation that increases the base rent of $584/mo. that was provided to you with an effective date of May 7, 2001 in our letter of March 27, 2001. This $584/mo. base rent was calculated using the Annual Adjustment Factors (AAF) effective October 1, 2000 and applying them to the approved 1995 retroactive rent of $582/mo., the calculation of which was also documented in the March 27, 2001 letter.

Specifically, it appears that since your rent increase submission dated March 2, 2001 (received on March 9, 2001) was received before the contract anniversary date of May 1, 2001, and it was stated that: "This submission extends the request for the above referenced rent increases to the present time." (referring to the years 1995 through 2000), it thus met the criteria for also being considered as a request for the contract year with an anniversary date of May 1, 2000. With this interpretation, it is now determined that, although the rents resulting from the application of the annual adjustment factors for the year 1999 to the approved retroactive rent of $582/mo. could not have been implemented for the year with the contract anniversary date of May 1, 2000, since the request (with documentation in conformity with H95-12) was received 53 days before the contract anniversary date of May 1, 2001, the approved retroactive rent would have been increased for the application of AAFs in the subsequent two years.

The new calculations are as follows:

Turnover units (14) for Year 1999 to 5/1/2000

| | | | | |
|---|---|---|---|---|
| $582* | X | 1.043 | = | $607 |
| Current Rent/mo. | | Table 1 Factor | | New Rent Level |

Units with No Turnover (176)

| | | | | |
|---|---|---|---|---|
| $582* | X | 1.033 | = | $601 |
| Current Rent/mo. | | Table 2 Factor | | New Rent Level |

*As calculated previously by application of 11/3/95 AAF to 1995 rents

Gross Rent Potential Calculation

| | |
|---|---|
| $607 X 14 turnover units | = $ 8,498 |
| 601 X 176 non-turnover units | = $ 105,776 |
| Total GRP | $ 114,274 |

$114,274 (total GRP) divided by 190 units = $601/mo.

Using the rent arrived at by the above re-interpretation of H95-12, the results of your March 9, 2001 request are as follows:

Turnover units (14) for the year 5/1/00 to 12/31/00

| | | | | |
|---|---|---|---|---|
| $601 | X | 1.013 | = | $609 |
| New Current Rent | | Table 1 Factor | | New Rent Level |

Units with no turnover (176)

| | | | | |
|---|---|---|---|---|
| $601 | X | 1.003 | = | $603 |
| New Current Rent | | Table 2 Factor | | New Rent Level |

Gross Rent Potential Calculation

| | |
|---|---|
| $609 X 14 turnover units | = $ 8,526 |
| 603 X 176 non-turnover units | = $ 106,128 |
| Total GRP | 114,654 |

$114,654 (total GRP) divided by 190 units = $603/mo.

The new rent level for all 1BR units (190) is approvable at $603/mo. with an EFFECTIVE DATE OF MAY 1, 2001. This is an increase from, and supercedes, the rent level of $584/mo. approved by our March 27, 2001 letter. In order for this change to be effective, please prepare and submit to this Office, three (3) copies of the form HUD-92458, "Rent Schedule".

Blank copies of these forms are included for you use. In preparing the Rent Schedules, the new maximum annual gross rent potential for the dwelling units shall be $1,374,840, and the effective date should be shown to be May 1, 2001.

NOW WE MOVE TO THE RENTAL INCREASE APPROVED BY OUR LETTER OF MARCH 27, 2002.

Using the above re-calculated rent of $603/mo., our agreement to process your request of February 19, 2002 is in consideration of providing rent levels commensurate with current outstanding directives and procedures for New Construction and Substantial Rehabilitation Contracts Where Current Contract Rents Are Above the Published FMRs.

Since the existing Fair Market Rent Level in Cuyahoga County for One-Bedroom units is $587/mo. and the now re-processed and approved rent at Severance Towers is $601/mo., this adjustment was processed under the Part 1 Adjustments Worksheet of Notice H95-12. The following calculations are based solely on: the now re-processed, HUD-approved rent level calculated above; the published Fair Market Rent effective October 1, 2001; the Contract Rent AAFs published on November 26, 2001; and the turnover information you provided.

Turnover units (12)

| $603* | X | 1.057 | = | $637 |
|---|---|---|---|---|
| Current Rent/mo. | | Table 1 Factor | | New Rent Level |

Units with No turnover (178)

| $603* | X | 1.047 | = | $631 |
|---|---|---|---|---|
| Current Rent/mo. | | Table 2 Factor | | New Rent Level |

*As re-calculated and documented above

Gross Rent Potential Calculation

| | | | | |
|---|---|---|---|---|
| $637 | X | 12 turnover units | = | $ 7,644 |
| $631 | X | 178 non-turnover units | = | $112,318 |
| Total GRP | | | = | $119,962 |

$119,962 (total GRP) divided by 190 units = $631/mo.

The new rent level for all 1BR units (190) is approvable at $631/mo. effective May 1, 2002. This letter does not constitute approval for collecting increased rents.

In order for this 2002 increase to be approved, please prepare and submit to this Office, three (3) copies of the form HUD-92458 "Rent Schedule". Blank copies of this form are included for your use. In preparing the Rent Schedules, the new maximum annual gross rental potential from the dwelling units shall be $1,438,680, and the effective date is to be shown as May 1, 2002. Please complete and return the executed sets of Rent Schedules for the two (2) re-calculated rent levels above immediately.

We apologize for any inconvenience that this re-visiting of previously approved rental processing may cause you. The results of the re-processing do provide additional cash flow to the property, and now are in conformity with Notice H95-12. Should you have any questions, please contact me at (216) 522-4058 Ext. 7168.

Sincerely,

John J. McNeela

Enclosures