U.S. DE...RTMENT OF HOUSING AND URBAN DEVEL(...ENT
WASHINGTON, D.C. 20410-8000

JAN 14 1986

OFFICE OF THE ASSISTANT SECRETARY FOR HOUSING-FEDERAL HOUSING COMMISSIONER

MEMORANDUM FOR: ALL Regional Directors of Housing
ALL Directors for Housing Management, Categories A, B and C Offices
ALL Section 8 Contract Administrators

FROM: Silvio J. DeBartolomeis, Deputy Assistant Secretary for Multifamily Housing Programs, HM

SUBJECT: Questions and Answers on Section 8 Annual Rent Adjustments

This memorandum provides answers to the questions field staff have asked most frequently on annual adjustments.

This memorandum applies to all new construction and substantial rehabilitation projects for which regulations require that the Section 8 annual adjustment factor be used to adjust project rents - including Section 515/8 Farmers Home projects and State Agency projects. The memorandum also applies to Property Disposition Resales for which contract rents are adjusted using the annual adjustment factor.

Please distribute this memorandum to all Section 8 Contract Administrators, your local Farmers Home Offices, and all HUD staff who process or approve rent adjustments for Section 8 project-based contracts.

QUESTION #1. What is initial difference? What documents do we use to make the calculation? What should we do if the needed documents are lost or incomplete?

ANSWER. Initial difference is any dollar amount by which a Section 8 contract rent initially exceeded the correlated rent of the comparable unassisted unit. The initial difference is computed separately for each unit type.

NOTE: Since Section 8 rents at Property Disposition Resale projects were usually set at the comparables' rents, most PD resales will not have an initial difference. For other projects, the initial difference will generally be between 10% and 20% but may be zero.

A. Initial Section 8 Contract Rents. Obtain these amounts from Exhibit A of the HAP contract. If the project has a utility allowance, be sure to use the contract rent - not the gross rent.

1. If the project is subject to the revised Section 8 regulations and the Section 8 contract rents were adjusted as a result of cost certification, use the HAP contract Exhibit A that resulted from the cost certification processing. (For this purpose, projects are subject to the revised regulations if their Notice of Selection was signed on or after the dates in Answer 6 and they are not FmHA projects.)

2. Otherwise, use the Exhibit A that was attached to the original, fully-executed contract.

B. Initial Correlated Rents

1. For Property Disposition Resales, use the Adjusted Subject Rents shown on the last line of the Form HUD-92273, Estimate of Market Rents by Comparison. The HUD-92273 should be attached to the Disposition Recommendation (Form HUD-9650). If you cannot find the HUD-92273, use the Market Comparable Rents in Section III of Form HUD-9650.

2. For other projects, obtain these amounts from the Form HUD-92264 and HUD-92273 prepared at firm commitment. Usually, these forms will show the same rents because Development Handbook 7420.1 directs the Valuation staff to transfer the HUD-92273 rents to the HUD-92264. However, if the HUD-92273 was revised and the HUD-92264 was not updated, the forms will show different rents. In these instances, use the HUD-92273 rents.

   o On the HUD-92264, use Line 7 - Unit Rents by Comparison.

   o On the HUD-92273, use the line that shows the correlated unassisted rents, trended to the expected date of initial occupancy. (NOTE: This is Line 22 on the 9/78 version of the form.)

   If a HUD-92264 or HUD-92273 is lost or Line H-7 of the HUD-92264 is blank, do the following.

   o If the HUD-92264 or HUD-92273 data is missing, ask the owner for a copy.

   o If the owner cannot provide you with either form, generally set the initial dollar difference at 10% of the initial contract rent. Set the initial difference at a lower amount only if your office usually set initial Section 8 rents at less than 110 percent of the correlated unassisted rent.

QUESTION #2. Must Field Offices/Contract Administrators conduct a market analysis every year for every Section 8 project? If we don't, aren't we violating the Section 8 law?

ANSWER. No. Neither the Section 8 law nor any HUD regulation requires that a market analysis be conducted every year on every Section 8 project. The Section 8 statute and regulations require only that rent adjustments shall not result in material differences between the rents charged for assisted and comparable unassisted units. In some cases, you can show that rents are not materially different without performing a market rent analysis.

A. So long as the adjusted Section 8 rent would NOT exceed 120 percent times the sum of the comparable rent and the initial difference, the difference between a Section 8 rent and a correlated unassisted rent is "material" only if BOTH of the following conditions are met.

1. The adjusted Section 8 rent would exceed the correlated unassisted rent for comparable units by more than the initial difference for that unit type.

AND

2. The adjusted Section 8 rents would exceed the amount needed to "operate" comparable projects.

B. A material difference exists whenever the adjusted Section 8 rent would exceed 120 percent times the sum of the comparable rent and the initial difference.

