IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CUYAHOGA METROPOLITAN, )
)
Plaintiff, )
)
v. ) Docket No.: 01-46C
)
UNITED STATES, )
)
Defendant. )

Courtroom 7,
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Friday,
March 7, 2003

The parties met, pursuant to notice of the Court, at 10:04 a.m.

BEFORE: HONORABLE FRANCIS M. ALLEGRA
Judge

APPEARANCES:

For the Plaintiff:

FRED LIVINGSTONE, Esquire
Taft, Stettinius & Hollister LLP
3500 BP Tower
00 Public Square
Cleveland, OH 44114-2302
(216) 241-3141

LAVERNE BOYD
United States Housing Authority
Washington, D.C.

APPEARANCES, Cont'd

<u>For the Defendant</u>:

TIMOTHY MCILMAIL, Esquire
U.S. Department of Justice
1100 L Street, N.W., Room 12004
Washington, D.C. 20530
(202) 307-1011

they have to make a determination.

MR. LIVINGSTONE: Right.

THE COURT: You're saying they didn't make a determination.

MR. LIVINGSTONE: Right.

THE COURT: Therefore the adjustment clause kicks in.

MR. LIVINGSTONE: Correct. Right.

THE COURT: Now, there's another possibility here. Okay, because we're operating now, to a certain extent, as if the statute didn't exist. All right, and I understand that you have an interpretation of the statute that might suggest that that obligation on the landlord's behalf would have not kicked in here.

But let's just say that it did kick in. And that, what effectively, the Congress does is to say that okay fine. I know what your contract said before. All right? But now we're going to change it. And we're going to change it because we're going to basically say that the landlord does have to do this.

And, that in fact, we're going to interpret this, let's just say for the purposes of our question, as if this statute unambiguously modified all preexisting contracts to insert this new requirement. Basically saying, oh no. We know that your automatic annual adjustment clause seemingly

worked this way before. It doesn't work that way anymore.

Now the way it works is, you have to come forward with, you, landlord, have to come forward with a comparability study. And then, based upon that, if we determine that there's no problem with the overall limitation, you'll get the automatic annual adjustment. So let's just assume for the purposes of the questions I'm going to ask, that's the case.

I guess, the first question I have is, in your view, then, that would constitute a breach of the sort of type of breach that we had in Winstar, correct?

MR. LIVINGSTONE: Correct.

THE COURT: All right. Which is it that you really think is the case here? Do you really think that the language does apply, the statute does apply? And we have a Winstar type breach? Or do you think that the language of the statute doesn't apply? And as a result, by virtue of them failing to comply with the contract terms, we have a specific breach of the contract itself?

Do you understand the distinction that I'm raising between the two? One is to suggest that the breach occurred when they didn't do what the contract required. The second possibility is to say that the legislation modified the contract, and that that's the breach?

MR. LIVINGSTONE: I see.

THE COURT: Between those two, realizing that you can make alternative arguments, which is the one you really think happened?

MR. LIVINGSTONE: I think the latter. But I wouldn't phrase the time that the breach occurred as being when the statute --

THE COURT: And I understand your point about that. But the distinction, I guess I'm drawing, is between a breach that occurred. There's two possible theories here. One would be, construe this statute in such a fashion as to conclude that the HUD circular is wrong. Okay? And construe the statute in such a fashion as to indicate that it really didn't modify this contract. Okay?

And therefore, the breach would have occurred when they didn't comply with the terms of this contract. They didn't make determinations. That meant that the automatic adjustment should have occurred. They didn't give us those rent increases giving us rent increases. That's one theory.

All right, the second theory is that the statute does apply. All right, so that whatever way it's construed, we're basically saying, no, no, no. This did apply to our particular circumstance. And it modified the contract. It didn't modify it as of the effective date.

It may have modified it, at least from the standpoint of where a breach occurred at the first point

where it did something inconsistent with what the contract would have otherwise provided. So I understand the argument and the Statute of Limitations issue. So let's set that aside. So all I'm saying is that the statute, itself, did modify the agreement, all right, under the second scenario. And that therefore, that breach is not one of the agreement, per se, in the sense that we were supposed to get the automatic increases unless you made a determination. You didn't make a determination. Give us the increases.

