**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY, | ) | |
| Plaintiff, | ) | Nos. 01-46C, 01-251C, 01-416C (Judge Allegra) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S SECOND PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

1. In 1978 and 1979, Cuyahoga Metropolitan Housing Authority ("Cuyahoga") and the United States Department of Housing and Urban Development ("HUD") entered into three Housing Assistance Payments contracts, or "HAP" contracts, pursuant to 42 U.S.C. § 1437, et seq. Defendant's Appendix In Support Of Opposition To Plaintiff's Motion For Summary Judgment And Cross-Motion For Summary Judgment With Respect To Damages ("Def. App.") at 1-2, 15-18, 26-30.

2. Cuyahoga agreed to lease housing units to low-income families. Def. App. at 1, 15, 26 ¶ 1.3(a).

3. HUD agreed to make monthly payments to Cuyahoga that represented the difference between "contract rents" and the rents that Cuyahoga's tenants paid. Def. App. at 1, 15, 26 ¶ 1.3(b)(1).

4. Each contract concerned one of three newly constructed buildings: Quarrytown Tower Apartments ("Quarrytown"), Severance Tower Apartments ("Severance"), and Ambleside Tower Apartments ("Ambleside"). Plaintiff's Proposed Findings of Uncontroverted Fact ("PPFUF") at ¶¶ 1, 3, 5.

5. The contracts provided for a base term of five years, with optional additional terms of five years each. Def. App. at 1, 15, 26 ¶¶ 1.1(b), (c).

6. The Quarrytown and Severance contracts provided for a maximum total term of 30 years; Def. App. at 15, 26 ¶ 1.1(d), and the Ambleside contract provided for a maximum total term of 40 years. Def. App. at 1 ¶ 1.1(d).

7. Each contract includes an "Automatic Annual Adjustments" provision that states:

> (1) Automatic Annual Adjustment Factors ["AAFs"] will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

Def. App. at 6, 17, 29 ¶ 1.8(b) (bracketed information added).

8. The contracts also include an "Overall Limitation" provision that states:

> Not withstanding [sic] any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

Def. App. at 6, 17, 30 ¶ 1.8(d).

9. The contracts do not define the term "material differences," or describe how the Government shall determine the existence of material differences. However, on January 14,

1986, HUD's Deputy Assistant Secretary for Multifamily Housing Programs issued a memorandum (the "1986 memorandum") setting forth two alternate ways for determining whether a material difference exists, and which HUD employed in ascertaining the existence of a material difference. Specifically, the 1986 memorandum explained that a material difference would exist

> whenever the adjusted Section 8 rent would exceed 120 percent times the sum of the comparable rent and the initial difference

or where

> (1) The adjusted Section 8 rent would exceed the correlated unassisted rent for comparable units by more than the initial difference for that unit type
>
> and
>
> (2) The adjusted Section 8 rents would exceed the amount needed to "operate" comparable projects.

Attachment 1 to the 1986 memorandum sets forth guidelines for determining the amount needed to operate comparable projects and provides instructions for determining the amount of an allowable rent increase in such a circumstance. Def. App. at 178, 184-85 .

10. The contracts also include a "Reports and Access to Premises and Records" provision that requires the owner to "furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the Government." Def. App. at 12, 23, 37 ¶ 2.6.

11. The Quarrytown contract bears a contract anniversary date of January 31, the Severance contract bears a contract anniversary date of May 1, and the Ambleside contract bears a contract anniversary date of August 15. Def. App. at 1, 15, 26 ¶ 1.1(a).

12. Quarrytown contains 180 one-bedroom units, Severance contains 190 one-bedroom units, and Ambleside contains 201 one-bedroom units. Def. App. at 14, 25, 48.

13. Initial contract rents were $310 per month for Quarrytown, $299 for Severance, and $298 for Ambleside. Def. App. at 14, 25, 48.

14. The "initial difference" between contract rents and comparable, unassisted rents was $62 for Quarrytown, $61 for Severance, and $60 for Ambleside. PPFUF at ¶¶ 7-9.

15. In 1994, contract rents were $560 for Quarrytown, $572 for Severance, and $575 for Ambleside. PPFUF at ¶¶ 7-9.

16. On March 7, 1995, HUD issued Notice 95-12 to, among others, "Owners and Managers of Projects with Section 8 Contracts Adjusted by the Annual Adjustment Factor," including Cuyahoga. Def. App. at 49.

