No. 01-46C, 01-251C, 01-416C
(Judge Allegra)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

CUYAHOGA METROPOLITAN HOUSING AUTHORITY,

Plaintiff,
v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO DAMAGES

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
CAROLE W. WILSON
Associate General Counsel
for Litigation

HOWARD SCHMELTZER
Assistant General Counsel
for Litigation

ALLEN C. VILLAFUERTE
Trial Attorney
Office of General Counsel

CHARLES W. WILLIAMS
Office of the Assistant General Counsel
Department of Housing and Urban Development

March 22, 2004

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Plaintiff Has Misapprehended The Government's Arguments And The Court's Conclusions Concerning The Applicability Of The 1994 Amendments And Notice 95-12 To The HAP Contracts . . . . . . . . . . . 1

II. Plaintiff's Argument Concerning The "1% Breach" Is Without Merit . . . . . . . . . . 4

III. Plaintiff Has No Statutory Or Contractual Entitlement To Adjust The Rent To An Amount Equal To 120 Percent Of The Sum Of Comparable Rents And The Initial Difference . . . . . . . . . . . . . . . . . . . . . 4

IV. The Declaration Of Dennis G. Morton Is Appropriately Considered . . . . . . . . . . 9

A. The Declaration Is More Reliable, Not Less Reliable, Because Mr. Morton Did Not Select The Properties . . . . . . . . . . . . . . . . 10

B. The Analysis Mr. Morton Has Performed Is Sound . . . . . . . . . . . . . . . . 11

C. Cuyahoga's Additional Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Cases**

Big Chief Drilling Co. v. United States,
15 Cl. Ct. 295, 300 (1988) . . . . . . . . . . 7

Cisneros v. Alpine Ridge Group,
508 U.S. 10 (1993) . . . . . . . . . . 4

Cuyahoga Metro. Hous. Auth. v. United States,
57 Fed. Cl. 751 (2003) . . . . . . . . . . 2

National Leased Hous. Ass'n v. United States,
32 Fed. Cl. 762 (1994), aff'd, 105 F.3d 1423 (Fed. Cir. 1997) . . . . . . . . . . 5

Park Village Apartments v. United States,
32 Fed. Cl. 441 (1994), aff'd, 152 F.3d 943 (Fed. Cir. 1998) (table) . . . . . . . . . . 4

Standard Oil Co. v. United States,
231 Ct. Cl. 112, 685 F.2d 1337 (1982) . . . . . . . . . . 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 01-46C, 01-251C, 01-416C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO DAMAGES**

Defendant, the United States, submits the following reply brief in further support of its cross-motion for summary judgment with respect to damages. We also rely upon the materials referenced in our cross-motion for summary judgment and the second declaration of Dennis G. Morton, which is submitted in conjunction with and appended to our opposition to plaintiff's motion to strike Mr. Morton's declaration.[1]

**DEFENDANT'S BRIEF**

**I. Plaintiff Has Misapprehended The Government's Arguments And The Court's Conclusions Concerning The Applicability Of The 1994 Amendments And Notice 95-12 To The HAP Contracts**

Plaintiff ("Cuyahoga") acknowledges in its opposition brief that it "is not claiming that the Amendments and the Directive do not apply to its Contracts." Pl. Opp. at 4. This admission should foreclose any argument that Cuyahoga is not required to comply with the timeliness

[1] Terms defined in our cross-motion for summary judgment have the same meaning when used in this brief. "Pl. Opp." refers to the memorandum of law in support of plaintiff's opposition to our motion for summary judgment. "Pl. Mot. St." refers to the memorandum of law in support of plaintiff's motion to strike the declaration of Dennis G. Morton.

provisions[2] mandated by Notice 95-12, and to preclude any recovery for comparability studies not submitted in a timely manner. Nonetheless, Cuyahoga backtracks from its admission by asserting that the Court determined in its September 22, 2003 opinion that the timeliness requirements are an unreasonable exercise of HUD's authority that should "be regarded as a legal nullity with which no compliance [is] necessary." Pl. Opp. at 7. Its arguments are unpersuasive.

