# APPENDIX

## SECOND DECLARATION OF DENNIS G. MORTON

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 01-46C, 01-251C, 01-416C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**SECOND DECLARATION OF DENNIS G. MORTON**

I, Dennis G. Morton, make the following declaration in accordance with 28 U.S.C. § 1746:

1. I am employed by the United States Department of Housing and Urban Development ("HUD") as the Director of the Cleveland Multifamily Program Center ("CMPC"). I submit this declaration in further support of defendant's cross-motion for summary judgment with respect to damages, and in opposition to plaintiff's motion to strike my first declaration.

2. While the "1986 memorandum" was in effect, CMPC frequently performed the type of analysis described in my first declaration. Although such an analysis was not performed in every case, it is one of the methods used to calculate whether rent should be increased to the full extent contemplated by the annual adjustment factor.

3. As I stated in my first declaration, as an initial step in ascertaining the operating expenses of projects comparable to Cuyahoga pursuant to the 1986 memorandum, I asked certain of my colleagues to prepare a list of projects that HUD would consider comparable based upon a variety of applicable factors. I did not tell my colleagues the reason I wanted the list compiled so as to remove any doubt that the properties were not selected in a manner as to skew the results.

However, this does not mean that I did not confirm that these projects are appropriately considered as "comparable". Based on my experience as the director of the CMPC and nearly 27 years at HUD and my familiarity in this capacity with the preparation of comparability studies, I consider each property to be "comparable" for purposes of performing the expense analysis required by the 1986 memorandum.

4. Cuyahoga asserts in its motion to strike that it was inappropriate to use projects from Akron and Canton, Ohio. This assertion is incorrect for a number of reasons. First, there is a finite number of projects to choose from in Cleveland and, for this reason, it is appropriate to consider the expenses of other comparable projects in cities near Cleveland. Further, the mere fact that Canton, Akron, and Cleveland are separate markets for purposes of ascertaining fair market value for rents does not mean that the cost of operating otherwise comparable projects in these cities is appreciably different.

5. In any event, even if the Akron and Canton properties about which Cuyahoga complains were factored out of the analysis, the ultimate conclusions I reached in my original declaration would not change because the "total cash requirement" calculated in Step 2 of Attachment #1 to the 1986 memorandum (which is simply the average of the total cash requirements for each comparable property) would only increase to $535. This amount that would still yield a "cash throw-off" (Step 3) that far exceeds 2% of the rent potential (Step 4) for each property, and would thus preclude increasing the rents above the contract rents in effect for the Cuyahoga properties during the time period in question in this litigation.

6. Cuyahoga also claims that the analysis is flawed because it employs a composite average, based upon the years 1995 to 2001, to calculate the "total cash requirement" for

comparable properties, and asserts that the total cash requirement should have been calculated on an annual basis for each year in which any increase is sought (1997 through 2001, since I understand that the parties are in agreement as to the contract rents for 1995 and 1996 for each property). Although such an analysis is substantially more cumbersome and not necessarily more accurate, it would not change my conclusions. For each year, the "throw off" would still substantially exceed 2% of the rent potential for each year in which Cuyahoga seeks a rent increase.

7. The annualized analysis is summarized in the following table. For purposes of this analysis, it was only necessary to consider the years 1997 through 2001, since it is only in those years that Cuyahoga is actually seeking a rent increase in this litigation. In addition, and for the sake of simplicity, a rent potential of $590 was employed across the board. This figure, which is the smallest adjusted rent (for Quarrytown in 1998) that Cuyahoga seeks for any particular property in any particular year at issue in this litigation, was employed for two reasons. First, using a smaller rent potential decreases the amount of the cash throw-off, and thus would tend to suggest that a material difference would not exist. Second, using the same rent potential across the board (rather than one that increases over time) controls for the possibility that the AAF rent will not have been granted in any preceding years, and establishes that, even as the cost of operating a project increased over time, the increased cost was still not enough to exceed even the lowest AAF adjustment that Cuyahoga seeks.

| | 1997 | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|
| Rent Potential (Step 1) | $590 | $590 | $590 | $590 | $590 |
| Total Cash Requirement (Step 2) | $501 | $501 | $517 | $517 | $529 |
| Throw-off (Step 3) | $89 | $89 | $83 | $83 | $61 |
| Allowance (Step 4) | $12 | $12 | $12 | $12 | $12 |

I declare under penalty of perjury that the foregoing is true and correct Executed on March 17, 2004.

DENNIS G. MORTON