**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CUYAHOGA METROPOLITAN HOUSING AUTHORITY,** | ) | **CONSOLIDATED CASE NOS. 01-46C, 01-251C AND 01-416C** |
| **Plaintiff,** | ) | **JUDGE ALLEGRA** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **CUYAHOGA METROPOLITAN HOUSING AUTHORITY'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE MORTON'S DECLARATION** |
| **Defendant.** | ) | |

Unable to overcome the fatal deficiencies in Morton's Declaration, HUD submits a second declaration from Morton. CMHA will not press any timing issues related to its filing and proceed to address the substance of HUD's arguments.

In its opposition to CMHA's Motion to Strike Morton's Declaration, HUD raises the following arguments:

A. Morton's Declaration is reliable because Morton himself did not select the properties (Opp. to Mtn. to Strike, p. 2) ;

B. Morton's analysis is sound (Id., pp. 2-3);

C. CMHA is bound by Morton's analysis because in 1988, rent was limited to the sum of comparable rent plus the initial difference (Id., pp. 4-5).

CMHA will address each argument separately.

**A. Morton's Declaration is inadmissible.**

HUD misses the point in arguing that Morton's Declaration is more reliable because he did not himself select the properties. CMHA did not object to Morton's Declaration based on his veracity or potential prejudice. This is not the issue raised. As

a lay witness,[1] Morton cannot render an opinion or inference that is not based on his perception or that is based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Evid.R. 701. HUD admits that Morton's Declaration is based on "reconstruct[ing] a 'hypothetical' world that is at odds with reality." (Opp. to Mtn. to Strike, p. 1.) This is precisely the type of testimony that cannot be rendered by a lay witness. Hartzell Mfg., Inc. v. Am. Chem. Tech., Inc., 899 F. Supp. 405, 409 (D.Minn. 1995).

Although Morton now contends that he considers each property selected in his study to be "comparable" for performing the expense analysis, Morton still fails to disclose the differences between the selected buildings and CMHA's buildings and whether any adjustments were made to compensate for the differences. The fact that Morton reviewed the documents selected by his colleagues does not cure the deficiency in the manner in which the buildings were selected. See Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 299 (3d Cir. 1991) (excluding testimony even though determination was made by witness himself). Because HUD failed to submit any affidavit or declaration from Morton's colleagues explaining how they selected the buildings, HUD should not be allowed to supplement the record with this Second Declaration at this late stage.

**B. Morton's analysis is flawed.**

Morton admits in his Second Declaration that the "total cash requirement" increases to an average of $535 (for the seven buildings) simply by deleting the Canton

[1] HUD did not designate Morton as an expert in this case, and it did not contest CMHA's description of him as a lay witness in its Motion to Strike. In fact, HUD completely ignored Evid.R. 701 and did not even attempt to distinguish the case law cited by CMHA in its Motion to Strike Morton's Declaration.

and Akron buildings from his analysis. (Opp. to Mtn. to Strike, p. 3). In Park Village Apts. v. United States, U.S. Court of Federal Claims Case No. 701-88C, HUD submitted proposed findings of fact, in which it admitted that in performing a comparability review, HUD selects "**three to five**" comparable buildings. (See Paragraph 11 of the Government's Proposed Findings of Fact, which are authenticated in the attached Affidavit of Fred J. Livingstone.)

In his first Declaration, Morton admits that the "total cash requirement" (averaged for all the relevant years) is $694 for St. Clair Place, $576 for Hamilton Place, and $527 for Abington Arms. (Morton Decl., ¶ 10). This provides for an average of $599 for the three. Following Morton's calculations in paragraph 11 of his Declaration, this results in a "cash throw-off" of *minus $23* ($576-$599) for Quarrytown in 1995 if only these three projects were used. There is simply nothing in the record to show that St. Clair Place, Hamilton Place and Abington Arms are not the most comparable projects. HUD cannot manipulate numbers by expanding the number of the surveyed projects to reach the intended result, without disclosing the variations between CMHA's buildings and the buildings used in Morton's Declaration.

