LEXSEE 2004 U.S. CLAIMS LEXIS 121

**FIRST COMMERCE CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant.**

**No. 92-731C**

**UNITED STATES COURT OF FEDERAL CLAIMS**

***2004 U.S. Claims LEXIS 121***

**May 18, 2004, Filed**

**PRIOR HISTORY:** *First Commerce Corp. v. United States, 335 F.3d 1373, 2003 U.S. App. LEXIS 14232 (Fed. Cir., 2003)*

**DISPOSITION:** Plaintiff's motion for summary judgment granted and Defendant's motion for summary judgment denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff company sued defendant United States (US) for breach of contract. The parties moved for summary judgment.

**OVERVIEW:** The company submitted a bid letter for the acquisition of a troubled thrift, to the Federal Home Loan Bank Board (FHLBB). The company submitted a formal application to the Federal Savings and Loan Insurance Corporation (FSLIC) to acquire the thrift. The FHLBB approval letter directed the issuance of a forbearance letter to the thrift; the forbearance letter provided for amortization of goodwill over no more than 25 years. The company acquired the thrift and utilized the 25-year amortization forbearance. The forbearance letter was a counteroffer, and the company's performance in proceeding with the acquisition in response to the counteroffer was unambiguous acceptance. The company manifested asset to the terms of the counteroffer, and the parties had mutuality of intent to contract for the 25-year amortization. Consideration flowed to the US, as acquisitions of ailing thrifts reduced liquidation costs; consideration flowed to the company, as the counteroffer promised favorable accounting treatment. Inter alia, *12 U.S.C.S. § 1725*(c) provided adequate authority for a contract regarding 25-year amortization between the company and the U.S.

**OUTCOME:** The company's motion was granted, and the US's motion was denied.

**CORE TERMS:** goodwill, forbearance, judicial estoppel, counteroffer, mutual, amortization, acquisition, accounting, regulation, supervisory, thrift, reply, successor, summary judgment, mutuality, statutory authority, unambiguous, formation, insured institution, bargained, contract language, inducement, delegated authority, acquiring, favorable, breach of contract, contracting, conversion, prior proceeding, contractual

**LexisNexis (TM) HEADNOTES - Core Concepts:**

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN1] Summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. U.S. Ct. Fed. Cl. R. 56(c). Material facts are those facts that might affect the outcome of the suit. A dispute over a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. All justifiable inferences from the evidence must be drawn in favor of the non-movant.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN2] When the court considers cross-motions for summary judgment, each motion is evaluated under the same standard.

***Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel***
[HN3] The doctrine of judicial estoppel has been applied in the Federal Circuit to bar a party from adopting a position inconsistent with another position argued in a prior proceeding.

***Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel***
[HN4] The United States Court of Appeals for the Federal Circuit has extensively discussed the doctrine of judicial estoppel in patent infringement cases, and has adopted the doctrine more generally.

***Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel***
[HN5] The doctrine of judicial estoppel is that where the party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed. Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants. The decision whether to invoke judicial estoppel lies within the court's discretion.

***Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel***
[HN6] The United States Court of Federal Claims has declined to apply judicial estoppel where the positions taken in the prior and current proceeding were not truly inconsistent. The court has applied judicial estoppel where the prior and current positions are inconsistent. Thus, the court compares the allegedly inconsistent prior and current positions of a party to see if there is true inconsistency.

***Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel***
[HN7] The United States Court of Federal Claims has declined to apply judicial estoppel when the party accused of adopting an inconsistent position in a current proceeding was not "successful" in the prior proceeding. "Success" in the prior proceeding does not always mean success on the merits. Thus, the court examines whether the court in the prior proceeding adopted the prior position of a party in reaching an outcome or resolution of an issue.

***Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel***
[HN8] The United States Court of Federal Claims reviews a party's allegedly inconsistent positions to determine whether specific elements justifying judicial estoppel are present. The court, in its discretion, looks at a variety of specific elements, beyond the basic requirements of true inconsistency and judicial acceptance, in determining whether judicial estoppel is warranted in a particular case.

***Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel***
[HN9] The United States Supreme Court's description of the elements which might justify judicial estoppel are instructive: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. The United States Court of Federal Claims has cited and applied this formulation of the elements justifying judicial estoppel.

