**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CUYAHOGA METROPOLITAN HOUSING AUTHORITY, | ) | |
| Plaintiff, | ) | Nos. 01-46C, 01-251C, 01-416C |
| v. | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**SUPPLEMENTAL BRIEF WITH RESPECT TO DAMAGES**

Pursuant to the Court's orders dated June 22 and June 29, 2004, defendant, the United States, submits the following response to plaintiff's supplemental brief with respect to damages ("Pl. Supp. Br."). We have confined this response to the questions posed by the Court in its June 22, 2004 order. To the extent CMHA's supplemental brief raises issues covered in the parties' cross-motions for summary judgment and outside the scope of the Court's questions, we incorporate the arguments set forth in our cross-motion for summary judgment with respect to damages and in opposition to plaintiff's motion for summary judgment with respect to damages.

**I. Single Or Multiple Breaches**

We agree with CMHA that the 1994 Amendments and Notice 95-12 result in a series of partial breaches that accrue upon an annual basis, at the time performance is due from HUD. However, as we stated in our initial supplemental brief, we do not believe it appropriate to apply any of the provisions of Section 26 of the Restatement (Second) of Judgments because Section 24 – to which Section 26 provides a series of exceptions to the general rules of merger and bar – is not applicable. Each annual breach constitutes a separate cause of action that does not bar a

subsequent action for a future partial breach. As a result, there is no need to consider whether any of the exceptions to the general principles of merger and bar are applicable.

## II. Plaintiff's Obligation To Comply With The Legislation And Directive That Caused The Breach

CMHA asserts that it need not comply with the timeliness requirements of Notice 95-12 because (1) to do so would permit the Government to benefit from its breach; and (2) the requirements are inconsistent with applicable legislation. Neither argument is persuasive.

With respect to CMHA's first argument, the Government is not, as CMHA asserts, "reap[ing] the benefits of its own breach." Pl. Br. at 9. Rather, as we have previously explained, the Government has agreed to compensate CMHA for the cost of having to comply with the additional restrictions imposed by the 1994 Amendments and Notice 95-12, in the form of CMHA the costs of its reasonable efforts to mitigate. In this regard, CMHA's reliance upon Kansas v. Colorado, 533 U.S. 1, 11 n.4 (2001), is entirely misplaced. In that case, Justice Stevens, writing for the Court, rejected a dissenting argument from Justice O'Connor because the dissenting view would encourage a party to breach a contract with the knowledge that the non-breaching party could not recover prejudgment interest and thus could not be made whole. Here, by contrast, CMHA would be made whole, as we have repeatedly explained, by complying with Notice 95-12 and receiving compensation for the cost of additional performance, i.e., the cost of performing comparability studies.[1]

---

[1] Billings Associates, Inc. v. Besham, 276 N.Y.S.2d 446 (App. Div. 1967), cited by CMHA, is also distinguishable. In Billings, the court simply recited (in dictum) the non-controversial principle that a securities broker should not be able to benefit from an unlawful act, even if its customer may have participated in the arrangement. 276 N.Y.S.2d 447. In addition to the fact that the Government's conduct in this case is not "unlawful," the Government is, as noted above,
(continued...)

CMHA's second argument fares no better. CMHA starts from a proposition with which we agree – that it is required to comply with valid directives of HUD – but contends that it need not comply with Notice 95-12 because Notice 95-12 "has no basis in legislation." This argument, which appears not to be responsive to the Court's inquiry and attempts to redefine the Court's determination with respect to liability, overlooks the fact that the Court specifically declined to "hold that either the 1994 amendments or the 1995 HUD directive are inapplicable to CMHA, as would be the case, for example, were such amendments unconstitutional or the directive invalid." Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751, 781 (2003). In the absence of a court ruling that the directive is invalid (and, in fact, in light of the Court's clear statement that the directive is not invalid), CMHA must comply with the requirements set forth in the 1994 amendments and Notice 95-12 as a precondition to receiving annual adjustments. It should not be entitled to receive a permanent exemption to these obligations through a damage theory that effectively relieves it of any obligation to comply with the requirements that HUD has promulgated and have not been deemed invalid.

## III. Methods Of Calculating Damages

CMHA frames its answer to the Court's third question around the doctrine of impracticability, asserting that this defense is not available to the Government. Pl. Br. at 8. However, we do not now contend, and have never contended, that the Government need not comply with the HAP contracts because to do so would be impracticable.

---

[1](...continued)
not benefitting from its breach. Any "benefit" that the Government has received is traceable to CMHA's independent, intervening decision not to seek annual adjustments in accordance with Notice 95-12.

To the extent impracticability is an issue, it is, as the Court's question suggests, relevant to the extent that it affects the computation of damages where one party is no longer able to exercise its ability to regulate the contract price. As we previously explained in responding to this inquiry, damages awarded under such a circumstance should in no event go beyond the contractual expectations of the parties – in this case, the parties' express contemplation that rents under the HAP contracts would be at least reasonably consistent with prevailing market rates. As the very use of the term "overall limitation" to define the maximum amount CMHA was to receive, and as expressly provided for in 42 U.S.C. § 1437f(c)(2)(C), CMHA has no "right"to receive rents that are materially in excess of prevailing market rates. See Cisneros v. Alpine Ridge Group, 508 U.S. 10, 21 (1993) ("[W]e think that the contract language is plain that no project owner may claim entitlement to formula-based rent adjustments that materially exceed market rents for comparable units."). Any award premised upon such a right would result in a windfall and, even if the 1994 amendments have prevented HUD from regulating the contract price and ensuring that the annual rents stay within the contractual expectations of the parties, would therefore be inappropriate.

**IV. The 120 Percent Threshold As A "Floor"**

Most of CMHA's response to the Court's fourth question does not speak to the issue the Court has raised and instead repeats CMHA's assertion that a material difference between adjusted rents and comparable rents will not exist unless the comparable rent is more than 120 percent of the sum of the adjusted rent and the initial difference. As we have previously explained, this assertion is inconsistent with (1) Notice 95-12, which HUD promulgated in the exercise of discretion that CMHA now concedes that HUD maintains, Pl. Supp. Br. at 9-10; and

(2) the "general rule" set forth in the 1986 memorandum, which CMHA has repeatedly chosen to ignore. We need not repeat those arguments here.

To the extent CMHA addresses the reasons supporting the use of a 20 percent variance as a floor, we agree with its assertion that such a floor would only come into play, if at all, where, unlike here, the sum of the comparable rent and the initial difference exceeds the adjusted rent by more than percent. Beyond that, CMHA simply cites to Judge Andewelt's opinions in the Park Village cases, particularly Park Village Apartments v. United Sates, 25 Cl. Ct. 441, 448 (1994), aff'd, 152 F.3d 943 (Fed. Cir. 1998) (table), as support for a the use of a 20 percent variance as a floor. As we indicated in our supplemental brief, however, and with all due respect, Judge Andewalt's opinion is inconsistent with the 1986 memorandum, and particularly the "general rule" for calculating rent adjustments contained in that memorandum, which presupposes the existence of several different methods of ascertaining the existence of a material difference. Beyond that, we do not believe that CMHA's response warrants further comment with respect to this issue.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Andrew P. Averbach
ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
CAROLE W. WILSON
Associate General Counsel
for Litigation

HOWARD SCHMELTZER
Assistant General Counsel
for Litigation

ALLEN C. VILLAFUERTE
Trial Attorney
Office of General Counsel

CHARLES W. WILLIAMS
Office of the Assistant General
Counsel

Department of Housing and
Urban Development

September 22, 2004