**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CUYAHOGA METROPOLITAN HOUSING AUTHORITY,** | ) | **CONSOLIDATED CASE NOS. 01-46C, 01-251C AND 01-416C** |
| **Plaintiff,** | ) | **JUDGE ALLEGRA** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **PLAINTIFF'S REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEF WITH RESPECT TO DAMAGES** |
| **Defendant.** | ) | |

Fred J. Livingstone (Ohio No. 0009528)
*flivingstone@taftlaw.com*
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

*Attorney for Plaintiff*

Of Counsel:

Mark J. Valponi (Ohio No. 0009527)
Majeed G. Makhlouf (Ohio No. 0073853; District of Columbia No. 481643)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

Dated: September 22, 2004

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

QUESTION NO. 1: (Annual Partial Breaches or One Total Breach) .......... 1

QUESTION NO. 2: (Enforceability of Legislation Provisions Repudiating Contract) .......... 1

QUESTION NO. 3: (State Case Law on Party's Inability to Control the Contract Price) .......... 2

QUESTION NO. 4: (120% Limitation) .......... 5

CERTIFICATE OF SERVICE .......... 8

# TABLE OF AUTHORITIES

**Cases** **Page**

*F. Enterprises, Inc. v. Kentucky Fried Chicken Corporation*,
47 Ohio St. 2d 154 (1976)....................3, 4

*Oregon v. Ashcroft*, 368 F.3d 1118 (9th Cir. 2004)....................2

*Tyger Construction Co. v. United States* , 28 Fed. Cl. 35 (1993)....................6

**Statutes**

5 U.S.C. §706(2)(D)....................2

42 USC §1437 f(c)(2)(C)....................6

**HUD Documents**

1986 HUD Memorandum....................5, 6, 7

1994 Amendments....................1-5

HUD Directive 95-12....................1-5

**Other**

Black's Law Dictionary (5th Edition)....................6

Dictionary.com Website....................6

Merriam-Webster's Collegiate Dictionary (11th Edition)....................6, 7

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CUYAHOGA METROPOLITAN HOUSING AUTHORITY,** | ) | **CONSOLIDATED CASE NOS. 01-46C, 01-251C AND 01-416C** |
| **Plaintiff,** | ) | **JUDGE ALLEGRA** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **PLAINTIFF'S REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEF WITH RESPECT TO DAMAGES** |
| **Defendant.** | ) | |

Plaintiff, The Cuyahoga Metropolitan Housing Authority ("CMHA"), respectfully submits the following reply to Defendant's Supplemental Brief with Respect to Damages.

**Question No. 1: (Annual Partial Breaches or One Total Breach)**

Plaintiff and Defendant agree that the HAP Contracts are continuing contracts and that both parties have treated them as such. They agree that CMHA has treated the breaches of contract as partial breaches occurring on an annual basis; that its current suit is for breaches that occurred to the date of suit–with the exception of the 2001 breach of contract with respect to the Ambleside Towers HAP Contract; and that it is appropriate for CMHA to bring suit in the future as future breaches occur.

**Question No. 2: (Enforceability of Legislation Provisions Repudiating Contract)**

Both parties appear to agree that they are required to comply with requirements of the 1994 Amendments ("Amendments") even though these may cause breaches of contract on the part of the Government. What the Government does not respond to is the distinction between the parts of HUD's Directive 95-12 ("Directive") which implement that legislation and the part that does not, but is its own unauthorized creation, i.e., the 60 Day Requirement. Plaintiff's Supplemental Brief Submitted in Response to the Court's June 22, 2004 Order ("Plaintiff's

Supplemental") demonstrated that unauthorized regulations[1] are unlawful and unenforceable. *See* 5 U.S.C. §706(2)(D); *Oregon v. Ashcroft,* 368 F.3d 1118, 1125, 1129 (9th Cir. 2004).

The parties also differ on the consequence of the Amendments creating a different world in which the parties are required to operate. CMHA agrees that in this new world it is required to submit comparability studies and that HUD has to comply with the 1% deduction from the AAAF factor for non-turnover units and calculate the Overall Limitation on adjusted rents without regard to a material difference factor. All of the foregoing constitute a breach of the HAP Contracts for which CMHA can and is claiming damages.

The Government, on the other hand, seems to imply that because CMHA has continued to operate in this new world, it has given up any claim for the breaches except for the cost of the comparability studies.[2] Acceptance of this argument allows the Government to profit by its breach of contract in enacting the Amendments which, in addition to burdening CMHA with the cost of comparability studies, require deduction of 1% from the AAAF factor and elimination of the material difference factor contrary to the terms of the HAP Contracts.[3] The Government does not respond to this point.