C. You must show that the rent adjustment will not cause a material difference. ~~To do so, you must show that either Condition #1 or Condition #2 in Answer~~ 2A would NOT be met.

1. If you are dealing with a partially assisted project and rents for that project's unassisted units will be used as comparables, test first for Condition #1. (NOTE: The subject project's unassisted units may be used as comparables only if neither HUD or the State Agency controls rents on those units.)

2. For other projects, generally test first for Condition #2. See Attachment #1 for guidance on how to do this.

   - If the adjusted Section 8 rents would exceed the rents needed to operate comparable projects, you must conduct a market rent analysis to determine if Condition #1 is met and then set rents at the levels required by Answer #3 below.

   - If the adjusted Section 8 rents would NOT exceed the rents needed to operate comparable projects, no market rent analysis is required. Rents may be set at the levels resulting from the annual adjustment factor. No material difference will exist because Condition #2 was not met.

3. Document the tests you made and conclusions you reached.

QUESTION #3. If we conducted a market analysis, at what level should we set contract rents? Can we ever reduce rents? Can we ever approve a rent greater than the comparable unassisted rent?

ANSWER. Follow the general rule and exceptions in Paragraphs A and B below. See Attachment #2 for numerical examples of how these rules are applied.

A. General Rule: Set the rent at the LESSER of the two amounts listed below but never at less than the Section 8 rents that were in effect on the effective date of the HAP contract. (Both the original and revised HAP contracts provide that HUD may never reduce rents below this level.)

| Rent Resulting from the Annual Adjustment Factor (AAF rent) | OR | Current Correlated Rent for Comparable Unassisted Units plus Initial Difference |
|---|---|---|

NOTE: The rent resulting from this general rule may be less than the Section 8 rent currently charged.

B. Exceptions

1. ~~If the sum in the second column of Answer 3A above is less than~~ both the AAF rent and the level needed to cover reasonable and necessary operating expenses and any allowance permitted by Attachment #1, you may approve a higher rent. Field Office/Contract Administrators may set rents at the LOWEST of the three amounts listed below.

   - the AAF rent
   - 120 percent times the sum of the comparable rent and the initial dollar difference
   - the rent needed to cover the Section 8 project's debt service, operating costs of comparable projects and any allowance permitted by Attachment #1. When estimating operating expenses, review operating expenses on several comparable assisted and unassisted projects. Reduce the subject project's actual expense data to exclude amounts that exceed cost levels incurred by comparable projects. Allow only reasonable and necessary operating expenses.

2. You may wait for an owner to appeal and request any higher rent permitted by Paragraph 8(1) or you may initiate approval of the higher rent. You should take the initiative when the general rule in Paragraph 3A would reduce rents to a level that would threaten the financial viability of the project - i.e., rents less than needed to cover debt service and operating expenses of comparable projects. (In these instances, you may also consider whether a special adjustment or an area-wide adjustment per 888.204 is warranted.)

QUESTION #4. Some Section 8 projects have generated substantial annual profits during the past six years. Approving another increase this year will further inflate the owner's profit and unnecessarily increase HUD's subsidy outlays. May we deny a rent increase this year or approve a rent less than that produced by application of the Annual Adjustment Factor (the AAF rent) because of these substantial profits?

ANSWER. No. You may NOT deny a rent increase based soley on the project's cash flow. While you consider the project's cash flow when determining whether a market analysis should be conducted, you may deny a rent increase or approve less than the AAF rent ONLY if:

A. You have conducted a market analysis.

AND

B. The correlated unassisted rent plus any initial difference is less than the AAF rent.

QUESTION #5. We have some Section 8 uninsured projects that are subject to the original Section 8 regulations and not required to submit annual financial statements. For these projects, how do we carry out our responsibility to assure that rent adjustments do not cause Section 8 rents to materially exceed rents for comparable unassisted units?

ANSWER. Generally, you should conduct a market rent analysis at least every two years and set rents at the lesser of the AAF rent or the comparable rent plus the initial dollar difference.

A. You may approve any higher rent permitted by Answer #3b only if the owner submits financial statements (audited/unaudited) showing that operating costs on comparable projects justify the higher rent.

B. You may conduct market analyses less frequently only if the owner submits financial data that appears reasonable and indicates that the Section 8 rent potential resulting from the AAF would obviously not exceed amounts needed to operate the Section 8 units. (See Attachment #1 for guidance on how to make this determination.)

QUESTION #6. Some owners do not request annual adjustments until several months into the HAP contract year. When should such adjustments become effective? Also, must we conduct a market analysis if an owner does not request a rent adjustment or requests the adjustment after the HAP anniversary date?