It's more now, like a Winstar thing. You complied with the contract as modified. It's just the fact that you modified it, that there was the breach. In other words, in Winstar, to draw a parallel. The parties there were not able to say, no, the new rule on determining what is good will doesn't apply to us. They said, no. It does apply to us. It just happens to be a breach of the contract. Compensate us.

Of the two, you think, which one is really the primary argument?

MR. LIVINGSTONE: I think it's a Winstar type.

THE COURT: It's a Winstar type breach? In other words, the statute did apply here. It had the effect of changing your contract.

MR. LIVINGSTONE: That's correct.

THE COURT: All right, and that that's a Winstar

breach?

MR. LIVINGSTONE: Yes.

THE COURT: All right. Is it your view that under that breach theory, your damages would still be calculated by looking at what the automatic adjustments should have been?

MR. LIVINGSTONE: Our theory is that our damages should be calculated in accordance with the contract which says, you have an annual adjustment, except if that adjustment would result in a material difference between the assisted and unassisted rents.

THE COURT: Yes.

MR. LIVINGSTONE: Plus, you're entitled to any initial difference.

THE COURT: Okay, but it's, so --

MR. LIVINGSTONE: And basically, the computation --

THE COURT: Right.

MR. LIVINGSTONE: -- would be as laid out on that chart.

THE COURT: Right. So, if I understand you then, the answer to my question is, yes. That even under the <u>Winstar</u> breach, your view is, we look at the way this contract would have provided for increases. They weren't given to us. That is the measure of our damages --

MR. LIVINGSTONE: That is the measure of our damages.

THE COURT: All right. Another possibility would be that, when you have a Winstar type breach, that you look at the cost that was imposed upon you by the change in the statute. And the cost that was imposed upon you was the requirement that you now do studies. All right, so somebody else might say, and we'll see if Mr. McIlmail says this, that if you were correct, that there was a Winstar type breach.

In other words, the statute did apply. It modified your contract, when the two contracts collide. Excuse me, when the contract and the statute ultimately collide, there was the breach. That's the Winstar breach. That what you could recover here would not be the increases in the rents, but merely the cost of conducting comparability studies of which you did none. So you end up with zero damages.

MR. LIVINGSTONE: Yes. Now we did --

THE COURT: Well, but you didn't do them during the years --

MR. LIVINGSTONE: We didn't do them during, that's right.

THE COURT: All right.

MR. LIVINGSTONE: Well, I just don't see where

that latter remedy at all satisfies the damage that the Authority has suffered.

THE COURT: All right, but see, here's the problem, okay. In the Winstar breach situation, the assumption is that you now know that the contract has been modified. You might not like it. You might argue that it's a breach. But, in fact, it has been modified. All right, so as of the time, the first time that this statute collides with the statute, it's not that it's just colliding.

In fact, the requirement is now there. It's as if they took this contract and typed a new paragraph into it as of the date that there's the conflict between the two. And now it's in here, all right.

And so from a damages perspective, the thing that I'm going to have to struggle with is, well, if the statute is applicable, and if you should have known that it did apply, can you continue over time to continue to ignore the statute, but, nonetheless, insist upon the agreement being enforced? That, to me, is a real rub. I don't necessarily see how I get there.

MR. LIVINGSTONE: Well, you know, if the government was obligated to pay this money from the beginning --

THE COURT: Right.

MR. LIVINGSTONE: -- I mean, what is the --

THE COURT: Well, but the Congress changed the contract. The Congress changed your contract.

MR. LIVINGSTONE: Okay.

THE COURT: That's the point. See, in the Winstar theory, see in the first argument, and what you're basically saying, no, this statute really didn't apply to us. Because you have the construction that you gave me of how we make those two statutes consistent with each other. No, this one didn't really apply.

The government was obliged, notwithstanding that statute, to make a determination. They didn't make a determination. Therefore, the other clause in the contract kicks in.

I have no problems understanding under that theory how the damages end up equalling, well, what were the rents that we should have gotten. Had they not made a determine, those rents were the ones under the automatic adjustment clause. Now I know how much the damages are.