17. Referring to the September 28, 1994 Act, the notice recited that "[a]mong the many measures developed by [the Act], emphasis was placed on utilizing the mechanism in the Section 8 contract language which permits an analysis on the reasonableness of the AAF formula as it is applied to each project unit type." Def. App. at 49.

18. The notice announced that "review of AAF under the Overall Limitation clause of the HAP Contract would apply to Section 8 New Construction and Substantial Rehabilitation Properties where Section 8 rent levels for a unit type presently exceed the published Existing Housing Fair Market Rents (FMR)." Def. App. at 49.

19. Notice 95-12 explained that, if current contract rents were above the published fair market rents for the area, in order to receive a rent increase, the owner must submit a study of comparable, unassisted rents. Def. App. at 51.

20. Notice 95-12 explained that if the owner demonstrated that comparable, unassisted rents were more than five per cent over contract rents, then HUD would increase contract rents to the lesser of (1) contract rents adjusted according to the annual adjustment factor and (2) the comparable, unassisted rent plus the initial difference. Def. App. at 52.

21. Notice 95-12 explained that if the owner provided this information at least 60 days before the contract anniversary date, the increase would take effect on the contract anniversary date. Def. App. at 51.

22. Notice 95-12 explained that if the owner did not provide the information at least 60 days before the contract anniversary date, HUD would increase rents effective 60 days after the owner submitted the information, but that if the owner did not provide information by the next contract anniversary date, HUD would not increase rents for the preceding year. Def. App. at 51.

23. Although Notice 95-12 expired on September 30, 1995, later notices have reinstated its provisions. Def. App. at 49, 72, 89.

24. Cuyahoga's contract rents have remained higher than fair market rents from 1995 through 2001. Def. App. at 90-109, PPFUF at ¶¶ 7-9.

25. Cuyahoga took no action with regard to contract rent adjustments until 1999. Def. App. at 110.

26. Cuyahoga provided no information regarding comparable, unassisted units for Quarrytown until November 17, 2000. Def. App. at 122.

27. The Quarrytown comparability information indicated that the contract rent in place at the time ($560) already exceeded the sum of comparable rents plus the initial difference in every year from 1995 through 2000. Def. App. at 124-25.

28. On January 23, 2001, Cuyahoga filed Complaint No. 01-46C, seeking contract rent increase for Quarrytown for 1995 through 2000. Def. App. at 126 ¶ 1.

29. On January 26, 2001, HUD determined that, because of its effective date, Notice 95-12 did not apply to 1995 for Quarrytown, and informed Cuyahoga that it would retroactively increase Quarrytown 1995 rents from $560 to $576. Def. App. at 132.

30. On February 15, 2001, Cuyahoga agreed to an increase in Quarrytown 1995 rents from $560 to $576. Def. App. at 135.

31. Cuyahoga did not provide comparability information for Severance until March 2, 2001. Def. App. at 137.

32. The Severance comparability information indicated that the sum of comparable rents plus the initial difference already exceeded the contract rent in place at the time ($572) from 1995 through 1997. Def. App. at 140-41. For each subsequent year, the claimed adjustment exceeds the sum of the comparable rent and the initial difference. Def. App. at 140-41; PPFUF ¶ 12.

33. On March 27, 2001, HUD determined that Notice 95-12 did not apply to 1996 for Severance, and informed Cuyahoga that it would retroactively increase 1996 Severance rents from $572 to $582. Def. App. at 142.

34. On April 16, 2001, Cuyahoga agreed to an increase in 1996 Severance rents from $572 to $582. Def. App. at 156.

35. On April 26, 2001, Cuyahoga filed Complaint No. 01-251C, seeking contract rent increases for Severance for 1995 through 2000. Def. App. at 149 ¶ 1.

36. Cuyahoga did not provide comparability information for Ambleside until May 15, 2001. Def. App. at 155.

37. The Ambleside comparability information indicated that the sum of comparable rents plus the initial difference did not exceed the contract rent already in place ($575) until 1997. Def. App. at 158-59.

38. On July 17, 2001, Cuyahoga filed Complaint No. 01-416C, seeking contract rent increases for Ambleside for 1995 through 2001. Def. App. at 160 at ¶ 1. Cuyahoga filed an amended complaint in the Ambleside action on September 26, 2003. Def. App. at 188.