First, the Court made its statement concerning the reasonableness of the timeliness requirements in the same paragraph in which it determined that the Government had committed a prima facie breach of the HAP contracts, and cited to the timeliness requirements solely to confirm its conclusion that a breach had occurred. Cuyahoga Metro. Hous. Auth. v, United States, 57 Fed. Cl. 751, 762 (2003). The Court did not determine that the 1994 amendments or the requirements of Notice 95-12 should be invalidated upon a program-wide basis because they are unreasonable or beyond HUD's authority, or that Cuyahoga should be exempted from these requirements by virtue of the breach, and expressly so stated at the conclusion of its opinion. Id. at 281 ("[T]his court does not hold that either the 1994 amendments or the 1995 HUD directive are inapplicable to Cuyahoga, as would be the case, for example, were such amendments

---

[2] Both the parties and the Court have previously referred to the timeliness requirements as the "sixty-day time limit" or the "sixty-day requirement." The use of these terms (which the Government presumes to be shorthand) may be misleading. A property owner must submit a comparability study 60 days in advance of the anniversary date to make the rent adjustment effective on the anniversary date. More importantly, however, a comparability study also must be submitted within one year of the anniversary date to become effective with respect to the prior year. Def. App. at 51. It is Cuyahoga's failure to comply with the one-year requirement (which affords a property owner an indisputably lengthy amount of time to submit an application for a rent adjustment and is consistent with ¶ 2.6 of the HAP contracts, Def. App. at 12, 23, 37) that renders its requests for rent adjustments untimely.

unconstitutional or the directive invalid."). Had the Court reached such a conclusion, of course, this round of briefing would not have been necessary.

Second, Cuyahoga offers no authority or argument (other than the Court's recognition that a prima facie breach occurred) to support its contention that the timeliness requirements should be considered a "legal nullity." In fact, it does not even address any of our arguments demonstrating that the procedural requirements of the 1994 amendments and Notice 95-12 did not fundamentally alter the bargain that Cuyahoga received through HAP contracts, and that it could have received increases (to the extent warranted) by complying with the requirements that were enacted on a program-wide basis.

Cuyahoga is simply not eligible for any rent increases for any year in which it failed to submit comparability studies on a timely basis. This conclusion holds true even if, as Cuyahoga asserts, it would have claimed entitlement to damages based upon HUD's determination of the material difference for the years in question. Pl. Opp. at 7-8. As we explained in our motion for summary judgment, Cuyahoga's failure to comply with the timeless requirements is an intervening act of its own making that, pursuant to the very procedural requirements it concedes are applicable to its contracts, precludes it from obtaining any adjustments. The mere fact that these requirements may have effected a breach does not, as Cuyahoga appears to suggest, entitle it to avoid the program-wide timeliness requirements and seek judicial relief whenever it wishes. If, after submitting a timely application for an increase, Cuyahoga disagrees with HUD's determination as to the appropriate amount, it can at that point seek judicial relief. However, it cannot simply seek judicial relief, either for the years at issue in this litigation or in the future, without first complying with the program-wide prerequisites for obtaining rent adjustments. If

that were the case, its concession that Notice 95-12 is "applicable" to its HAP contracts would be meaningless.

## II. Plaintiff's Argument Concerning The "1% Breach" Is Without Merit

Cuyahoga clings to its assertions concerning the "1% Breach" by claiming that the HAP contracts preclude HUD from reducing the AAF for reasons unrelated to the payment of utilities. Pl. Opp. at 6. Beyond the fact that this argument was never raised in the liability phase of this litigation (a point that Cuyahoga does not even address), it is premised upon the erroneous assumption that the creation of something other than a one-size-fits-all adjustment factor necessarily effects a "reduction" from some baseline amount. This is simply not the case. Cuyahoga's HAP contracts merely require HUD to set adjustment factors at least annually and to publish the "basis for their determination" in the Federal Register. Def. App. at 6, 17, 29 ¶ 1.8(b). HUD has, in the exercise of its discretion, determined that a different adjustment factor is warranted for turnover and non-turnover units, and Cuyahoga has completely failed, either in the liability phase or in the damages phase of this litigation, to establish that this determination constitutes an abuse of that discretion or is otherwise not in accordance with law. Accordingly, it is not entitled to any damages for the alleged "1% breach."