Directive Number 95-12 requires that comparable rent be determined by "a non-identity of interest, state certified, general appraiser." Not only is Morton not identified as a state certified general appraiser, but he completely failed to even disclose the variations between the buildings used in his study and CMHA's buildings. Morton simply cannot hide behind his "years of experience" in stating that the nine buildings selected by his colleagues were comparable, without disclosing the acceptable

deviations upon which the buildings were selected. The Court should strike the Morton Declaration.

**C. CMHA is entitled to be placed in the position it would have been in had HUD not breached the contract.**

The cardinal principle of contract law is that the aggrieved party be placed in the position it would have been in had the contract not been breached. See, e.g., Trainor Co. v. Aetna Casualty & Surety Co., 290 U.S. 47, 54, 54 S.Ct. 1 (1933). Morton admits in his Second Declaration that his analysis "was not performed in every case." (Morton's 2nd Decl., ¶ 2.) Yet again, HUD misses the point. In denying the full rent adjustment for Quarrytown in 1988, HUD limited the rent to the sum of comparable rent plus the initial difference, and never utilized the operating expense calculation utilized by Morton.

If the Court were to presume that HUD utilized Morton's approach in denying the full rent adjustment for Quarrytown in 1988, that would mean that, for the years 1987 through 1996, HUD applied the comparable rent plus initial difference limitation in only one out of the 27 times (3.7%) it adjusted rents for these projects. In the other 26 times it granted the full adjustment.

Directive 95-12, in effect, applied the same limitation as did HUD for Quarrytown in 1988, namely, comparable rent plus initial difference. As soon as Directive 95-12 was applied, CMHA was denied rent adjustments on Severance and Ambleside from 1997 until 2000 and was granted no adjustment on Quarrytown during that period.[2] It is highly unlikely that the comparable rent for these projects changed so dramatically

---

[2] Pursuant to the 1994 Act and Directive 95-12, each project received a one year full adjustment either in 1995 or 1996.

between the time before and the time after Directive 95-12 went into effect so that the same limitation restricted adjustments only after the Directive. One could reasonably infer that HUD was not generally applying the claimed limitation during the 1987 – 1994 period. It more likely was applying the 120% limitation as the cases have held and as HUD has argued in Park Village, supra.

For HUD to now argue that CMHA acquiesced in Morton's formula fifteen years ago and therefore, is now precluded from challenging its applicability as the standard for material difference, is contradicted by the undisputed facts. In 26 out of 27 instances, HUD did not apply Morton's formula. Any acquiescence or course of conduct (96.29% of the time) would have been HUD's acquiescence to AAAF rent increases without application of Morton's formula.

Clearly, Morton's Declaration is speculative, cannot be considered by the Court, and must be struck from the record. Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1043 (Fed.Cir. 1994); Myers Investigative and Security Serv. v. United States, 47 Fed. Cl. 605, 617 (Ct. Cl. 2000).

Respectfully submitted,

Dated: April 2, 2004

/s/ Fred J. Livingstone
Fred J. Livingstone (0009528)
flivingstone@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

Attorney for Plaintiff

Of Counsel:

Mark J. Valponi (0009527)
Majeed G. Makhlouf (Ohio No. 0073853; District of Columbia No. 481643)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

LaVerne Nichols Boyd (0009279)
CUYAHOGA METROPOLITAN HOUSING AUTHORITY
1441 West 25th Street
Cleveland, Ohio 44113-3101
(216) 348-5000
(216) 348-4925 (facsimile)

## CERTIFICATE OF SERVICE

The foregoing *Cuyahoga Metropolitan Housing Authority's Reply in Support of Its Motion to Strike Morton's Declaration* was filed electronically with the Court on April 2, 2004, with notice of this filing being sent to all parties by operation of the Court's electronic filing system.