***Contracts Law > Formation > Formation Generally***
[HN10] The requisite elements of a contract, as set out by the United States Court of Appeals for the Federal Circuit, are mutual intent, including an unambiguous offer and acceptance; consideration; and authority on the part of the government representative to bind the government.

***Contracts Law > Formation > OfferContracts Law > Formation > Acceptance***
[HN11] As a general matter, counteroffers may be accepted by conduct.

***Contracts Law > Formation > OfferContracts Law > Formation > Acceptance***
[HN12] Mutuality of intent is demonstrated when an unambiguous offer is answered by an unambiguous acceptance which manifests assent to the terms of the offer.

***Contracts Law > Formation > Offer***
[HN13] A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer.

***Contracts Law > Consideration > Sufficient ConsiderationContracts Law > Formation > Formation Generally***

[HN14] To constitute consideration, a performance or a return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

***Banking Law > Federal Acts > Competitive Equality Banking ActBanking Law > Federal Acts > National Housing & Fair Housing Acts***
[HN15] See *12 U.S.C.S. § 1725*(c)(3).

***Banking Law > Regulatory Agencies > Federal Home Loan Bank System***
[HN16] See *12 C.F.R. § 563b.28(c).*

**COUNSEL:** **[*1]** Rosemary Stewart, Washington, DC, for plaintiff. Vivek K. Hatti, Washington, DC, of counsel.

Maureen A. Delaney, with whom were Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. John N. Kane, Jr., Luke P. Levasseur and James Whitman, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, of counsel.

**OPINIONBY:** HEWITT

**OPINION:** HEWITT, Judge

The court has before it Defendant's Motion for Summary Judgment upon Liability Following Remand from the Federal Circuit (Def.'s Mot. or defendant's motion) and Plaintiff First Commerce Corporation's Cross-Motion for Summary Judgment on Liability for Breach of Contract and Opposition to Defendant's Motion for Summary Judgment upon Liability (Pl.'s Mot. or plaintiff's motion). The motions have been fully briefed. n1 Oral argument was held on April 16, 2004 and the transcript of that argument (Tr.) is also before the court. For the following reasons, the court GRANTS plaintiff's motion and DENIES defendant's motion.

n1 Filings include Appendix to Defendant's Motion for Summary Judgment upon Liability Following Remand from the Federal Circuit (Def.'s App.), Appendix to Plaintiff First Commerce Corporation's Cross-Motion for Summary Judgment on Liability for Breach of Contract (Pl.'s App.), Defendant's Uncontroverted Statement of Facts for Motion for Summary Judgment upon Liability Following Remand from the Federal Circuit (Def.'s Facts), Plaintiff FCC's Response to Defendant's Uncontroverted Statement of Facts for Motion for [Summary] Judgment upon Liability Following Remand from the Federal Circuit (Pl.'s Counter-Facts), Plaintiff First Commerce Corporation's Proposed Findings of Uncontroverted Fact in Support of its CrossMotion for Summary Judgment on Liability for Breach of Contract (Pl.'s Facts), Defendant's Statement of Genuine Issues (Def.'s Counter-Facts), Defendant's Reply Brief in Support of its Motion for Summary Judgment upon Liability, and Response to Plaintiff First Commerce Corporation's Cross-Motion for Summary Judgment on Liability (Def.'s Reply), Plaintiff First Commerce Corporation's Reply in Support of its Cross-Motion for Summary Judgment on Liability for Breach of Contract (Pl.'s Reply), defendant's Exhibit 33 filed on April 2, 2004 (Def.'s Ex. 33), defendant's Exhibit 34 filed on April 8, 2004 (Def.'s Ex. 34), defendant's Exhibits 35 & 36 filed on April 14, 2004 (Def.'s Exs. 35 & 36), Defendant's Supplemental Brief Pursuant to the Court's April 16, 2004 Order (Def.'s Supp.) and Plaintiff's Brief Providing Additional Information Relevant to *12 U.S.C. § 1729(f)* (Pl.'s Supp.).

**[*2]**

I. Background

A. Business History

The background facts of this case are set out in detail in *First Commerce Corp. v. United States, 53 Fed. Cl. 38, 39-41 (2002)* (First Commerce I). A detailed account of the facts relevant to contract formation issues is provided in the appeal of that decision, *First Commerce Corp. v. United States, 335 F.3d 1373, 1376-79 (Fed. Cir. 2003)* (First Commerce II). Only the facts essential to the analysis of liability for breach of contract will be presented here. Facts cited to the filings of only one party do not appear to be in dispute.