**Question No. 3: (State Case Law on Mitigation of Damages and Impracticability of Performance)**

CMHA agrees that damages are not recoverable for a loss that the injured party could have avoided without undue risk, burden or humiliation, and that the non-breaching party is entitled to recover the mitigation costs. However, whether HUD would have obtained comparability studies in the absence of the Amendments can be made irrelevant in calculating

---

[1] As Plaintiff has noted before, the Directive was not a regulation issued in accordance with the requirements of the Administrative Procedure Act and therefore should be accorded less deference than a regulation.

[2] There should be no distinction among these actions arising out of HUD's breach of contract for failure and refusal to adjust the contract rents as alleged in CMHA's Complaints.

[3] See, Plaintiff's Supplemental, p.5, Question 2, ¶ 2.

damages here. CMHA is willing to assume that HUD would have obtained such studies and that its rights should be judged as if the results of the studies submitted by CMHA in this matter, and agreed to by the Government,[4] represent the "rent for comparable unassisted units" required by the Overall Limitation clause of the Contracts.

Where CMHA disagrees with the Government is in its application of mitigation law to this case. The Government is arguing that CMHA's damage claim is made up of two parts: part one, what CMHA could have received from HUD based on the Directive's requirements had CMHA applied on time; and part two, everything CMHA claims it was entitled to receive from HUD above the amount in part one. HUD argues that because CMHA could have received part one if it had applied appropriately, CMHA did not mitigate HUD's damages. In fact HUD even argues that CMHA is precluded from any damages because it did not mitigate as HUD defines mitigation. That is not the law. Where a party fails to mitigate, that party is not precluded from damages; instead, the party's damages are reduced by the amount that could have been saved by mitigation. *F. Enterprises, Inc. v. Kentucky Fried Chicken Corporation*, 47 Ohio St. 2d 154, syllabus 3 (1976).

HUD is arguing that even if CMHA is entitled to damages, the claim should be limited to only part two damages. However, if one adds part one and part two, both of which would be paid by HUD, the overall financial impact on HUD is the same as what CMHA is now claiming in damages. That fact is disregarded in the Government's argument. The doctrine of mitigation of damages is also called the doctrine of avoidable consequences. This formulation of the doctrine emphasizes <u>the burden on the defaulting party</u> and the necessity of not <u>imposing more on that party</u> than necessary to make the injured party whole:

---

[4] Defendant's Response to Plaintiff's Second Proposed Findings of Uncontroverted Facts, #11.

> The doctrine of avoidable consequences is a rule also arising from the cardinal principle that the damage award should put the injured party in as good a position had the contract not been breached **at the least cost to the defaulting party**. It is applied, in substance, to prevent an inclusion in the damage award of such damages that could have been avoided by reasonable affirmative action by the injured party without substantial risk to such party. 5 Corbin on Contracts 241, Section 1039.

*F. Enterprises, Inc.*, 47 Ohio St. 2d at 159-60 (emphasis added).

When considered from the least cost to the defaulting party standpoint, the Government's argument makes no sense. As pointed out above, had CMHA applied as HUD is arguing and HUD paid what it agreed was due pursuant to the Directive and in addition, what it labels as damages, the burden on the Government would be exactly the same as the total damages claimed by CMHA.

Mitigation means passing part of the cost of a breach to some <u>other</u> party or avoiding the cost altogether, not splitting the cost in two and then claiming that what it did not pay earlier was what could have been mitigated. CMHA had no other party to whom it could have shifted any of this damage nor could it have reduced it. By HUD's reasoning, CMHA, as a party injured by HUD's breach of contract, would not be made whole and would be deprived of its reasonable expectations under the HAP Contracts.

Defendant's Supplemental does not deal with the law cited in Plaintiff's Supplemental regarding impossibility or impracticability of performance where, because of the Government's own actions in passing the Amendments, it is put in a position where it is unable to perform as the HAP Contracts require. As pointed out, the Government is not excused from performance and must pay damages for the breaches.