ANSWER. The answers to the above questions differ by whether HUD regulations or the HAP contract require owners to request the annual adjustment.

A. Owners of 515/8 and Property Disposition Resales projects are not required to request annual adjustments.

B. Owners of other projects are required to request the annual adjustment if they are subject to the revised Section 8 regulations published in 1979/1980. Owners are subject to the revised regulations if they elected to be subject to those regulations or if the project's Agreement to Enter Into HAP Contracts (AHAPs) was signed on or after the dates listed below.

| Project Type | AHAP Signed On/After |
| --- | --- |
| Section 8 New Construction (Part 880) | 11/5/79 |
| Section 8 Substantial Rehab (Part 881) | 2/20/80 |
| Section 8 State Agency Financed (Part 883) | 2/29/80 |

A. When an Owner Request is NOT required

1. Process an annual adjustment, even if the owner does not request the adjustment. Begin your processing in time to notify the owner of the proposed rents at least 30 days before the HAP anniversary date.

2. Conduct a market rent analysis if a market analysis is required by the instructions in Answer #2B.

3. Adjust the contract rents either up or down, as required. Make the new rents effective on the HAP anniversary date.

B. When an Owner Request is Required

1. If an owner does not request an annual adjustment by the HAP anniversary date, keep the contract rents at their current levels. You may NOT reduce contract rents and you do not need to conduct a market analysis.

2. If the owner requests a rent adjustment, use the instructions in Answer #2B to determine if a market analysis is needed.

3. If the owner submits a request for an annual adjustment less than 60 days before the HAP contract anniversary date or after the anniversary date, implement the new rents according to the following schedule.

   o Make RENT REDUCTIONS effective the first day of the first month that begins 60 days after the date of your decision letter. The 60 day lag time will give the owner an opportunity to appeal and to adjust the project operating budget.

     EXAMPLE: If your letter is dated 7/23, require the owner to implement the reduced rents as of 10/1.

- Make RENT INCREASES effective no later than the first day of the month which falls 30/60 days after the date you received the owner's request. Use 30 days if no market analysis is performed. Use 60 days if a market analysis is performed.

  EXAMPLE: If you received the owner's request on 9/12/85, the owner may implement the higher rents as of:

  - NOV 1, if no market rent analysis is performed.

  - DEC 1, if a market rent analysis is performed.

QUESTION #7. While the regulations say that new annual adjustment factors would be published around November 8, we haven't seen them yet. When will the factors be published? May we postpone rent adjustments and any required market analyses until the new factors are published?

ANSWER. The factors will probably be published in February. You may not unilaterally postpone the rent adjustment and any required market analysis until the new factors are published. You should continue to process adjustments, using the factors that were published on 3/27/85.

NOTE: If this year's factors are higher than the March 1985 factors, the Federal Register Notice transmitting this year's factors will permit owners of all projects, except 515/8 FmHA projects, to apply the new factors retroactive to the anniversary date. FmHA 515/8 projects are excluded because the Section 8 regulations require that these owners use the factors in effect on their HAP anniversary dates.

QUESTION #8. If an owner's appeal is not resolved by the Contract Administrator or by the HUD Field/Regional Office and the owner decides to appeal to Headquarters, what information must the owner submit to Headquarters?

ANSWER. The owner must submit the items listed below.

A. A letter explaining why the owner disagrees with the Contract Administrator/Regional Office decision and stating the rents the owner is seeking.

B. Any information the owner believes will support the appeal.

C. If the owner is challenging HUD/Contract Administrator's choice of comparables, at least the following information on the comparable units recommended by the owner.

- o Names, addresses and phone numbers
- o Current rents
- o A brief description of each unit type - e.g., number of baths, bedrooms, type of design
- o List of services, utilities and amenities included in the rents

D. Copy of the Field Office/Contract Administrator's annual adjustment decision letter and Form HUD-92273, Estimate of Market Rents by Comparisons.

E. Copy of all owner and HUD/Contract Administrator correspondence on the appeal the Contract Administrator or HUD Field and Regional Offices processed.

I hope this guidance will assist your staff until we can publish processing procedures that are more detailed and cover both annual and special adjustments. Call your Desk Officer if you have any questions on these procedures.

Attachments

ATTACHMENT #1

## Determining if AAF Rents Would Exceed Amounts Needed to Operate Comparable Projects

1. Compute the rent potential that would result from application of the annual adjustment factors.

2. Estimate total cash requirements (e.g., Line 51 of the OLMS HUD-92558). Use the project's debt service. To estimate operating expenses, use either of the following methods:

   o Establish operating norms (e.g., $ ____ X PUPM) for different types of projects and use the norm that applies to the type of project with which you are working.

   o Scan any recent actual expense data on this project. Adjust that data to exclude amounts that are obviously excessive ~~when compared with comparable projects or large amounts~~ that will not recur.