When we get to the Winstar theory, the problem is, is I'm not sure that the measure of damages is the same. Because now, we operate it as if Congress came bouncing in here in 1994, and typed a whole new paragraph into your contract.

Okay, and so from that point on, all right, this contract read differently. It read to include the provision

that Congress had passed. At that point then, we say were you allowed to get increases year by year? And the answer to that question is, well, no you're not. Because the now, the new contract says that you only get the automatic annual adjustments if you provide a comparability study. And you didn't do that. How do I deal with that second theory?

MR. LIVINGSTONE: I don't see where the new language that the '94 Act supposedly wrote it. I don't believe it could write that language into the contract.

THE COURT: Well, but --

MR. LIVINGSTONE: All it did was attempt to write that language in, but because it was a breach of contract, you go back and look at what the language was that was broken.

THE COURT: Well, but let's take the <u>Winstar</u> example. The whole problem with the <u>Winstar</u> situation is that Congress writes a contract, Congress doesn't. The office at their supervision will, like, write these contracts up.

And they say, you're allowed to get this beneficial accounting treatment of good will which is very important to you from the standpoint of how your capital is counted for banking regulation purposes.

Congress comes up and they pass a statute that basically outlaws that beneficial accounting treatment. All

right? The effect of that was not that the banks, because they had a contract in hand, could ignore the new rule saying no, you can't use this beneficial accounting principle. In fact, they had to comply with that new principle. The breach, therefore, occurred because we now have a change in the contract. In other words, you said I could have this treatment, now I can't. And now, I'm going to measure my damages.

There, unlike here, the type of damages that are being awarded are things like, well, how much did you have to incur to go out and replace the capital that you lost when you were forced to do so by virtue of the fact that you lost this favorable accounting treatment.

So I had to go out and borrow some additional money. Or I had to go out and do a stock offering. What were the costs imposed on you for that? They don't determine the cost under those contracts as if the Congressional enactment never occurred.

Isn't that what you're essentially telling me? You're telling me that I should apply, even under the Winstar, that I should apply this as if this contract really wasn't modified by the statute.

MR. LIVINGSTONE: In determining damages I think that's what you have to do. See, and the Winstar situation was different from this one. This is a monetary dispute.

And now, of course, Winstar boils down to being a monetary dispute.

But this is very clearly and simply, you know, how much money are we entitled to under these adjustments. And it seems to me that the only way that you can remedy a breach of that language is to say, okay, let's look at what you would have gotten. In the ordinary breach of contract situation, you look at what you would have gotten and subtract it from what you got and that's your measure of damages.

THE COURT: But that's tantamount to suggesting that Congress can't ever pass a law that impacts a contract, right?

MR. LIVINGSTONE: Well --

THE COURT: Because de facto, that's what would be happening. You could ignore the requirement that Congress passed. Congress said, you have to do studies, you, landlord, if you want to get this.

So you could ignore that requirement, yet still be able to get the same increases effectively. I mean, you're doing it under a breach theory. But, de facto, the equivalent of that is basically saying that the new requirement doesn't apply to you.

MR. LIVINGSTONE: Well, just putting aside the requirement of whether we had to do the comparability

studies, or not. It seems to me that when Congress is saying that we no longer will get a material difference, or we will no longer have a measure of what is a material difference --

THE COURT: Yes.

MR. LIVINGSTONE: If we will no longer have that measure. Or, what they're alternatively saying is, the measure of material difference is really the initial difference, when our contract says that we're entitled to both. Seems to me that we're entitled to get what the contract says.

THE COURT: All right, I think I understand that. Let's talk a little bit about this interrelationship between the Sovereign Acts Doctrine and the Unmistakability Doctrine. Let me see if what I think is the case is what you're arguing.

There's a couple of possibilities. One possibility is to say that under the Sovereign Acts Doctrine, we first are going to determine whether or not this is a "Sovereign Act" versus something else. If it is a Sovereign Act, it's a Sovereign Act because it had a public and general focus as opposed to one which, for example, might be targeted on the particular contract at issue.

If it is one that is public in general, then it passes that test and you can't have a breach. At least, at