39. On March 19, 2002, HUD determined that Notice 95-12 did not apply to 1996 for Ambleside, and informed Cuyahoga that it would increase 1996 Ambleside rents from $575 to $585. Def. App. at 166.

40. On May 16, 2002, HUD increased contract rents for Ambleside for 2000 to $604, and for 2001 to $606. Def. App. at 169.

41. Also on May 16, 2002, HUD increased Severance contract rents to $601 for 2000, and to $603 for 2001. Def. App. at 172.

42. The tables below summarize rent information for the three buildings for the years for which, in its complaints, Cuyahoga seeks rent increases:[1]

---

[1] In the tables, "CONTRACT RENT" includes adjustments to contract rents to date. "FAIR MARKET RENT" refers to the one-bedroom ("1BR") fair market rent for the Cleveland "FMR AREA" in effect on the contract anniversary dates for each of the three contracts. Def. App. at
(continued...)

| QUARRYTOWN: YEAR | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 |
|---|---|---|---|---|---|---|
| CONTRACT RENT | $576 | $576 | $576 | $576 | $576 | $576 |
| FAIR MARKET RENT | $418 | $412 | $422 | $434 | $480 | $500 |
| COMPARABLE RENT | $385 | $395 | $405 | $430 | $440 | $470 |
| COMP PLUS ID | $447 | $457 | $467 | $492 | $502 | $532 |
| CLAIMED AAF RENT | $576 | $576 | $576 | $590 | $602 | $628 |

| SEVERANCE: YEAR | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 |
|---|---|---|---|---|---|---|
| CONTRACT RENT | $582 | $582 | $582 | $582 | $582 | $601 |
| FAIR MARKET RENT | $418 | $412 | $422 | $434 | $480 | $500 |
| COMPARABLE RENT | $460 | $470 | $490 | $525 | $550 | $570 |
| COMP PLUS ID | $521 | $531 | $551 | $586 | $611 | $631 |
| CLAIMED AAF RENT | $589 | $582 | $595 | $613 | $634 | $661 |

| AMBLESIDE: YEAR | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|---|---|
| CONTRACT RENT | $575 | $585 | $585 | $585 | $585 | $604 | $606 |
| FAIR MARKET RENT | $418 | $412 | $422 | $434 | $480 | $500 | $521 |
| COMPARABLE RENT | $500 | $515 | $530 | $570 | $590 | $610 | $620 |
| COMP PLUS ID | $560 | $575 | $590 | $630 | $650 | $670 | $680 |
| CLAIMED AAF RENT | $575 | $585 | $599 | $617 | $638 | $665 | $674 |

[1](...continued)
90-109. "COMPARABLE RENT" refers to the comparable, unassisted rents that are reflected in Cuyahoga's comparability studies. PPFUF ¶ 11; Def. App. at 124-25, 140-41, 158-59. "COMP PLUS ID" refers to comparable, unassisted rents plus the applicable initial difference. PPFUF ¶¶ 7-9, 11-12. "CLAIMED AAF RENT" refers to the annual adjustment factor-based rents to which Cuyahoga claims entitlement or has otherwise agreed. PPFUF ¶ 18.

43. Pursuant to Attachment #1 to the 1986 memorandum, HUD has performed an analysis of the amount that would be necessary to operate assisted projects comparable to the Cuyahoga properties during the time period in question in this litigation. This analysis reveals that the amount needed to operate comparable assisted projects in or near the Cleveland metropolitan area was no more than $535, an amount that is considerably less than the adjusted rents that Cuyahoga seeks in this case for each of the properties at issue. Had HUD applied the 1986 memorandum's definition of material difference to the rent increases sought by Cuyahoga, the rents would have been set either at the sum of the comparable rents and the initial difference or, if the "exception" to the "general rule" expressed in the answer to question 3 of the 1996 memorandum were applicable (as is the case for sum of the adjustments at issue), at the amount necessary to operate comparable projects, i.e., approximately $535. As a result, even if the 1986 memorandum were applicable, Cuyahoga would be entitled, at most, to an adjustment of no more than the sum of the comparable rent and the initial difference. Declaration of Dennis G. Morton ¶¶ 4-14; Def. App. at 210-214.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Andrew P. Averbach
ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-0290
Facsimile: (202) 514-8624

OF COUNSEL
CHARLES W. WILLIAMS
Office of the Assistant General Counsel
United States Department of Housing and Urban Development

February 3, 2004

Attorneys for Defendant