## III. Plaintiff Has No Statutory Or Contractual Entitlement To Adjust The Rent To An Amount Equal To 120 Percent Of The Sum Of Comparable Rents And The Initial Difference

As we explained in our motion for summary judgment, both the HAP contracts and Section 1437f(c)(2)(C) place the determination of the existence of a "material difference" within the Government's discretion. See Cisneros v. Alpine Ridge Group, 508 U.S. 10, 21 (1993); Park Village Apartments v. United States, 32 Fed. Cl. 441, 448 (1994), aff'd, 152 F.3d 943 (Fed. Cir.

1998) (table). Further, we noted that where a contract grants one party discretion to make material determinations, a court ordinarily will not overturn that party's determination unless the determination is arbitrary and capricious. National Leased Hous. Ass'n v. United States, 32 Fed. Cl. 762, 763 (1994), aff'd, 105 F.3d 1423 (Fed. Cir. 1997). In this case, the means HUD has employed to eliminate adjustments that create a material difference is consistent with the statutory command and with prior practice and, therefore, cannot be considered arbitrary and capricious.

Cuyahoga makes a variety of arguments in support of a material difference calculation that permits rent adjustments as long as they do not exceed 120 percent of the sum of comparable rents and the initial difference. As evidenced by its erroneous statement that the HAP contracts "provide additionally for a Material Difference," Pl. Opp. at 9, each of Cuyahoga's arguments is geared toward preserving, to the maximum extent possible, the very difference that the "overall limitation" (as set forth in the HAP contracts and 42 U.S.C. § 1437f(c)(2)(C)) expressly seeks to eliminate. Because the goal of the overall limitation is to reduce to the maximum extent possible (rather than, as Cuyahoga suggests, to guarantee) differences between comparable and adjusted rents, Cuyahoga has no vested entitlement to anything more than the sum of the comparable rent and the initial difference. As a result, Cuyahoga cannot be heard to complain, as it does here, that the difference between comparable and adjusted rents that it stands to receive is not material enough.[3]

---

[3] As we previously stated, if the Court were to accept Cuyahoga's argument that the elimination of a "material" difference necessarily compels the maintenance of some difference, Pl. Opp. at 9, the only logical amount would be a nominal, immaterial sum – $1. It would not be an amount that would result in a judgment of hundreds of thousands of dollars.

Cuyahoga first asserts that Notice 95-12 does not reflect HUD's considered judgment as to the definition of material difference because its limitation on material difference (as the sum of comparable rent and the initial difference) requires an inferential step. Pl. Opp. at 8. This argument, which is not supported by any authority, is simply irrelevant. As we previously explained, limiting the material difference to the amount of the initial difference necessarily follows, as a matter of logic, from the direction in Notice 95-12 that adjusted rents be capped at the lesser of (1) contract rents adjusted according to the annual adjustment factor and (2) the comparable, unassisted rent plus the initial difference. Def. App. at 52. This definition simplifies the inquiry and is entirely consistent with the command of both the HAP contracts and 42 U.S.C. § 1437f(c)(2)(C) that adjustments not result in rents that are materially different (beyond the initial difference) from comparable unassisted units. That Notice 95-12 does not mention the term "material difference" in no way renders it inapplicable or deficient. It is simply a by-product of the effort to simplify the explanation of the rent calculation for HUD officials.

Cuyahoga next devotes a substantial portion of its brief toward explaining that, prior to 1995, HUD maintained that a material difference existed "whenever the adjusted Section 8 rent would exceed 120 percent times the sum of the comparable rent and the initial difference." Pl. Opp. at 9. As Cuyahoga correctly notes, this statement comes from a January 14, 1986 memorandum issued by HUD's Deputy Assistant Secretary for Multifamily Housing Programs (the "1986 memorandum"). <u>However, the 1986 memorandum expressly states that the "general rule" for calculating rents where comparability studies have been prepared is to take the lesser of the AAF rent or the sum of comparable rent and the initial difference.</u> Def. App. at 179. It is only in circumstances where the sum of comparable rents and the initial difference is less than

the AAF rent and is insufficient to cover the costs and allowances necessary to operate the project that rents need to be capped at the 120 percent threshold. Id.