/s/ Fred J. Livingstone
Fred J. Livingstone

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CUYAHOGA METROPOLITAN HOUSING AUTHORITY,** | ) | **CONSOLIDATED CASE NOS. 01-46C, 01-251C AND 01-416C** |
| **Plaintiff,** | ) | **JUDGE ALLEGRA** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **AFFIDAVIT OF** **FRED J. LIVINGSTONE** |
| **Defendant.** | ) | |

Fred J. Livingstone, after being duly sworn, deposes and states that I am one of the attorneys of record for the Plaintiff in the above-captioned case.

I have personal knowledge of the factual assertions contained in this Affidavit.

Attached hereto is a true and accurate copy of an excerpt of the Proposed Findings of Fact filed by the Government on February 14, 1994 in the case of Park Village Apartments v. the United States, 32 Fed. Cl. 762 (1994), aff'd, 152 F.3d 943 (Fed. Cir. 1998).

I personally obtained this excerpt from the case file maintained by the Washington National Records Center in Suitland, Maryland.

FURTHER AFFIANT SAYETH NAUGHT.

Fred J. Livingstone

Sworn to before me and subscribed in my presence this 1st day of April, 2004.

Notary Public

K0148397.1

MAJEED G. MAKHLOUF, Attorney-At-Law
Notary Public - State of Ohio
My Commission has no expiration date
Sec. 147.03 R.C.

ORIGINAL

FILED
FEB 14 1994
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARK VILLAGE APARTMENTS,
Plaintiff,
v.
THE UNITED STATES,
Defendant.

No. 701-88C
(Judge Andewelt)

DEFENDANT'S PROPOSED FINDINGS OF FACT

Introduction

On April 14, 1992, the Court issued its decision upon the parties' cross-motions for summary judgment. Park Village Apartments v. United States, 25 Cl. Ct. 729 (1992). The Court granted plaintiff's cross-motion on count II, except with regard to those years barred by the six-year statute of limitations. Id. at 735. The Court stated that:

> plaintiff's cross-motion for partial summary judgment on Count II is granted to the extent that this court will interpret the "Overall Limitation" provision as explained above.

Id. at 735.[1] The Court's interpretation of the overall limitation clause was summarized as follows:

> As a matter of contract interpretation, plaintiff is correct. The "Overall Limitation" creates both a ceiling and a floor on periodic rent adjustments.

Park Village v. U.S., 25 Cl. Ct. at 731.

[1] In footnote 1 of its pretrial memorandum, Park Village simplified this litigation somewhat by voluntarily dismissing Counts I, III, and IV of the complaint. As a result, only Count II and a derivative count, Count V, are presently before the Court.

11. In performing a comparability review, HUD field staff will select three to five unassisted projects from the same or contiguous geographical area. If the average rent of these projects is less than the rent resulting from application of the AAF, than the comparable, or "select" rent figure will be used. In this way, the geographically specific comparability review ensures against excessive rent increases that may result from application of the published AAF.

12. Park Village declined to request a revised AAF for any of the years at issue in this case.

13. Park Village declined to request a special annual rent adjustment under section 1.8(c) of the HAP contract.

14. Park Village failed to prove at trial the rents charged for comparable unassisted units.

15. Park Village failed to prove at trial the existence of a material difference between the rents charged for Park Village and the rents charged for comparable unassisted units.

16. Park Village failed to prove at trial the difference, if any, between Park Village's initial contract rent and the rents charged for comparable unassisted units at the time the parties agreed to the initial contract rent.

17. The initial difference, if proven, is a fixed dollar amount when employed for the purpose of conducting a comparability analysis of the annual rent adjustment resulting from application of the AAF.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

DAVID M. COHEN
Director

ARNOLD M. AUERHAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
2nd Floor, Todd Bldg.
Washington, D.C. 20530
Tele: (202) 307-0290

Attorneys for Defendant

February 14, 1994