First Commerce Corporation (FCC or First Commerce), n2 plaintiff in this case, submitted a bid letter for the acquisition of Mutual Federal Savings Bank (Mutual or Mutual Federal), a troubled thrift, to the Federal Home Loan Bank Board (FHLBB) on June 4, 1987. Pl.'s Mot. at 11; Def.'s App. at 589-596; *First Commerce I, 53 Fed. Cl. at 39.* Included in that bid letter was a statement that "First Commerce proposes that the FSLIC grant the following regulatory forbearances," the first listed of which was:

> Amortization of Intangibles. The FSLIC [Federal **[*3]** Savings and Loan Insurance Corporation] shall agree that, notwithstanding generally accepted accounting principles [GAAP], for regulatory accounting purposes, the value of any intangible assets resulting from [the] accounting for the merger of First Commerce into Mutual in accordance with the purchase method may be amortized by the Resulting Institution over a period of 25 years using the straight line method.

Def.'s App. at 593. The parties agree that this type of forbearance is a "forbearance from GAAP [generally accepted accounting principles]," Def.'s Mot. at 10; Pl.'s Mot. at 12 ("more favorable than GAAP"), and that such a forbearance provides a longer period of time to amortize the goodwill n3 resulting from an acquisition, Pl.'s Facts P 22.

n2 Plaintiff's appellation, FCC or First Commerce, is used in this opinion to refer to both First Commerce Group (FCG), the partnership that formed First Commerce Corporation as a holding company, and First Commerce Corporation itself, unless a distinction is required to clarify which entity acted in a specific circumstance. See Def.'s Facts P 2; Def.'s App. at 399, 589. **[*4]**

n3 First Commerce I has a fuller explanation of how this type of forbearance, related to the accounting of an intangible asset such as goodwill, would have provided benefits to plaintiff. *53 Fed. Cl. at 44 n.11, 45 n.13.*

FCC submitted a formal application in November 1987 to the FSLIC to acquire Mutual, Pl.'s Facts P 24; Def.'s App. Ex. 1, and Mutual filed a formal application to convert from a mutual to a stock association at about the same time, Def.'s Facts P 4; Def.'s App. Ex. 9. Neither of these applications requested 25-year amortization of intangibles such as goodwill, Pl.'s Facts PP 29-30; Def.'s App. at 10-13, 895-98, as had the bid letter.

The FHLBB approved both applications-FCC's acquisition application and Mutual's conversion application-in one document, an approval letter dated May 26, 1988. Def.'s App. Ex. 10. The FHLBB approval letter "directed and authorized" the issuance of a forbearance letter to Mutual. Id. at 1102. The FHLBB forbearance letter of the same date, Def.'s App. Ex. 11, begins with the words "in connection with the approval by the Federal **[*5]** Home Loan Bank Board ("Board") of the supervisory conversion of [Mutual] from a federal mutual savings bank to a federal stock savings bank and acquisition by [FCC], the following forbearances are granted," id. at 1104, and stated in relevant part:

> For purposes of reporting to the Board, the value of any intangible assets resulting from the application of push-down accounting[ n4 ] in accounting for the purchase, may be amortized by Mutual over a period not to exceed 25 years by the straight line method.

Id. at 1105.

n4 The terms push-down accounting and purchase method accounting have the same meaning for the purposes of this case. *First Commerce II, 335 F.3d at 1378 n.2.*

The FHLBB approval letter contained ten specific conditions to be met by Mutual and FCC, and stated that a penalty for noncompliance with these conditions would be "all approvals given under this letter and concurrent letters, if any, shall be canceled and withdrawn." Id. at 1103. The third **[*6]** condition specified that FCC and Mutual were required to "execute a regulatory capital and dividend limitation agreement [RCMA]," id. at 1101, and on July 1, 1988, FCC and the FSLIC did enter into a "Regulatory Capital Maintenance/Dividend Agreement," id. Ex. 14 (FCC RCMA). The FCC RCMA stated in relevant part that

> all references to regulations of the Board [FHLBB] or the FSLIC used in this Agreement shall include any successor regulation thereto, it being expressly understood that subsequent amendments to such regulations may be made and that such amendments may increase or decrease the Acquiror's [FCC's] obligation under this Agreement.