**Question No. 4: (120% Limitation)**

The Government argues that its 1986 Memorandum was rendered obsolete by the Directive. Nowhere in the Directive is the phrase "material difference" mentioned. In contrast, the 1986 Memorandum was focused on defining that term. It is the right and obligation of HUD, in the exercise of its discretion under the HAP Contracts, to define that term. The last definition of the term was the 1986 Memorandum.[5] As was demonstrated in Plaintiff's Supplemental, the Courts have consistently interpreted the 1986 Memorandum in every reported case to mean that the Overall Limitation for the annual adjustment of rents was 120% of the sum of comparable rent and initial difference. **No lesser limitation has ever been adopted by the Courts.**

HUD's problem with the term material difference stems from the Amendments themselves. The Amendments direct HUD not to adjust contract rents unless the owner demonstrates that the adjusted rent will not exceed comparable rent. The Amendments make no provision for material difference and thereby command HUD to act in breach of the HAP Contracts.

Assume for argument's sake, as the Government argues, that the 1986 Memorandum contains three standards defining the Overall Limitation. First, there is the general rule which states that the Overall Limitation is the sum of comparable rent and initial difference. Second, there is an exception to the general rule if the project operating expenses and equity allowance exceed the general rule but do not exceed the average operating expenses of similar projects. Third, in no event is the adjusted rent to exceed 120% of the sum of comparable rent and initial difference.

It is clear that the only limitation standard set forth in the 1986 Memorandum that does not constitute a violation of law, breach of contract or an abuse of discretion is the 120%

---

[5] See attached Appendix A.

Limitation. The general rule, i.e., comparable rent plus initial difference, makes no allowance for material difference. As pointed out in earlier briefs, "difference" in mathematics means "the amount by which one quantity is greater or less than another." "Material" is defined in the Merriam-Webster Collegiate Dictionary (11th Edition) as "having a real importance or great consequence," and elsewhere as "of sufficient importance or relevance as to have possible significant influence on an outcome."[6] In Black's Law Dictionary (5th Edition), it is defined as "important; more or less necessary; having influence or effect..." This Court has defined it as "an essential, important or pertinent part of the claim." *Tyger Construction Co. v. United States*, 28 Fed. Cl. 35 at 55 (1993).

In no way does the general rule set forth in the 1986 Memorandum comply with the statute[7] or satisfy the requirements of the words "difference" or "material" contained in the HAP Contract. It is neither different nor material. As far as the operating expense standard is concerned, since it allows an exception to the general rule of comparable rent plus initial difference, there will be a difference. However, whether the difference will or will not amount to something material, is purely a matter of chance. Operating expenses which would be ½% or $1 greater than the general rule could hardly be said to constitute an important or essential, i.e., a material difference and yet they would satisfy HUD's standard. Where the line would be drawn from *de minimus* differences upward has only been definitely defined by HUD, in the exercise of its discretion, as the 120% Overall Limitation. Anything less than that fixed standard is too vague and uncertain, or too dependant on chance, to be regarded as anything other than arbitrary–which includes, among its definitions, "existing or coming about seemingly at random or by chance or

---

[6] Dictionary.com website, http://dictionary.reference.com/search?q=material

[7] 42 USC §1437 f(c)(2)(C) which provides: "Adjustments in the maximum rents under subparagraphs (A) and (B) shall not result in material differences between rents charged for assisted units and unassisted units of similar quality, type and age in the same market area, as determined by the Secretary..."

as a capricious and unreasonable act of will." Merriam-Webster Collegiate Dictionary (11th Edition).

From the above, it is clear why, in all the reported cases cited in Plaintiff's Supplemental, HUD has urged the interpretation of the discretionary standard established by the 1986 Memorandum as being only the 120% Limitation and judicially it has been adopted. It was the only standard that did not result in a breach of the contract requirement of material difference and did not result in a vague and arbitrary standard for such difference. This Court should reaffirm the long standing judicial confirmation of such interpretation and hold HUD bound by that standard in this case also.

Respectfully submitted,

Dated: September 22, 2004

/s/ Fred J. Livingstone
Fred J. Livingstone (Ohio No. 0009528)
*flivingstone@taftlaw.com*
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

*Attorney for Plaintiff*

Of Counsel:

Mark J. Valponi (Ohio No. 0009527)
Majeed G. Makhlouf (Ohio No. 0073853; District of Columbia No. 481643)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

**CERTIFICATE OF SERVICE**

This is to certify that on September 22, 2004, a copy of the foregoing *Reply to Defendants Supplemental Brief with Respect to Damages* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Fred J. Livingstone
Fred J. Livingstone (Ohio No. 0009528)
*flivingstone@taftlaw.com*
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

*Attorney for Plaintiff*