   NOTE: Estimates need not be scientifically precise. This calculation will be used only to determine if a market rent analysis is needed. It will not be used to make a final determination as to new rent levels.

3. Compute cash throw-off as follows:

| | | |
|---|---|---|
| Rent Potential (from Step 1) | LESS | Cash Requirements (from Step 2) |

4. Compute an allowance for owner distributions or operating contingencies. If the project has significant, outstanding violations of the HAP contract, regulatory agreement or HUD's administrative requirements and it is likely those violations will not be corrected by the HAP anniversary date, use zero. Otherwise, follow the instructions below.

   a. Projects Owned by Non-Profits. Unless the project has a large residual receipts balance, compute an operating contingency of 2 percent of the rent potential computed in Step #1 of this attachment.

   b. All Other Projects. Multiply the initial owner equity by the percentages allowed in the following chart.

| Type of Project | Use |
|---|---|
| Elderly Projects | 6% |
| Family Projects | 10% |

   NOTE: This limit does not affect a profit-motivated (PM) owner's right to distribute all surplus cash. For PM projects, this limit is used only for determining whether a market rent analysis is needed or for calculating the rent needed to operate the project.

5. Compare the cash throw-off computed in Step 3 with the allowance computed in Step 4. If the cash throw-off:

   a. equals or exceeds the allowance, conduct a market rent analysis and set rents as directed in Answer #3.

   b. is less than the allowance, no market analysis is required. Rents may be adjusted by the full annual adjustment factor.

ATTACHMENT #2

## Examples of Where Rents Are Set When a Market Rent Analysis Is Conducted With an Annual Adjustment

Assume:

| | | |
|---|---|---|
| Original Section 8 Rent | = | $ 350 |
| Original Adjusted Comparable Rent | = | $ 320 |
| Initial Difference | = | $ 30 |

<1A>

| | | |
|---|---|---|
| AAF Rent | = | $ 460 |
| 120% Limit | | $ 432 |
| Rent to Operate | = | $ 390 * |
| Current Comparable + Initial Difference | = | $ 360 |
| Current Section 8 Rent | = | $ 375 |
| Current Comparable Rent | = | $ 330 |

NOTE: The concept of material difference enables us to meet the operating needs of this project. The Field Office/CA can approve the $390 rent because it does not exceed 120% times $360.

<1B>

| | | |
|---|---|---|
| AAF Rent | = | $ 460 |
| Rent to Operate | = | $ 450 |
| 120% Limit | = | $ 432 * |
| Current Comparable + Initial Difference | = | $ 360 |
| Current Section 8 Rent | = | $ 375 |
| Current Comparable Rent | = | $ 330 |

NOTE: While the operating rent is $450, Field Office/CA could approve only $432 - 120% of $360.

<2A>

| | | |
|---|---|---|
| AAF Rent | = | $ 420 |
| 120% Limit | = | $ 408 |
| Current Section 8 Rent | = | $ 375 |
| Rent to Operate | = | $ 370 * |
| Original Section 8 Rent | = | $ 350 |
| Current Comparable + Initial Difference | = | $ 340 |

NOTE: Annual adjustments can result in rent reductions. The concept of material difference minimizes the reduction and lets us set rents at a level that will cover "operating" needs.

<2B>

| | | |
|---|---|---|
| AAF Rent | = | $ 420 |
| 120% Limit | = | $ 408 |
| Current Section 8 Rent | = | $ 360 |
| Original Section 8 Rent | = | $ 350 * |
| Rent to Operate | = | $ 345 |
| Current Comparable + Initial Difference | = | $ 340 |

NOTE: Both the HAP contract and HUD regulations state that the comparability limitation can never reduce rents below the Section 8 rents in effect on the effective date of the HAP contract.

<3A>

| | | |
|---|---|---|
| Current Comparable + Initial Difference | = | $ 420 |
| AAF Rent | | $ 410 * |
| Rent to Operate | = | $ 400 |
| Current Section 8 Rent | = | $ 375 |

NOTE: Rent should be set at $410. The comparable rent plus initial difference is NOT used to raise the rent above the AAF. The AAF is the "driver"; comparability is only a limitation.

<3B>

| | | |
|---|---|---|
| Rent to Operate | = | $ 420 |
| AAF Rent | = | $ 410 * |
| Current Comparable + Initial Difference | = | $ 400 |
| Current Section 8 Rent | = | $ 375 |

NOTE: Generally, the rent would be set at $410. Given the material difference definition in this memo, a special adjustment taking the rent above $410 is not precluded -- but more data would be needed.

NOTE: "Current Comparable" means the current rent of the comparable unit after adjustment for differences in amenities between that unit and the subject Section 8 unit.