Significantly, this "general rule" was the basis for HUD's determination in 1988 that Cuyahoga was not entitled to an adjustment beyond the amount of the sum of comparable rents and the initial difference. See Pl. Mot. Str. Ex. B. Cuyahoga did not complain about the disallowance of the full AAF rent in 1988 on this basis, yet now suggests that the Government has changed its position, and thereby breached the HAP contracts, by employing a formula that it used more than 15 years ago. At a minimum, Cuyahoga has acquiesced to the use of such a calculation and cannot be heard to complain about it now. Cf. Big Chief Drilling Co. v. United States, 15 Cl. Ct. 295, 300 (1988); Standard Oil Co. v. United States, 231 Ct. Cl. 112, 685 F.2d 1337, 1345 (1982).

As noted, the "general rule" set forth in the 1986 memorandum directs HUD to raise rent to the lesser of 120 percent and the sum of comparable rent and the initial difference, and thus may direct a rent that is lower than the 120 percent threshold. Further, the 1986 memorandum expressly sets forth an alternative method of ascertaining the existence of a material difference other the 120 percent threshold, based upon the cost of operating the project.[4] The 1986 memorandum thus demonstrates both that (1) the "comparable plus initial difference" standard now built into Notice 95-12 had its genesis long before 1995 and (2) even if Notice 95-12 were

---

[4] As the "exception" to the general rule indicates, under the 1986 memorandum an AAF rent increase is not necessarily limited to the sum of the initial difference and comparable rents. Where such sum is insufficient to cover expenses (including operating costs, debt services, and allowances) and is less than the AAF rent, the rent may be increased (upon an appeal or at HUD's discretion) to the lowest of the AAF rent, the 120 percent threshold, or the rent needed to cover such expenses. Def. App. at 179.

deemed inapplicable to Cuyahoga's applications, the 120 percent threshold would be only one of several limitations upon a proposed AAF increase.

Cuyahoga has responded to our arguments concerning the 1986 memorandum largely by repeating its suggestion that it is entitled to some difference beyond the initial difference and that any formula, including a cost-based calculation, that does not recognize the existence of some difference offends its "right" to an immaterial difference. Again, these arguments presuppose the existence of a premium that both Congress and the HAP contracts themselves expressly seek to reduce to the maximum extent possible.

To be sure, the operating costs formula is rather cumbersome, and it is therefore not surprising that HUD chose to abandon this formulation both in 1992, when it formally proposed a new definition of material difference, 57 Fed. Reg. 49, 120, 49,125 (proposed Oct. 29, 1992) (to have been codified at 24 C.F.R. § 888.205(c)(1), and when it circulated Notice 95-12. However, it is not, as Cuyahoga suggests, either impossible to decipher or internally inconsistent (particularly since CMHA's "inconsistency" arguments are premised solely upon an alleged entitlement to a difference beyond the initial difference). If the Court were to determine that the method of calculating rents set forth in Notice 95-12 should not be applied to Cuyahoga's HAP contracts, there is no basis for basis for rewriting the formula that was previously in place (and that Cuyahoga previously accepted).

Finally, nothing in any of the briefs or decisions upon which Cuyahoga relies suggests that the Government has conceded that the 120 percent threshold represented the exclusive means of calculating the rent following a comparability study, or of defining a material difference. Although the Government has, as Cuyahoga notes, argued that adjusted rents cannot

exceed the 120 percent threshold without creating a material difference, these arguments merely establish that exceeding the 120 percent threshold is sufficient, but not necessary, to establish a material difference, and do not preclude a rent calculation that brings rents as closely into line with comparable rents as possible. Cuyahoga has no entitlement to receive more than fair market value for its properties and, particularly because it already receives additional compensation beyond comparable rents through the maintenance of the initial difference, cannot be heard to complain about the Government's attempt to eliminate a premium over and above this amount.