Id. at 1238.

It is undisputed that FCC acquired Mutual on July 1, 1988 and that the 25-year amortization forbearance was utilized by FCC. Pl.'s Facts P 44; Pl.'s App. at 169. The new bank was called First Commerce Bank (FCB). Pl.'s App. at 190. On August 9, 1989, the Financial Institutions Reform, Recovery, and Enforcement Act

(FIRREA) became law. Pub. L. No. 101-73, 103 Stat. 183 (codified in relevant part at *12 U.S.C. § 1464 (2000)*). FIRREA resulted in changes to the amortization schedule **[*7]** of intangibles. *First Commerce I, 53 Fed. Cl. at 46*. FCB experienced a "need for additional capital" after FIRREA was enacted. Def.'s Counter-Facts P 53. FCC infused additional capital into FCB in 1990. Pl.'s Facts P 54. FCB's capital compliance with regulatory requirements worsened, and on June 14, 1991, the Resolution Trust Corporation (RTC) was appointed receiver for FCB. Id. PP 55-56.

B. Procedural History

On October 20, 1992, FCC filed its n5 complaint in this court, requesting relief valued at approximately $ 2,315,000, plus "costs, attorney's fees, and interest allowed by law" on a variety of contract and takings theories. Compl. at 31-32, PP 60-75. Since November 2, 1998, the primary focus of the litigation has been on the issue of liability for breach of contract. See Plaintiff First Commerce Corporation's Motion for Summary Judgment on Liability for Breach of Contract filed on November 2, 1998; Defendant's Response to Plaintiff First Commerce Corporation's Motion for Partial Summary Judgment on Liability and in Support of Defendant's Motion to Dismiss and CrossMotion for Summary Judgment on Liability filed on October 10, 2000; Transcript **[*8]** of March 7, 2002 Status Conference, at 17 (stating that the court "thinks we just need to focus on the liability issue"); Pl.'s Mot. at 4 ("This motion relates only to the proof of FCC's contract and the government's breach of that contract.").

n5 FCC is the only plaintiff that remains in this suit. See Order of April 22, 2002.

In First Commerce I, this court decided the contract liability issue for the government, finding that no contract had been formed. *53 Fed. Cl. at 39*. In that decision, this court analyzed the facts of this case and did not find "the existence of offer, acceptance and mutuality of intent necessary to contract formation." *Id. at 48*. In particular, the court compared FCC's acquisition application, the supposed "offer," with the FHLBB forbearance letter, the supposed "acceptance," and found that there was a "disconnect" that showed no mutuality of intent to contract on the issues of regulatory treatment of goodwill and the amortization period for goodwill. **[*9]** See *id. at 45-46* (noting plaintiff's contention that "'there was a meeting of minds regarding both the regulatory treatment of the goodwill and the amortization period'" (quoting plaintiff), but finding that "the terms of the [FHLBB forbearance letter] on which plaintiff relies for the terms of the government's acceptance simply do not match the language of First Commerce's application to the FHLBB on which plaintiff relies for the terms of its 'offer'"). This court also found that "surrounding circumstances" did not demonstrate an intent to contract, because "the amortization period was not a central consideration in First Commerce's acquisition of Mutual Federal," *id. at 47*, and the "surrounding circumstances in this case do not support the view that the transaction involved any effort to hammer out contract terms," *id. at 48*.

On appeal, the Federal Circuit approved this court's finding of a "discrepancy between offer and acceptance," but vacated and remanded the First Commerce I decision because "the government made a counteroffer to First Commerce." n6 *First Commerce II, 335 F.3d at 1376*. The Federal Circuit **[*10]** concluded that the FHLBB forbearance letter was the government's counteroffer, applying "common law" rules. *Id. at 1381* (applying *Restatement (Second) of Contracts § 59* (1979), which states that "[a] reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer."). The Federal Circuit also noted that "treating the FHLBB's forbearance letter as a counteroffer fits the transaction neatly into the mold of a unilateral contract, in which the government promised favorable accounting treatment in exchange for First Commerce's performance of acquiring Mutual Federal." *Id. at 1382 n.5*. Finally, the Federal Circuit stated that "as a general matter, counteroffers may be accepted by conduct," and remanded for "the determination of whether First Commerce accepted the FHLBB's counteroffer." *Id. at 1382*.

n6 The Federal Circuit noted that, apparently, "First Commerce did not raise the counteroffer argument before the Court of Federal Claims," but concluded that "it would be inappropriate to truncate the contractual analysis at this point." *First Commerce II, 335 F.3d at 1382 n.6*.