## IV. <u>The Declaration Of Dennis G. Morton Is Appropriately Considered</u>

Nowhere in opposing defendant's motion for summary judgment, or in moving to strike the declaration of Dennis G. Morton, does Cuyahoga contest, or provide evidence rebutting, the fundamental conclusions that Mr. Morton reaches – (1) the adjusted rents Cuyahoga seeks in this litigation substantially exceed the amount that would have been necessary to operate comparable units, and (2) following the 1986 memorandum, the amount Cuyahoga seeks would create a material difference between adjusted and comparable rents and, therefore, would not be allowable.[5]

---

[5] The analysis in Mr. Morton's declaration hinges in large part upon Cuyahoga's status as the owner of the subject properties. <u>See</u> Morton Decl. ¶ 14 (Def. App. at 213-14). This status dictates the amount of the allowance calculated in Step 4 of the analysis. Def. App. at 184. In preparing his declaration, Mr. Morton relied upon the representations in each of Cuyahoga's complaints that it is the owner of the subject properties. Def. App. 127, 150, 161, 190. However, the Government has received information since Mr. Morton executed his declaration indicating that Cuyahoga leases at least one of the properties pursuant to a 50-year lease. If this is correct, and if this long-term lease is not deemed to be "ownership" of the properties, the allowance Mr. Morton calculated could conceivably change (and may affect his ultimate conclusion). However, the Government lacks information concerning the "initial owner equity" in the property. Given that Cuyahoga has alleged in its complaints that it is the owner of the subject properties and has not objected to that characterization in Mr. Morton's declaration,

(continued...)

Instead, Cuyahoga attacks the reliability of Mr. Morton's declaration using a variety of arguments that are uncompelling and, to the extent they raise any legitimate issues, are merely reflective of the fact that the 1986 memorandum has been superseded. Mr. Morton performed his analysis in response to Cuyahoga's assertion that the 1986 memorandum, rather than Notice 95-12, is the current source of guidance for determining the extent that an AAF adjustment should be recognized. Although Cuyahoga's litigation position has forced Mr. Morton to reconstruct a "hypothetical" world that is at odds with reality, placing Mr. Morton in this world does not make his calculations or conclusions any less reliable.

**A. The Declaration Is More Reliable, Not Less Reliable, Because Mr. Morton Did Not Select The Properties**

Cuyahoga first attempts to impugn the reliability of Mr. Morton's declaration by attacking the decision to have his colleagues select comparable projects to use in the analysis. As Mr. Morton noted in his first declaration, however, his colleagues were asked to prepare a list of projects that HUD would consider comparable based upon a variety of applicable factors, and were not told the reason that this list should be compiled. The reason the selection was performed in this manner is self-evident – so as to remove any doubt that the properties were not selected in a manner as to skew the results.[6] As confirmed in his second declaration, Mr. Morton

---

[5](...continued)
Cuyahoga cannot now contest its lack of ownership (if it does not indeed own the properties) at this time. At a minimum, if the issue is dispositive of the Court's resolution of this matter (and if the Court does not deem Cuyahoga's long-term lease to constitute "ownership"), the Government requests that Cuyahoga furnish information concerning the initial equity investment in the properties so that Mr. Morton can update his analysis.

[6] Cuyahoga acknowledges the inherent subjectivity of a comparability study, recognizing that the selection of comparables in the appraisal process is "more of an art than a science." Pl. Opp.
(continued...)

has personal knowledge of the properties used in the analysis he performed and, based on his experience, considers them to be "comparable" for purposes of performing the analysis required by the 1986 memorandum. Second Morton Decl. ¶ 3. As a result, Cuyahoga's suggestion that Mr. Morton lacks the requisite knowledge concerning the properties to perform an analysis upon them is uncompelling.

**B. <u>The Analysis Mr. Morton Has Performed Is Sound</u>**

Cuyahoga next attacks Mr. Morton's statistical analysis on two grounds. Neither provides a basis for disregarding his conclusions.