**[*11]**

Because three defenses, presented by the government on appeal, were not addressed by this court in First Commerce I, the Federal Circuit remanded these as well:

> the United States argues . . . [1] that the signatories of the FHLBB's approval letter (the Office of General Counsel [OGC] and Office of Regulatory Policy, Oversight and Supervision [ORPOS])

> lacked the delegated authority to contract on behalf of the FHLBB; [2] that the FHLBB itself had statutory authority only to contract with FSLIC-insured institutions (thrifts), not with holding companies such as First Commerce; and [3] that the Regulatory Capital Maintenance Agreement [FCC RCMA] executed between First Commerce and the FSLIC assigned the risk of regulatory change to First Commerce.

*Id. at 1382.*

Thus the task of this court is to decide, on these cross-motions for summary judgment on liability, whether FCC accepted the government's counteroffer of "treating supervisory goodwill as regulatory capital and permitting its amortization over an extended [25 year] period of time," and if it did, resolving whether any of the three remanded defenses absolves the government from **[*12]** contract liability. *Id. at 1383.*

II. Discussion

A. Standard of Review: Cross-Motions for Summary Judgment

[HN1] "Summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1037 (Fed. Cir. 2003)*; see *Rules of the United States Court of Federal Claims (RCFC) 56(c)*. Material facts are those facts that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A dispute over a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All justifiable inferences from the evidence must be drawn in favor of the non-movant. *Id. at 255.* [HN2] When the court considers cross-motions for summary judgment, each motion is evaluated under the same standard. *Cubic Def. Sys., Inc. v. United States, 45 Fed. Cl. 450, 457 (1999).*

B. Analysis

1. Judicial Estoppel

Defendant argues that judicial estoppel should prevent plaintiff from asserting its current **[*13]** position regarding contract liability because this new position, based on accepting the government's counteroffer, is inconsistent with plaintiff's prior position on contract formation. See Def.'s Mot. at 16 (stating that "plaintiff has also conceded in its pleadings that it was not induced by, and did not condition the acquisition on, the FHLBB's forbearance because its position, all along, has been that its application was its 'offer' and promise upon which it intended to consummate the merger"); Def.'s Reply at 6 & n.3 (same). Defendant also asserts that judicial estoppel prevents plaintiff from relying on statute sections, ones which plaintiff previously argued were not "'involved'" in the facts of this case, for new arguments that those statutory sections might provide a basis for the government's contracting authority in this case. Def.'s Reply at 16 n.12 (quoting Plaintiff First Commerce Corporation's Reply to Defendant's Response to Plaintiff FCC's Motion for Partial Summary Judgment on Liability and Opposition to Defendant's Cross Motion for Summary Judgment on Liability, filed on November 16, 2000, at 27, found at Def.'s App. at 1664). [HN3] The doctrine of judicial estoppel **[*14]** has been applied in this circuit to bar a party from adopting a position inconsistent with another position argued in a prior proceeding. See, e.g., *San Carlos Irrigation and Drainage Dist. v. United States, 111 F.3d 1557, 1568 (Fed. Cir. 1997)* (San Carlos) (stating that "the Claims Court did not abuse its discretion in concluding that [plaintiff] was barred by judicial estoppel from relitigating the issue"); *Kraft, Inc. v. United States, 30 Fed. Cl. 739, 763 (1994)* (stating that "because the elements of judicial estoppel are present defendant is estopped from challenging the veracity of the very same data it successfully presented to the Tax Court in [a prior proceeding]"). The court first describes the doctrine of judicial estoppel before considering defendant's request.