First, Cuyahoga questions the use of two properties in Akron and Canton, Ohio, and asserts that HUD has recognized them as markets separate from Cleveland for purposes of rental pricing. Although Canton, Akron, and Cleveland are indeed separate markets for purposes of pricing, this conclusion does not mean that they are appreciably different for purposes of calculating expenses (which is the sole focus of Mr. Morton's analysis), or that they should not be compared together when performing a comparable-expenses calculation. Second Morton Decl. ¶ 4. Moreover, even if the two properties about which Cuyahoga complains were factored out of the analysis, Mr. Morton's ultimate conclusion would not change because the "total cash requirement" calculated in Step 2 of Attachment #1 to the 1986 memorandum would only increase to $535, an amount that would still yield a "cash throw-off" (Step 3) that far exceeds 2 percent of the rent potential (Step 4), and would thus preclude increasing the rents above the contract rents in effect for the Cuyahoga properties during the time period in question in this

[6](...continued)
at 11. The decision to have other HUD employees select comparable projects was simply a prophylactic step to protect against an allegation of taint due to this subjectivity.

litigation. Id. ¶ 5. As a result, any error that might hypothetically exist in Mr. Morton's analysis is harmless.

Second, Cuyahoga questions the use of a composite average, based upon the years 1997 to 2001, to calculate the "total cash requirement," and asserts that the total cash requirement should have been calculated on an annual basis. Although such an analysis is more cumbersome (and for this reason was eschewed in favor of using an average) and not necessarily more accurate, Mr. Morton explains in his second declaration that the results do not change if the total cash requirements are calculated annually. Using such an annual calculation, the "throw off" would still substantially exceed 2 percent of the rent potential for each year, and would thus preclude adjusting the rent above the contract prices already in place.[7] Second Morton Decl. ¶¶ 6-7. Again, there is neither error in the analysis nor harm arising from the alleged mistake.

**C. Cuyahoga's Additional Arguments**

Cuyahoga also asserts that there is no evidence that the alternative method for ascertaining the existence of a material difference set forth in the 1986 memorandum "was ever implemented on any project in the Cleveland area during that time frame." Pl. Mot. Str. at 5. This argument is unpersuasive. First, there is no reason why the inquiry should be limited to Cleveland. Second, Cuyahoga's arguments are refuted by Mr. Morton's statements that (1) "[i]n order to implement the 1986 memorandum, such an analysis would have been employed (assuming the rent dictated by the automatic adjustment factor ("AAF") did not exceed 120% times the sum of comparable rents and the "initial difference") to determine whether a material

---

[7] Cuyahoga also takes issue with the use of "imputed expenses." However, as Mr. Morton explained, any error in using this figure inured to Cuyahoga's benefit, as it increased the amount of operating expenses for the comparable units. Morton Decl. ¶ 8.

difference existed between the adjusted rent and the rent for comparable units" Morton Decl. ¶ 3.; and (2) "[w]hile the '1986 memorandum' was in effect, CMPC frequently performed th[is] type of analysis," Second Morton Decl. ¶ 2. The alternative methodology reflected HUD policy prior to the issuance the 1994 amendments and Notice 95-12 and, regardless of whether it was implemented in particular circumstances in Cleveland or elsewhere, any attempt to turn back the clock, as Cuyahoga seeks to do in this case, must take this methodology into account.

Finally, Cuyahoga asserts that, prior to 1994, it received AAF increases in every year except 1988, in which year its rent was "limited to the sum of comparable rent plus the initial difference." Although in that year the alternative methodology did not dictate the adjustment, two important facts bear noting: first, HUD elected not to check the box indicating that the "operating needs formula" (i.e.,, the alternate methodology that Mr. Morton employed in his declaration) had been used; and second, the adjusted rent was capped, consistent with the "general rule" set forth in question 3 of the 1986 memorandum, at the sum of comparable rents and the initial difference. As noted above, Cuyahoga can hardly complain that HUD has breached the agreement by using a "new" formula when it employed the same formula more than 15 years ago to deny Cuyahoga a full AAF adjustment.

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in our cross-motion, the Court should deny plaintiff's motion for summary judgment with respect to damages and grant defendant's cross-motion with respect to damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Andrew P. Averbach
ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
CAROLE W. WILSON
Associate General Counsel
for Litigation

HOWARD SCHMELTZER
Assistant General Counsel
for Litigation

ALLEN C. VILLAFUERTE
Trial Attorney
Office of General Counsel

CHARLES W. WILLIAMS
Office of the Assistant General
Counsel

Department of Housing and
Urban Development

March 22, 2004