[HN4] The Federal Circuit has extensively discussed the doctrine of judicial estoppel in patent infringement cases, see *Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 665* & nn.3-4, 666 (Fed. Cir. 1988) (Water Technologies) (discussing Seventh Circuit judicial estoppel principles and refusing to apply judicial estoppel because "there has been no judicial **[*15]** acceptance of the asserted inconsistent position"); *Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1454 n.26 (Fed. Cir. 1988)* (noting "our[, the Federal Circuit's,] agreement with, and adoption of, the doctrine of inconsistent positions set forth by this court in Jackson Jordan"); *Jackson Jordan, Inc. v. Plasser Am. Corp., 747 F.2d 1567, 1578-80 (Fed. Cir. 1984)* (analyzing the authority for the application of "estoppel based on inconsistent positions" and distilling the elements that would justify judicial estoppel), and has adopted the doctrine more generally, see *San Carlos, 111 F.3d at 1568 (Fed. Cir. 1997)* (approving the use of judicial estoppel in the underlying Court of Federal Claims decision); *Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1564-65 (Fed. Cir. 1996)* (Data General) (stating that "the [General Services Administration Board of Contract Appeals] did not abuse its discretion in declining to hold

that GSA is judicially estopped from supporting the validity of the reinstatement of the contract").

The Federal Circuit has delimited judicial estoppel by stating that:

> [HN5] The doctrine of judicial **[*16]** estoppel is that where the party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed. Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants. The decision whether to invoke judicial estoppel lies within the court's discretion . . . .

*Data General, 78 F.3d at 1565* (citations omitted). The Federal Circuit also has elaborated specific elements, in the patent infringement suit context, which might justify the application of judicial estoppel if requested by the opposing party:

> (1) [the opposing party's] personal reliance on the decision granted in the prior suit, (2) prejudice to [the opposing party's] litigation of the issues in the present suit by reason of the decision in the prior suit, or (3) the patent holder's apparent misuse of the court.

*Hybritech Inc. v. Abbott Labs., 849 F.2d at 1453-54* (citing *Jackson Jordan, 747 F.2d at 1578-80*). The court now reviews how the doctrine of judicial estoppel **[*17]** has been elaborated in the United States Court of Federal Claims.

[HN6] This court has declined to apply judicial estoppel where the positions taken in the prior and current proceeding were not truly inconsistent. See *Westinghouse Elec. Co. v. United States, 56 Fed. Cl. 564, 571 (2003)* (comparing two legal defenses and stating that "the position the government is taking in this case and the position taken [by the government] in the [prior] case are not truly inconsistent"). This court has applied judicial estoppel where the prior and current positions are inconsistent. See *Adams v. United States, 38 Fed. Cl. 572, 574-75 (1997)* (holding that "the doctrine of judicial estoppel precludes plaintiffs from now maintaining that the court cannot decide the exemption issue based on the parties' stipulation of facts and joint exhibits" where "plaintiffs' [prior] position, whether express or implied, [was] that the joint stipulation of facts and joint exhibits could be the basis for the court's summary judgment ruling"), rev'd on other grounds, *178 F.3d 1306 (Fed. Cir. 1998)*. Thus, this court compares the allegedly inconsistent prior and current **[*18]** positions of a party to see if there is true inconsistency.

[HN7] This court has declined to apply judicial estoppel when the party accused of adopting an inconsistent position in a current proceeding was not "successful" in the prior proceeding. See, e.g., *Buckley v. United States, 57 Fed. Cl. 328, 341 (2003)* (refraining from using judicial estoppel against the government because, among other reasons, "the government received no benefit from taking the [prior] position"); *La Gloria Oil and Gas Co. v. United States, 56 Fed. Cl. 211, 225 (2003)* (stating that because "that [prior] position appears to be a litigating concession which did not yield success to defendant," the prior position "does not appear to be an apt subject for application of the doctrine of judicial estoppel"). This court has also stated that "success" in the prior proceeding does not always mean success on the merits. See *Nat'l Med. Enters., Inc. v. United States, 28 Fed. Cl. 540, 546 n.2 (1993)* ("'The "prior success" requirement does not mean that the party against whom the judicial estoppel doctrine is to be involved must have prevailed on the merits. "Rather, **[*19]** judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition."'" (citations omitted)). Thus, this court examines whether the court in the prior proceeding adopted the prior position of a party in reaching an outcome or resolution of an issue.

[HN8] This court has also reviewed a party's allegedly inconsistent positions to determine whether specific elements justifying judicial estoppel are present. See, e.g., *Sunoco, Inc. v. United States, 59 Fed. Cl. 390, 399 (2004)* (citing *Hybritech, 849 F.2d at 1453-54*, and discerning none of the elements of "personal reliance [of the opposing party] on the decision granted in the prior suit, or prejudice, or misuse of the court"); *Kraft, 30 Fed. Cl at 763* (citing *Water Technologies, 850 F.2d at 665-66*, and *Jackson Jordan, 747 F.2d at 1579-80*, and identifying seven factors n7 that might justify judicial estoppel including "'judicial acceptance' of the previously asserted inconsistent position," "effect of the pleading party's actions on the integrity of the judicial **[*20]** process," "perception that the court has been misled," "reliance by the opposing party," "prejudice to the opposing party's case as a result of the inconsistent position" and "'benefit from the previously taken position'"). n8 This court, in its discretion, has looked at a variety of specific elements, beyond the basic requirements of true inconsistency and judicial

acceptance, in determining whether judicial estoppel is warranted in a particular case.

n7 These factors have been converted from negative statements, where judicial estoppel is unwarranted, to positive statements, where judicial estoppel might be warranted. See *Kraft, 30 Fed. Cl. at 763.*

n8 Kraft, in its reliance on *Water Technologies, 850 F.2d at 665-66*, may have imported some elements from Seventh Circuit judicial estoppel doctrine. See *30 Fed. Cl at 763* (stating that "the Federal Circuit has held [that judicial estoppel is not warranted if four elements are present]" and citing Water Technologies for those elements); see also *Aleutian Constructors v. United States, 24 Cl. Ct. 372, 388-89 (1991)* (similarly stating that "as decided in the Federal Circuit" and citing four factors from Water Technologies as pertinent to judicial estoppel doctrine). The Federal Circuit in Water Technologies was applying Seventh Circuit law to the judicial estoppel issue. See *850 F.2d at 665 n.3* ("In addressing this procedural challenge to the validity of the four patents, we apply the law of the regional circuit-the Seventh Circuit-where the appeal would lie but for the patent counts."). The Federal Circuit cited several Seventh Circuit decisions for its statement, "the Seventh Circuit has considered and applied the [judicial estoppel] doctrine," *id. at 665 n.4*, but it should be noted that the Federal Circuit also cited in the same section of its opinion the Fifth, Sixth, and District of Columbia Circuits, as well as its own Jackson Jordan opinion, *Water Technologies, 850 F.2d at 665-66* & n.4. Any holding on judicial estoppel doctrine that can be gleaned from Water Technologies should, however, be described as the Federal Circuit's application of Seventh Circuit law.

**[*21]**

Finally, the Supreme Court has commented recently on the doctrine of judicial estoppel and, while it did "not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," n9 *New Hampshire v. Maine, 532 U.S. 742, 751, 149 L. Ed. 2d 968, 121 S. Ct. 1808 (2001)*, [HN9] the Court's description of the elements which might justify judicial estoppel are instructive:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id. at 750-51* (citations **[*22]** omitted). This court has cited and applied this formulation of the elements justifying judicial estoppel. See, e.g., *Westinghouse, 56 Fed. Cl. at 570-72* (declining to apply judicial estoppel because of plaintiff's "failure to satisfy the factors identified by the Supreme Court in New Hampshire").

n9 The Court cited to every circuit except the Tenth, Eleventh and Federal Circuit in its review of judicial estoppel doctrine. *New Hampshire, 532 U.S. at 748-51.* Because the Federal Circuit was not specifically included in the analysis summarized as "several factors typically inform the decision whether to apply the doctrine in a particular case," *id. at 750*, this court draws guidance from both Federal Circuit precedent and the Supreme Court on the factors that warrant judicial estoppel.

The court now turns to defendant's specific requests that the doctrine of judicial estoppel be applied in this case.

As to defendant's first request for judicial estoppel regarding **[*23]** plaintiff's prior and current positions on contract formation, Def.'s Mot. at 16; Def.'s Reply at 6 & n.3, the court notes that neither this court nor the Federal Circuit accepted plaintiff's prior position on contract formation, *First Commerce I, 53 Fed. Cl. at 48* (concluding that "the undisputed material facts . . . do not support the existence of offer, acceptance and mutuality of intent necessary to contract formation" and granting defendant's crossmotion for summary judgment on liability for breach of contract); *First Commerce II, 335 F.3d at 1382-83* (vacating and remanding First Commerce I based on reasoning accepting plaintiff's current position that "the written documents in this case